IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00301-WJM

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**1.  WILLIAM J. SEARS,**

    Defendant.

---

## MOTION TO WITHDRAW PLEA OF GUILTY

---

Defendant, William J. Sears, by his counsel of record, Peter R. Bornstein, moves this Court pursuant to Fed. R. Crim. P. 11(d)(2) to withdraw, before sentencing, his previously entered plea of guilty.  As grounds in support of his motion, Mr. Sears states to the Court as follows:

### PROCEDURAL POSTURE OF CASE

1.  On September 15, 2016, the government filed an Information as to William J. Sears and Scott M. Dittman charging in Count 1 a violation of conspiracy to defraud the United States, securities fraud, willful violations of the Securities Act of 1933, mail fraud, and wire fraud.  In Count 2 of the Information, the United States charged Mr. Sears with a violation of a false return of the United States Income Tax Return in violation of Title 26 U.S. Code § 7206(1).  (DOC. 1)

2. That same day, not guilty pleas were entered by both Mr. Sears and Mr. Dittman in an initial appearance before the Court.

3. Previous counsel for Mr. Sears filed a Notice of Disposition on September 16, 2016, (DOC. 5) and a change of plea hearing was set for November 14, 2016.

4. On November 14, 2016, defendant William J. Sears pled guilty to Counts 1 and 2 of the Information in accordance with a plea agreement which was filed with the Court.

5. Since that entry of plea, sentencing for Mr. Sears has been delayed due to various factors, including his testimony in Case No. 17-cr-008-WJM, *United States v. Guy Jean-Pierre*. The delay in sentencing was for the convenience of and at the instance of the government.

## APPLICABLE LAW

6. Rule 11(d)(2) of the Federal Rules of Criminal Procedure govern the withdrawal of pleas of guilty. The rule reads as follows:

> (d) Withdrawing a guilty or nolo contendre plea. A defendant may withdraw a plea of guilty or nolo contender: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal.

7. A motion to withdraw a plea of guilty prior to sentencing is directed to the sound discretion of the trial court which discretion is reviewed for an abuse of discretion. *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005).

8. When a defendant moves to withdraw a guilty plea – after its acceptance by the District Court, but prior to sentencing – the court must assess whether there is a "fair and just reason for withdraw." *United States v. Byrum*, 567 F.3d 1255, 1264 (10th

Cir. 2009).  In determining whether there is a fair and just reason for withdrawal, the Court should consider the following seven factors:

1. Whether the defendant has asserted his innocence;

2. Whether withdrawal would prejudice the government;

3. Whether the defendant delayed in filing his motion, and if so, the reason for the delay;

4. Whether withdrawal would substantial inconvenience the court;

5. Whether close assistance of counsel was available to the defendant;

6. Whether the plea was knowing and voluntary; and

7. Whether the withdrawal would waste judicial resources.

*Id.*

9. "Although a defendant does not have an absolute right to withdraw a guilty plea, [citation omitted], the court should view a motion to withdraw with favor, granting the defendant 'a great deal of latitude.'"  *United States v. Sandoval,* 390 F.3d 1294, 1297 (10th Cir. 2004).

10. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the government has a continuing due process obligation to disclose evidence that is material either to guilt or to punishment.  *Id.* at 87.  *Kyles v. Whitley* held that the obligation to disclose includes evidence "known only to police investigators and not to the prosecutor."  514 U.S. 419 (1995).  Moreover, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf …, including the police."  *Id. at* 437-38.

11. *Giglio v. United States*, 405 U.S. 150, 153-55 (1972) extended the Brady doctrine to impeachment evidence.

12. To establish a Brady violation the defendant must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the accused; and *3) that the evidence was material. *United States v. McElhiney,* 275 F.3d 928, 932 (10th Cir. 2001).

13. In the context of the defendant's plea bargaining decision as to whether to enter a guilty plea or persist in a not guilty plea, the government's obligation to disclose Brady materials is pertinent to the accused's decision. *United States v. Ohiri,* 133 Fed. Appx. 555, 562, 2005 U.S. App. LEXIS 10677 (10th Cir. 2005) citing *United States v. Persico,* 164 F.3d 796, 814-05 (2d Cir 1999); in the same context the Seventh Circuit has noted that "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors … have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters a guilty plea." citing *McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003).

14. Whether a plea is truly voluntary and knowing requires the prosecution to disclose *Brady* material to the defendant before he enters a plea bargain. *United States v. Nelson,* 979 F.Supp.2d 123-135-36 (D.D.C. 2113)("Because the prosecution suppressed exculpatory evidence before Nelson pled guilty, Nelson's due process rights were violated to his prejudice and his guilty plea was not voluntary and knowing.")

**ARGUMENT**

15.     Since the entry of the guilty plea, Mr. Sears has learned that exculpatory evidence was withheld by the previous prosecutor who developed this case, former AUSA Kenneth Harmon.

16.     He has learned that the FBI case agent in this case lied about her credentials when she obtained two search warrants that were key and instrumental to the evidence accumulated by the Government to prosecute the Defendant.

17.     The onset of this case began with a search pursuant to a search warrant issued out of the United States District Court for the District of Colorado in May of 2014. The affidavit for the search warrant was written by FBI Agent Kate E. Funk, previously known as Kate Egan.

18.     Agent Funk claimed in the affidavit to be a certified public accountant and made financial opinions throughout the affidavit in her effort to assert probable cause. Agent Funk is not and was not a certified public accountant.

19.     If one holds herself out to be a certified public accountant falsely, that is a misdemeanor in Colorado, and if that person does it on multiple occasions, it is a felony. C.R.S. §§ 12-2-129 and 12-2-115(3)(a).

20.     The search warrant, at its beginning and at its end, asserts that the business known as Fusion Pharm, Inc. was a Ponzi scheme.  In other words, that it was not based on actual sales and revenue, but rather based on paying old investors with new investor money.  Next, the affidavit alleges that the stock of Fusion Pharm was subject to a fraudulent scheme known as "pump and dump."  However, the body of the affidavit fails to establish the truth of the assertions that Fusion Pharm was either a

Ponzi scheme or that its stock was being manipulated through pump and dump. The entire theory or predicate for the issuance of the warrant was false.

21. Mr. Sears has noted numerous misstatement of fact in the search warrant affidavit which could have been the subject of a motion to suppress as well as a violation of the doctrine of *Franks v. Delaware,* 438 U.S. 154 (1978); *United States v. McKissick,* 204 F.3d 1282, 1297 (10th Cir. 2000).

22. On November 28, 2014, a second warrant was issued out of the United States District Court for the District of Colorado. The object of this warrant was seizure of email accounts belonging to Mr. Sears and Mr. Dittman. Once again, Kate Funk claimed to be a certified public accountant, and this warrant was based, in pertinent part, on the computers and records seized in the earlier search warrant. It was the fruit of a poisonous tree.

23. The warrant issued in May for the documents at Fusion Pharm was, not only based on a totally erroneous theory of the operation of the business and the sale of the stock, but was a general warrant. As a general warrant, the government came in and seized virtually all of the financial records of the company, as well as its computers. Essentially, the search warrant itself put the company out of business.

24. Mr. Sears also asserts his innocence because the essential contention by the Government that Mr. Sears was a control person of Fusion Pharm, Inc. and that one or more companies that he operated was an affiliate of Fusion Pharm, Inc. is not factually correct. And, he asserts his innocence of the charge of securities fraud, mail fraud, wire fraud, or any other fraud involved in the securities and financing surrounding Fusion Pharm, Inc.

25. In this case, the prosecutor, Kenneth Harmon, did not reveal exculpatory evidence regarding his relationship with the attorney hired by Fusion Pharm, Inc. to assist it in its securities filings. Frederick M. Lehrer is the lawyer hired by Fusion Pharm after the services of Guy Jean-Pierre were terminated.

26. Mr. Lehr rendered far more legal opinions in support of Fusion Pharm's activities than those issued by Mr. Jean-Pierre. It would be anticipated that Mr. Lehrer would be a favorable witness for the defense. However, it turns out that Mr. Harmon and Mr. Lehrer worked together in a task force in Miami prior to Mr. Harmon accepting an Assistant United States Attorney position in Colorado. The two of them are not only colleagues, but friends.

27. Effort has been made by the prosecution to minimize and hide Lehrer's role in this case. Lehrer turned against his clients, and, in fact, testified falsely in proceedings before the Securities and Exchange Commission, with respect to his knowledge and activity with Fusion Pharm. Exculpatory evidence in this regard was withheld from Mr. Sears.

28. Mr. Sears has been debriefed and prepared for trial testimony by AUSA Jeremy Siebert, who replaced Mr. Harmon. During those meetings it became clear to Mr. Sears that the basis upon which the government claims Mr. Sears violated the securities laws and committed mail fraud or wire fraud are factually wrong.

29. At the root of this issue is whether or not Mr. Sears was really a control person for Fusion Pharm, and whether Mr. Sears' companies, Meadpoint or Vertifresh where affiliates of Fusion Pharm.

30. AUSA Siebert and Mr. Sears had several disagreements during Mr. Sears' testimony at the trial of Guy Jean-Pierre; and it became apparent that there is conflict, and perhaps animosity, as demonstrated when Mr. Siebert asked repeatedly that Mr. Sears be declared a hostile adverse witness during the trial of Guy Jean-Pierre.

31. Mr. Siebert attempted to elicit testimony from Mr. Sears that these were true facts, to which Mr. Sears balked.

32. The seven factors which the Court should consider in determining whether to grant a motion to withdraw the plea begin with whether the defendant has asserted his innocence. Mr. Sears asserts his innocence. The second factor is whether the withdrawal would prejudice the government. The government was able to get all of its witnesses to the trial of Guy Jean-Pierre, and there is no reason why they have prejudice by virtue of lost evidence or lost witnesses. Any other prejudice is unknown to Mr. Sears and it is therefore submitted that there is no real prejudice to the government.

33. The third factor is whether the defendant delayed in filing his motion, and if so, the reason for the delay. Mr. Sears has delayed filing his motion for two reasons. First, he didn't learn from prior counsel of the exculpatory evidence withheld from him or from the search warrants issued. He learned of this after his plea. Second, new counsel was appointed for Mr. Sears pursuant to the Criminal Justice Act, and it has taken new counsel a significant period of time to learn and understand the case so as to be able to make a determination as to whether a motion to withdraw the plea was in the best interest of Mr. Sears and was supportable in front of the Court.

34. The fourth factor is whether the withdrawal would substantially inconvenience the Court. It is submitted that this factor is generally not a big factor in the decision making.

35. The fifth factor is whether close assistance of counsel was available to the defendant. Although he had previous counsel, it was part of the reason why previous counsel withdrew was in order for new counsel to consider the issues with fresh eyes. Certainly, the plea was knowing and voluntary in some regards, but the withholding of exculpatory and impeachment information brings that issue into sharp relief and calls it into question. *See United States v. Nelson, supra.*

36. Finally, whether the court considers the withdrawal would waste judicial resources. It is asserted that that is not a significant factor in the matrix of decision making in this case.

37. With all of the issues raised in this motion for consideration by the Court, the determination of whether there is a fair and just reason for withdrawal is significantly in favor of such withdrawal.

## CONCLUSION

38. Wherefore, Mr. Sears requests that this Court grant his motion to withdraw his guilty plea, and set this case for a trial on the merits.

Respectfully submitted this 4th day of April, 2019.

THE LAW OFFICES OF PETER R. BORNSTEIN

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
E-mail: pbornstein@prblegal.com
*Attorney for Defendant William J. Sears*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 4th day of April, 2019, I electronically filed the foregoing **MOTION TO WITHDRAW PLEA OF GUILTY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


                                s/ *Jeannette Wolf*
                                THE LAW OFFICES OF PETER R. BORNSTEIN