**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 16-cr-301-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.    WILLIAM J. SEARS**,

      Defendant.

---

## ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA

---

Defendant William J. Sears ("Sears") pleaded guilty in November 2016 to one count of conspiracy to defraud the United States (18 U.S.C. § 371) and one count of filing a false income tax return (26 U.S.C. § 7206(1)).  (ECF Nos. 41, 48, 84.)  His sentencing has been postponed pending his opportunity to testify in the Government's case against Guy Jean-Pierre, a co-conspirator who, for procedural reasons not relevant here, was charged in a separate criminal action.  (*See* Criminal Case No. 17-cr-008-WJM.)  Jean-Pierre went to trial before the undersigned in January 2019, and Sears testified at the trial, as expected.  The Court then set Sears's sentencing hearing for July 11, 2019.

On May 4, 2019, Sears filed a Motion to Withdraw Plea of Guilty (ECF No. 139), which is currently before the Court.  The Government filed a response opposing the relief sought in the motion (ECF No. 144) and Sears filed a reply (ECF No. 149).  Having reviewed these materials, and having reviewed the plea agreement (ECF Nos.

41–42) and the transcript of the change-of-plea hearing (ECF No. 84), the Court finds

that Sears has not met the standard for withdrawing a guilty plea. His motion will be

denied.

## I. BACKGROUND

This prosecution came to the Court essentially as a pre-arranged plea deal. On

September 15, 2016, Sears and his co-defendant in this case (Scott Dittman) were both

charged by information with conspiracy to defraud the United States, and Sears alone

was charged with filing a false income tax return. (ECF No. 1.) That same day, both

defendants waived the indictment (ECF Nos. 16, 17) and then filed notices of

disposition the following day (ECF Nos. 3, 5).

The essence of the Government's conspiracy charge was that Sears and Dittman

had worked together to build a business called FusionPharm, but took numerous steps

to, among other things, conceal Sears's relationship to the company (given Sears's prior

conviction for federal securities fraud), and create free-trading FusionPharm shares

without truthfully satisfying federal regulatory requirements for such shares. This, the

Government charged, was a willful evasion of federal securities laws and therefore a

conspiracy to defraud the United States.

Sears's plea agreement details the conspiracy over the course of approximately

twenty-five pages. (ECF No. 41 at 12–25 & ECF No. 42 at 1–12.) These facts were

mostly stipulated. Some were augmented by footnotes describing additional facts

Sears or Dittman, or both, would introduce (if there were a trial, apparently), mostly

regarding alleged advice of counsel. (*See, e.g.*, ECF No. 41 at 15 n.5, 17 n.8, 22 n.15,

24 n.18; ECF No. 42 at 6 n.25.) A few facts were disputed, mostly in the sense that

2

Sears or Dittman believed the Government was stating its case too strongly, but none of these facts was dispositive to the Government's case. (*See, e.g.*, ECF No. 41 at 20 n.13, 22 n.16; ECF No. 42 at 7 nn.26–27, 9 n.31.) As for the tax charge against Sears, it is detailed in two pages of unequivocally stipulated facts. (ECF No. 42 at 13–14.)

Sears's change-of-plea hearing took place on November 14, 2016. (ECF No. 48.) Sears was placed under oath. (ECF No. 84 at 2–3.) The Court then confirmed that Sears understood his oath and that false answers could subject him to a perjury prosecution. (*Id.* at 4.) After some inquiries of counsel, the Court turned back to Sears and had the following exchange:

> Q. . . . Have you read Court Exhibits 1 and 2?[1]
>
> A. Yes, I have, Your Honor.
>
> Q. Have you read them carefully?
>
> A. Yes, I have, Your Honor.
>
> Q. Have you discussed these documents with your lawyer?
>
> A. In detail, sir, yes.
>
> Q. All right. Has your lawyer answered your questions regarding Exhibits 1 and 2?
>
> A. Yes, he has.
>
> Q. When you signed Exhibits 1 and 2, did you do so voluntarily?
>
> A. Yes, I did, sir.

(ECF No. 84 at 12–13.) The Court then explained that the facts described in the plea agreement are the facts the Government believes it could prove at trial, and continued

---

[1] Court Exhibit 1 was the plea agreement and its attachments (ECF Nos. 41–43) and Court Exhibit 2 was Sears's Statement in Advance of Pleading Guilty (ECF No. 44). (*See* ECF No. 84 at 3–4.)

its exchange with Sears as follows:

> Q. . . . So do you agree that the facts that you've reviewed
> at pages 12 through 37 of the plea agreement are true?
>
> A. Yes, I do, Your Honor.
>
> Q. Is there any inaccuracy in those facts you'd like to correct
> at this time?
>
> A. No, Your Honor.

(*Id.* at 13–14.)  The Court then asked Sears to "summarize . . . what it is that you did

with respect to the counts you are pleading guilty to."  (*Id.* at 14.)  Sears responded by

describing one of the events that, according to the Government, amounted to an

evasion of federal securities laws:

> Your Honor, I was involved in the creation of a convertible
> promissory note that was backdated.  In conjunction with
> that convertible promissory note, I failed to properly disclose
> my affiliation status which enabled me to have access to free
> trading securities.  I then liquidated those free trading
> securities into the public markets for a profit and failed to
> report that profit on my personal income tax, sir.

(*Id.*)  The Court then turned to the elements of the two crimes to which Sears would

plead guilty:

> Q. All right.  And did you do so in conspiracy with at least
> one other person to engage in those acts?
>
> A. Indeed, sir.
>
> Q. All right.  And you knowingly and voluntarily participated
> in that conspiracy?
>
> A. Yes, sir.
>
> Q. And you were aware of the objective of that conspiracy?
>
> A. Yes, sir.
>
> Q. And what was the objective?

A.  To obtain free trading securities and be able to sell them into the market, sir.

Q.  All right.  Both you and your coconspirator [Dittman] acted in a manner for your shared mutual benefit within the scope of the conspiracy charged?

A.  Yes, sir.

Q.  With respect to Count 2 and the statements that you made on your—the false statements, as you've just characterized them, on your tax returns, you knew them to be false at the time you made them on the return; is that correct?

A.  Yes, sir.

Q.  And you did so—you made that false statement willfully and with the intent to violate a known legal duty?

A.  Yes, sir.

(*Id.* at 14–15.)  The Court accordingly accepted Sears's guilty plea.  (*Id.* at 26.)

## II.  LEGAL STANDARD

"A defendant may withdraw a plea of guilty * * * after the court accepts the plea, but before it imposes sentence if * * * the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The defendant "has the burden of establishing that there is a fair and just reason for allowing withdrawal of his guilty plea."  *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).  The relevant factors for the Court to consider are: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources."  *Id.*  But the first, fifth, and sixth factors are the most important—if a defendant does not persuade the Court that those factors cut in his or her favor, the Court need not examine the

remaining factors. *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009).

## III. ANALYSIS

In light of Sears's arguments, the Court finds it most effective to first examine assertion of innocence (factor 1), followed by voluntariness (factor 6), and finally assistance of counsel (factor 5).

### A. Assertion of Innocence

Sears pleaded guilty to two crimes: conspiracy to defraud the Government, and making a knowingly false statement on a tax return. Sears nowhere asserts his innocence on the tax charge. As for conspiracy to defraud the government, his entire assertion of innocence is as follows:

> Mr. Sears also asserts his innocence because the essential contention by the Government that Mr. Sears was a control person of Fusion Pharm, Inc. and that one or more companies that he operated was an affiliate of Fusion Pharm, Inc. is not factually correct. And, he asserts his innocence of the charge of securities fraud, mail fraud, wire fraud, or any other fraud involved in the securities and financing surrounding Fusion Pharm, Inc.

> * * *

> At the root of this issue is whether or not Mr. Sears was really a control person for Fusion Pharm, and whether Mr. Sears' [other] companies, Meadpoint or Vertifresh[,] where [*sic*] affiliates of Fusion Pharm.

(ECF No. 139 ¶¶ 24, 29.)

This argument addresses two specific ways the Government accused Sears of conspiring to defraud by evasion of the securities laws: (i) concealing Sears's role in FusionPharm, and (ii) concealing the fact that other companies Sears controlled (Meadpoint and Vertifresh), through which he carried out some FusionPharm stock transactions, were not actually independent of FusionPharm or acting for their own

interests.  But that does not address all of the theories under which the Government could have proven Sears guilty.  Most notably, it does not address the specific theory Sears himself described at his change-of-plea hearing, namely, the intentional backdating of a promissory note.  (*See* Part I, above.)  This backdating made it appear that the holding period for restricted shares had been satisfied, which, in part, prompted a stock transfer agent to issue free-trading shares that otherwise should not have issued.  (*See* ECF No. 41 at 25 & ECF No. 42 at 1 (describing this transaction in more detail).)

Moreover, Sears cannot simply assert that the Government is "factually incorrect" (ECF No. 139 ¶ 24) and rest his case.  "[T]he assertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty."  *United States v. Hickok*, 907 F.2d 983, 985 n.2 (10th Cir. 1990) (internal quotation marks omitted; certain alterations incorporated).  The defendant "must affirmatively advance an objectively reasonable argument that he is innocent."  *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (internal quotation marks omitted).  Sears's motion nowhere presents such an argument.

For the first time in his reply brief, Sears elaborates, but only slightly.  He asserts that he "held a good faith belief that disclosure [of his role in FusionPharm] was not required based, in part, on advice given to him by [attorneys]."  (ECF No. 149 at 4.)  The Court could deem this argument forfeited as untimely.  *See, e.g.*, *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  But it is not enough, regardless.  Sears nowhere attempts to demonstrate that advice of counsel was a viable defense for him, legally or factually.  And Sears, again, addresses only one theory by which the

7

Government could have proven him guilty under the conspiracy charge.[2]

Finally, Sears nowhere explains why he admitted the illegality of all of this conduct, under oath, at his change-of-plea hearing. The Court finds the Supreme Court's guidance in the habeas context instructive here: "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Similarly, bare assertions of innocence with no support, and no explanation of why the defendant has gone back on his or her sworn testimony, are not entitled to consideration when the defendant moves to withdraw a guilty plea.

For all these reasons, the assertion-of-innocence factor does not weigh in Sears's favor.

## B. Voluntariness of Plea

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However, the defendant *may* raise potential constitutional deprivations to the extent they affect "the voluntary and intelligent character of the guilty plea." *Id*. Here, Sears raises what he characterizes as violations of the Government's constitutional duty following *Brady v.*

---

[2] Sears's reply brief goes on to deny that he was a de facto officer and director of FusionPharm, that FusionPharm intentionally or knowingly misstated its revenues, or that FusionPharm issued false press releases. (ECF No. 149 at 4.) He also denies that FusionPharm stock transactions via his other company, Meadpoint, were unlawful. (*Id*.) But these more granular denials are still no more than bare denials. Sears nowhere attempts to provide an objectively reasonable argument in support of any denial. *See Hamilton*, 510 F.3d at 1214.

*Maryland*, 373 U.S. 83 (1963), and *Kyles v. Whitley*, 514 U.S. 419 (1995), to disclose exculpatory evidence to the defense, including evidence known to others acting on the Government's behalf, such as law enforcement officers.  (ECF No. 139 ¶¶ 10–14.)[3]

1.    Agent Funk's CPA Status

The first alleged *Brady* violation relates to the Government's case agent, FBI Special Agent Kate Funk.  Sears argues that

> Agent Funk claimed in [a search warrant] affidavit [leading to a search warrant executed during the investigation of this case] to be a certified public accountant and [she] made financial opinions throughout the affidavit in her effort to assert probable cause.  Agent Funk is not and was not a certified public accountant.

(*Id.* ¶ 18.)  This is the extent of the argument in Sears's motion.  He makes the assertion and then moves on.  Given that Sears provides no reason for the Court to accept his rather bold accusation as true, or even potentially true, the Court could disregard it as an inadequately developed argument.  *See, e.g.*, *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013); *United States v. Martinez*, 518 F.3d 763, 768 (10th Cir. 2008).  In the interest of clarifying the record, however, the Court will address it.

The Government's response brief notes that Agent Funk's CPA status is publicly displayed on the Kansas Board of Accountancy's website,[4] which reports that she first received her "Certificate" in August 1999, that her "Certificate Status" is "Active," and that she has never had any disciplinary action brought against her.  (ECF No. 144 at 4–5.)  The Government further argues that an individual with a Kansas CPA certificate

_____

[3] Sears directs these accusations at former AUSA Kenneth Harmon only, who departed the U.S. Attorney's Office in the middle of the prosecution.  (*Id.* ¶ 15.)  Sears does not accuse AUSA Jeremy Seibert, who substituted for Mr. Harmon as lead prosecutor.

[4] *See* http://oitsapps.ks.gov/boa/IndividualLicenseeInformation.aspx?ID=105540667&lastName=Funk (last visited May 21, 2019).

may use "CPA" as a credential after his or her name if the individual is working in an industry that is not related to the practice of public accountancy. (*Id.* (citing Kan. Stat. Ann. § 1-321).) In reply, Sears says (for the first time) that he has "consulted with [a particular] lawyer and CPA in Colorado, who is prepared to testify that Ms. Funk violated the accountancy laws in Colorado and Kansas when she claimed a CPA designation." (ECF No. 149 at 3.) Sears then attaches a print-out from the "frequently asked questions" portion of the Kansas Board of Accountancy's website, which explains that an individual with a Kansas CPA certificate

> may use the CPA as a credential only. (In other words, CPA may appear after a person[']s name if they are working in an industry that is not related to the practice of public accountancy.) **CAUTION: Financial Planning, litigation support, broker/dealer services, investment advisory, consulting, management advisory and business valuation services, ALL fall under the definition of non-attest practice, and in order to use the CPA designation in connection with these services, a person must also hold a valid Kansas permit to practice.** The CPA Certificate allows a person to use the designation as a credential, not hold out or sign reports for the public as a CPA.

(ECF No. 149-1 at 6 (boldface in original).) Sears highlights the words "litigation support." (*See id.*)

Before evaluating the significance of Sears's discovery about Agent Funk, the Court notes that Agent Funk *is* a certified public accountant—the only questions are the contexts in, and purposes for which, she may represent herself as such, under Kansas law. It was therefore rather reckless of Sears's counsel to state, without qualification, "Agent Funk is not and was not a certified public accountant." (ECF No. 139 ¶ 18.)

Leaving that aside, the question is whether the Government's failure to disclose the precise nature of Agent Funk's CPA status is a *Brady* violation. Sears believes that

this information should have been used to challenge the search warrant obtained via Agent Funk's affidavit. (*Id.* ¶¶ 16–19; ECF No. 149 at 3.) The Court will mostly address the question of whether the search warrant could have been challenged in Part III.C, below, when the Court turns to the assistance-of-counsel factor. For present purposes, it suffices to point out that information suggesting that the magistrate judge should not have given as much credit to Agent Funk's representations in the search warrant seems to suggest, instead of a *Brady* violation, a potential violation of *Franks v. Delaware*, 438 U.S. 154 (1978), which holds that a law enforcement officer violates a suspect's constitutional rights if he or she knowingly offers material misstatements to secure a warrant, and *United States v. Merton*, 274 F. Supp. 2d 1156 (D. Colo. 2003), which extends *Franks* to material omissions.

Regardless, there is no *Brady* violation under the circumstances of this case because the allegedly withheld information is not *exculpatory*. How and when Agent Funk may call herself a CPA under Kansas law has nothing to do with whether Sears committed the crimes with which he was accused. The evidence is, at best, impeachment evidence, and "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). As a matter of law, then, Sears's lack of knowledge about Agent Funk's status as a CPA "certificate" holder only, and not as a fully licensed-to-practice CPA, did not render his guilty plea involuntary.[5]

---

[5] There is also an interesting question of whether Agent Funk's representation of her CPA qualifications in a sealed search warrant affidavit submitted to a federal magistrate judge can ever be deemed "hold[ing oneself] out or sign[ing] reports for the public as a CPA," and therefore requiring additional qualifications under Kansas law. (ECF No. 149-1 at 6.) But in

2. <u>AUSA Harmon's Relationship to Mr. Lehrer</u>

The second alleged *Brady* violation requires slightly more background. Part of Sears's and Dittman's scheme to obtain free-trading shares was to obtain "Rule 144 opinion letters" from attorneys who would attest that the requirements in the SEC's Rule 144 had been met to remove a restrictive legend from a stock certificate. Sears and Dittman obtained many of these letters from Jean-Pierre.[6] But Sears and Dittman later turned to Fred Lehrer, who also provided opinion letters. Sears alleges a *Brady* violation flowing from the failure to disclose the relationship between former AUSA Harmon (*see* n.3, above) and Mr. Lehrer:

> In this case, the [former] prosecutor, Kenneth Harmon, did not reveal exculpatory evidence regarding his relationship with the attorney hired by Fusion Pharm, Inc. to assist it in its securities filings. Frederick M. Lehrer is the lawyer hired by Fusion Pharm after the services of Guy Jean-Pierre were terminated.
>
> Mr. Lehr[er] rendered far more legal opinions in support of Fusion Pharm's activities than those issued by Mr. Jean-Pierre. It would be anticipated that Mr. Lehrer would be a favorable witness for the defense. However, it turns out that Mr. Harmon and Mr. Lehrer worked together in a task force in Miami prior to Mr. Harmon accepting an Assistant United States Attorney position in Colorado. The two of them are not only colleagues, but friends.
>
> Effort has been made by the prosecution to minimize and hide Lehrer's role in this case. Lehrer turned against his clients, and, in fact, testified falsely in proceedings before the Securities and Exchange Commission, with respect to his knowledge and activity with Fusion Pharm. Exculpatory evidence in this regard was withheld from Mr. Sears.

---

light of the disposition above, the Court need not reach this question.

[6] The jury in the January 2019 trial was persuaded that Jean-Pierre's attestations in these letters were knowingly false, and therefore convicted him on counts of conspiracy, mail fraud, wire fraud, and aiding and abetting Sears's and Dittman's fraud.

(ECF No. 139 ¶¶ 25–27.)  This argument is very difficult to connect to a *Brady*

violation—or any other constitutional violation—but the Court can say at least the

following.

First, Sears's reply brief makes clear that, among all the factual assertions

above, the *only* thing about Mr. Lehrer that Sears did not know at the time of his

decision to accept a plea deal was Mr. Lehrer's relationship with Mr. Harmon.  (ECF No.

149 at 2.)  Sears knew beforehand that Mr. Lehrer was not being prosecuted, that

Mr. Harmon had no intent to prosecute Mr. Lehrer, and that Mr. Lehrer had offered

testimony in an SEC proceeding that Sears considered false.  So the *Brady* evidence, if

there is any, must be the relationship between Mr. Lehrer and Mr. Harmon.

Second, Sears nowhere explains how this relationship is exculpatory.  As best

the Court can tell—and Sears himself does not make this connection—it would have

been *impeachment* evidence had Mr. Lehrer testified in a trial and, for example,

disavowed Sears's (apparent) claim that he received good-faith advice from Mr. Lehrer

about the legality of the FusionPharm stock transactions.  Knowledge that Mr. Lehrer

and Mr. Harmon are friends, and that Mr. Lehrer was not being prosecuted,[7] might give

the jury reason to suspect that Mr. Harmon was allowing Mr. Lehrer to say whatever he

---

[7] The fact that Mr. Lehrer was not being prosecuted—for whatever reason—likely could not have been considered by the jury for anything more than its impeachment value.  The Court routinely gives Tenth Circuit Criminal Pattern Jury Instruction No. 1.19, which reads in relevant part as follows:

> It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged.  The fact that another person also may be guilty is no defense to a criminal charge.

> The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

needed to say to protect himself, as a courtesy to a friend.  But again, the Government need not disclose potential impeachment evidence before the defendant decides to plead guilty.  *Ruiz*, 536 U.S. at 633.  Therefore, Sears's plea was not involuntary on this account, and so this factor does not favor allowing him to withdraw his plea.

## C.    Assistance of Counsel

Sears's current counsel was not his counsel at the time of the plea deal. Although Sears does not directly accuse his former counsel of ineffective assistance, he argues that Fourth Amendment grounds existed to challenge the three search warrants that issued during the investigation of this case, and therefore grounds existed to suppress the evidence gathered through those warrants.  (ECF No. 139 ¶¶ 17–23; ECF No. 149 at 3.)  Because Sears cannot now assert those Fourth Amendment arguments directly, *Tollett*, 411 U.S. at 267, the Court presumes that Sears means to say that his former counsel was ineffective in advising him to take a plea deal rather than to bring motions to suppress.

"When a defendant's challenge to a guilty plea is based on ineffective assistance of counsel, we apply the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)."  *Hamilton*, 510 F.3d at 1216.  That two-part test is as follows:

1.    *Objective Unreasonableness*: his "counsel's representation fell below an objective standard of reasonableness"; and

2.    *Prejudice*: "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 688, 694 (1984).  There is a "strong presumption" that an

attorney "render[s] adequate assistance and [makes] all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90.

Moreover, to demonstrate prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Going to trial" can include attempts to *avoid* trial through moving to suppress evidence. *Premo v. Moore*, 562 U.S. 115, 118 (2011). But the standard for prejudice remains high: "A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." *Id.* at 129.

Sears does not cite, much less attempt to apply, these standards. In the interest of justice, however, the Court observes the following.

Sears says that the first warrant issued in this case could have been challenged on the basis that Agent Funk is not a CPA. (ECF No. 139 ¶¶ 16–19, 22.) As already explained above (Part III.B.1), Agent Funk *is* a CPA, but she is restricted under Kansas law in the ways she may hold herself out as a CPA. So, had Sears moved to suppress on this basis, the argument would have been that full disclosure of Agent Funk's CPA status was a material fact that should not have been withheld from the magistrate judge. *See Franks*, *supra*; *Merton*, *supra*. But Sears offers no reason to believe that it was material. Even if it was, this Court would be required to reevaluate the warrant affidavit as if Agent Funk's full CPA status was disclosed and decide if probable cause still existed. *See Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). Sears offers no

reason to believe that analysis would cut in his favor.  Thus, at a minimum, he fails even to imply that the result of the proceeding would have been different had his former counsel moved to suppress on these grounds.

Sears next argues that the first warrant could also have been challenged because it described FusionPharm as a Ponzi scheme, and also as a "pump and dump" scheme to artificially inflate FusionPharm's stock price and then to sell at those artificially inflated prices, yet "the body of the affidavit fails to establish the truth of the[se] assertions."  (ECF No. 139 ¶ 20.)  This is a pure lack-of-probable-cause argument—that the magistrate judge simply made the wrong decision.  In terms of challenges to search warrants, this argument is probably the most difficult to win.  *See United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) ("Because of the strong preference for searches conducted pursuant to a warrant, the Supreme Court has instructed us to pay great deference to a magistrate judge's determination of probable cause." (internal quotation marks omitted)).  Yet again, Sears offers no reason to believe this argument had a serious chance of succeeding, and so cannot show that the result of the proceeding would have been different if his counsel had brought this motion.

Sears continues that he "has noted numerous misstatement[s] of fact in the search warrant affidavit which could have been the subject of a motion to suppress as well as a violation of the doctrine of *Franks*."  (ECF No. 139 ¶ 21.)  But, having claimed as much, Sears immediately moves on to a new argument.  This unsupported accusation does not show that the result of the proceeding would have been different if

his counsel had challenged the warrant on these grounds.[8]

As for the second warrant that issued in this case, Sears argues that it was infirm because Agent Funk again represented herself as a CPA, allegedly beyond what Kansas law permits her to do; and because the warrant was based on evidence gathered during execution of the purportedly unlawful first warrant, and so was the fruit of the poisonous tree. (*Id.* ¶ 22.) The Court's previous analysis disposes of this claim.

Finally, as for the third warrant, Sears declares that it was "based on a totally erroneous theory of the operation of the business and the sale of stock, [and] was [also] a general warrant." (*Id.* ¶ 23.) But, as usual, Sears does not elaborate. And specifically concerning the general warrant argument, "[a] motion challenging a warrant as a 'general warrant' is difficult to win. As to whether warrant language is insufficiently particular, the relevant case law puts a heavy thumb on the Government's side of the scale." *United States v. Holt*, 2019 WL 193646, at *13 (D. Colo. Jan. 14, 2019) (citing cases). Sears's bare contention that the third warrant was a general warrant, without more, is not enough to show a reasonable probability that such a motion would have succeeded.

For all these reasons, Sears has not established that he received poor advice from his former lawyer to take the plea deal. The advice-of-counsel factor therefore does not tip in his favor.[9]

---

[8] Sears also nowhere says that the misstatements, whatever they were, flowed from some error that Agent Funk committed because she had "only" a CPA certificate.

[9] To the extent Sears sees a lack of proper advice from counsel as bearing on the voluntariness factor, and not just the advice-of-counsel factor, *see Hamilton*, 510 F.3d at 1215 (acknowledging that ineffective assistance of counsel can render a plea involuntary), the foregoing analysis equally demonstrates that the assistance Sears received from his former counsel was not so deficient (if it was deficient at all) as to be constitutionally ineffective, and so

\* \* \*

In sum, Sears has not carried his burden to demonstrate that any of the three crucial factors favors him, so the Court need not examine the remaining factors. *Byrum*, 567 F.3d at 1265. Sears has not established "a fair and just reason for requesting the withdrawal" of his guilty plea. Fed. R. Crim. P. 11(d)(2)(B). The Court therefore will not permit him to withdraw the plea.

## IV. CONCLUSION

For the reasons set forth above, Sears's Motion to Withdraw Plea of Guilty (ECF No. 139) is DENIED.

Dated this 22nd day of May, 2019.

BY THE COURT:

William J. Martinez
United States District Judge

---

his plea cannot be considered involuntary on that account.