IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00301-WJM

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**1. WILLIAM J. SEARS,**

    Defendant.

## SEARS' OBJECTION TO PRESENTENCE INVESTIGATION REPORT

Defendant, William J. Sears, by his counsel of record, Peter R. Bornstein, hereby submits his objections to the Presentence Investigation Report as provided in Rule 32(f) of the Federal Rules of Criminal Procedure.

**Objection to ¶ 16.** Defendant objects to the language that shares in Baby Bee Bright would go to both Sears and Dittman. Dittman received most of the stock in Baby Bee Bright, and not Sears. Defendant also objects to the language that Family Member A was appointed to act as a director in part to avoid disclosure of Sears' involvement and his prior conviction for securities fraud. Pursuant to advice from counsel, Family Member A was to only be a placeholder and resigned within four months of the transaction. Family Member A was not appointed to avoid disclosure of Sears' involvement.

**Objection to ¶ 17.** In footnote number 3, Defendant objects to the characterization of the advice from Counsel B regarding selling product to legal marijuana

cultivators. Counsel B suggested to Sears and Dittman to have a private company work directly with the marijuana growers rather than FusionPharm.

**Objection to ¶ 18.** Defendant objects to the language that control of Baby Bee Bright went to both Sears and Dittman inasmuch as Dittman controlled 86.6% of the outstanding stock.

**Objection to ¶ 19.** Once the transaction of turning Baby Bee Bright's stock to FusionPharm's name was completed, Sears removed himself as the "Administrative Officer" as the company was now that of Scott Dittman.

**Objection to ¶ 20.** Defendant objects to the designation of the individual denominated "A" as a co-conspirator; and denies the implication that his email to "A" regarding a business plan and financial projections was based on conspiratorial activity. It was based on the fact that Sears has no training on financial projections, nor does he have the ability to write a business plan and he did not want to be involved in this part of the creation of a new business.

**Objection to ¶ 21.** Defendant objects to the implication that Dittman and Sears operated FusionPharm as business partners, and that Sears was primarily responsible for FusionPharm's capital formation and investor relations. Defendant admits that there was communication and consultation that fell far short of a partnership.

**Objection to ¶ 22.** Defendant objects to the description that he or any of the entities through which he conducted business was an affiliate of or a related party to FusionPharm. Additionally, any reports that were uploaded to the OTC Link internet platform by Defendant were done purely as a ministerial act and not a substantive act.

Finally, Defendant's activities with respect to this paragraph received approval by the company securities counsel and secretary.

**Objection to ¶ 23.**  Defendant denies having a formal role in FusionPharm and that his company and FusionPharm worked together.  Furthermore, any documents giving Defendant formal title in the company were unofficial documents that appeared only at the beginning for a very limited time until corporate counsel advised Dittman to ensure that Sears had no formal role in the company.

**Objection to ¶ 24.**  Defendant objects to being categorized as acting as a Chief Financial Officer because he does not have the knowledge or experience to do so.  In addition, he only signed checks for Dittman when Dittman's bank closed his account because the bank thought Dittman was deceased.  Once this mistake was rectified, all check writing ceased.  Defendant's receipt of a salary was a mistake made by a new employee who should have treated him through an IRS Form 1099 and not on the payroll.  Finally, Defendant's use of FusionPharm's email address was terminated on advice of securities counsel which was followed by the Defendant immediately.

**Objection to ¶ 26.**  Defendant objects to being labeled as a *de facto* affiliate, and denies that sales of preferred shares in Microcap were in violation of securities laws.

**Objection to ¶ 27.**  Defendant objects to the implication that the transactions involving Family Members B and C were merely proxies for his stock ownership, and asserts that there were legitimate reasons for these transactions.

**Objection to ¶ 28.** Defendant objects to the characterization of these transactions because securities counsel oversaw most of the documentation regarding

these stock transactions and approved of them. Moreover, most investors were told that these (free) shares were Dittman's from a previous deal.

**Objection to ¶ 29.** Defendant objects because he received advice from securities counsel that these transactions were approved. Defendant submitted the documents required as the control person for Microcap.

**Objection to ¶ 30.** Defendant objects to the characterization that Dittman's inquiries to Sears about money made in the market was due to a conspiracy, but rather because Sears owed money to Dittman for the manufacturing of pods.

**Objection to ¶ 31.** Defendant objects to the contention that Bayside was an entity used by the Defendant to secure FusionPharm stock, and contends that Sears' mother owned Bayside and that the three lawyers providing securities advice to FusionPharm knew of this fact.

**Objection to ¶ 33.** Defendant objects to the comment that Dittman was identified as a VertiFresh director. VertiFresh was a limited liability company without any directors and was owned by Sears solely.

**Objection to ¶ 34.** Defendant objects to the statement that Dittman owned 50% of Meadpoint.

**Objection to ¶ 35.** Defendant objects that Dittman sold stock through any of the companies identified as Microcap, Bayside, VertiFresh, and Meadpoint.

**Objection to ¶ 36.** Defendant objects because he was acting on advice of counsel to create two notes. Family Member A was a legitimate owner of Bayside at that time, and the dates on the notes were affixed as to when the loan money was first

taken by the company. Thus, the backdating of notes to May 2, 2011 was not a fraudulent act.

**Objection to ¶ 37.** Defendant objects to this paragraph as being nonsensical and wrong.

**Objection to ¶ 38.** Defendant objects to the characterization of the notes as non-convertible, as they were always convertible.

**Objection to ¶ 40.** Defendant objects to the statement that the notes were at some time non-convertible. Defendant also objects that this was part of a fraudulent scheme and that three securities lawyers oversaw the transactions and he was led to believe that it was legal.

**Objection to ¶ 42.** Defendant objects to being labeled as an affiliate because he was advised by securities lawyers that he was not an affiliate. Accordingly, no volume restrictions were violated.

**Objection to ¶ 43.** Defendant objects to this paragraph because he was advised by counsel that all representations made were in compliance with securities laws.

**Objection to ¶ 45.** Defendant objects to this paragraph because he contends that he did not mislead the transfer agent and, once again, he was advised by securities lawyers that he was in compliance with securities law.

**Objection to ¶ 46.** Defendant objects to being labeled as an employee when he was never employed directly with FusionPharm.

**Objection to ¶ 47.** Defendant objects to the language that the conversion of the Meadpoint note into shares of FusionPharm common stock was something other than what it purported to be.

**Objection to ¶ 49.** Defendant objects because he had no stock to sell for the month of January which was the month when FusionPharm stock sold for the highest price ever. Defendant did not get any stock until the middle of February of 2014.

**Objection to ¶ 50.** Defendant objects to the idea that funds were treated as owned collectively with Dittman. Dittman's funds were his and Sears' funds were his.

**Objection to ¶¶ 52 - 65.** Defendant objects to all factual statements implicating him in creating, preparing or commenting, on revenue recognition or its reporting from the sale of FusionPharmPods. He is not competent in finances.

**Objection to ¶¶ 71 - 78.** Defendant denies that his failure to file or pay taxes in these years was done willfully, and asserts that he was in the process of catching up on his taxes when the government conducted its search warrants and raiding of the business.

**Objection to ¶¶ 85 – 114 concerning Guy M. Jean-Pierre.** Defendant objects to the inclusion of the presentence investigation report information on Guy Jean-Pierre as Defendant was not provided with this information through discovery and does not know whether it is substantially correct or not. Jean-Pierre was not convicted of conspiring with the Defendant.

**Objection to ¶¶ 108 - 111.** Defendant objects because his statements were scripted by the FBI and IRS agents who were directing the undercover operation.

**Objection to ¶ 130.** Defendant objects to the use of inaccurate or false allegations to compute the offense level as contained in the previous objections.

**Objection to ¶ 133.** Defendant objects to this paragraph giving him a 4-level increase because he acted as an organizer or leader of a criminal activity that involved

five or more participants because he denies being an organizer or leader of any criminal activity.

**Objection to ¶ 137.** Defendant objects to this paragraph giving him a 2-level increase for failure to report income from criminal activity because he denies this income was from criminal activity.

**Objection to ¶ 138.** Defendant objects to this paragraph because the failure to file income tax returns is not sophisticated means.

**Objection to ¶ 160.** Defendant objects to this paragraph because he remained in Queens until the age of 16 and not until the age of 7.

**Objection to ¶ 161.** Defendant objects to this paragraph because he remained in Queens until the age of 16 and not until the age of 7.

**Objection to ¶ 173.** Defendant objects to this paragraph because the Defendant has Diabetes and controls it with diet and, therefore, his health is not "good".

Respectfully submitted this 18th day of June, 2019.

**THE LAW OFFICES OF PETER R. BORNSTEIN**

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
E-mail: pbornstein@prblegal.com
*Attorney for Defendant William J. Sears*

## CERTIFICATE OF SERVICE

       I hereby certify that on this 18th day of June, 2019, I electronically filed the foregoing **SEARS' OBJECTION TO PRESENTENCE INVESTIGATION REPORT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                  *s/ Jeannette Wolf*
                                  THE LAW OFFICES OF PETER R. BORNSTEIN