1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 16-cr-0301-WJM-1
3
   UNITED STATES OF AMERICA,
4
   Plaintiff,
5
   vs.
6
   WILLIAM J. SEARS,
7
   Defendant.
8
   ------------------------------------------------------------
9
                       REPORTER'S TRANSCRIPT
10                        (Change of Plea)

11 ------------------------------------------------------------

12      Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13 Judge, United States District Court for the District of

14 Colorado, commencing at 10:04 a.m., on the 14th day of

15 November, 2016, in Courtroom A801, United States

16 Courthouse, Denver, Colorado.

17
                            APPEARANCES
18
        KENNETH M. HARMON and TONYA S. ANDREWS, Assistant U.S.
19 Attorneys, 1801 California Street, Suite 1600, Denver,
   Colorado 80202, appearing for the plaintiff.
20
        FREDERIC M. WINOCUR, Ridley McGreevy & Winocur, P.C.,
21 303 16th Street, Suite 200, Denver, Colorado 80202,
   appearing for the defendant.
22

23              MARY J. GEORGE, FCRR, CRR, RMR
              901 19th Street, Denver, Colorado 80294
24        Proceedings Reported by Mechanical Stenography
                Transcription Produced via Computer
25
```

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | (Call to order of the court at 10:04 a.m.) |
| 3 | THE COURT:  We're on the record in criminal case |
| 4 | No. 16 cr 301, defendant 1, United States of America versus |
| 5 | William Sears.  I'll take appearances of counsel. |
| 6 | MR. HARMON:  Good morning, Your Honor.  Kenneth |
| 7 | Harmon on behalf of the United States.  Seated to my left |
| 8 | is Assistant United States Attorney Tonya Andrews, who's |
| 9 | cocounsel -- one of the cocounsels on the case.  To my |
| 10 | right are the Government's case agents, Special Agent Kate |
| 11 | Funk with the FBI and Special Agent Michael Godson with the |
| 12 | Internal Revenue Service's Criminal Services Investigation. |
| 13 | THE COURT:  Good morning to all four of you. |
| 14 | MR. WINOCUR:  Good morning, Your Honor.  Frederic |
| 15 | Winocur, registration No. 22112.  Appearing with me is |
| 16 | William Sears.  We are ready to proceed to hearing this |
| 17 | morning. |
| 18 | THE COURT:  All right.  Good morning to the two of |
| 19 | you. |
| 20 | THE DEFENDANT:  Good morning. |
| 21 | THE COURT:  All right.  Mr. Winocur, will you and |
| 22 | your client please approach the lectern. |
| 23 | Ms. Hansen, please administer the oath to the |
| 24 | defendant. |
| 25 | COURTROOM DEPUTY:  Please raise your right hand, |

1    sir.

2         (Defendant sworn in)

3              THE COURT:  The record reflects that Mr. Sears was

4    charged by an information dated the 15th of September of

5    this year.  He was arraigned the same day, at which time he

6    entered a plea of not guilty to Counts 1 and 2 of the

7    information, and he denied the criminal forfeiture

8    allegations in that information.  The following day the

9    defendant filed with this Court a notice of disposition and

10   he requested that this matter be set for a change of plea

11   hearing.

12             According to the plea agreement reached between

13   the parties, the defendant wishes to enter a guilty plea to

14   Counts 1 and 2 of the information, charging a violation of

15   18 United States Code Section 371, and 26 United States

16   Code Section 7206(1).  In addition, the defendant agrees to

17   admit the forfeiture allegation in the information and

18   confess forfeiture of all items the Government has in its

19   possession and as to which the defendant can make any

20   claim.

21             I have before me Court Exhibit 1, which is a plea

22   agreement of the parties.  Voluminous plea agreement.  Has

23   appended to it Exhibits A and B.  Exhibit A is the

24   information and Exhibit B -- Mr. Harmon how do we

25   succinctly summarize Exhibit B for the record?

1          MR. HARMON:   That was a letter agreement between

2     the parties that set forth the operative terms for this

3     plea agreement, that was superseded by this plea agreement.

4          THE COURT:   Okay.   The agreement, itself -- the

5     plea agreement, itself, Exhibit 1, on page 47, has been

6     dated and signed by the defendant, the attorney for the

7     defendant, and the Assistant United States Attorneys.   And

8     I note that it -- at the top of that page -- let's see --

9     all right, so not the top of the page, the bottom of the

10    page, Exhibit -- footnote, rather, 40 makes reference to

11    the plea agreements superseding the letter agreement, which

12    is appended as Exhibit B.

13         All right.   Also before me is Court Exhibit 2,

14    which is the Statement by Defendant in Advance of Plea of

15    Guilty.   Exhibit No. 2 has been dated and signed by the

16    defendant as well as the defendant's attorney.

17         All right.   Mr. Sears, do you understand that you

18    are under oath and that if you answer any of my questions

19    falsely, your answers may later be used against you in a

20    separate prosecution for perjury?

21         THE DEFENDANT:   I do, sir.

22         THE COURT:   Do you understand that you have the

23    right to remain silent and not to answer any of my

24    questions?

25         THE DEFENDANT:   I do, Your Honor.

```
 1              THE COURT:  Do you give up your right to remain
 2    silent in order to answer the questions I need to ask you
 3    at this hearing?
 4              THE DEFENDANT:  I understand that.
 5              THE COURT:  The question is, do you give up your
 6    right to remain silent in order to answer the questions I
 7    need to ask you at this hearing?
 8              THE DEFENDANT:  Yes, I do.  Sorry.
 9              THE COURT:  All right.  What is your true,
10    correct, and full name?
11              THE DEFENDANT:  William Joseph Sears.
12              THE COURT:  How old are you?
13              THE DEFENDANT:  50 years old.
14              THE COURT:  What level of schooling have you
15    completed?
16              THE DEFENDANT:  High school.
17              THE COURT:  Can you read and write in the English
18    language?
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  Are you now under the influence of any
21    medication, drug, or alcohol?
22              THE DEFENDANT:  I am not.
23              THE COURT:  Is there anything about the way you
24    feel right now that prevents you from understanding what is
25    happening at this hearing?
```

1           THE DEFENDANT:  No.

2           THE COURT:  All right.  Based on the statement of

3       the defendant and my observations, I find that he is

4       competent to proceed with this hearing.

5           Now, Mr. Sears, have you read and discussed the

6       charge to which you will be pleading guilty with your

7       attorney?

8           THE DEFENDANT:  Yes, I have, Your Honor.

9           THE COURT:  Do you understand the charge to which

10      you will be pleading guilty?

11          THE DEFENDANT:  Yes, I do, Your Honor.

12          THE COURT:  All right.  Mr. Winocur, will you

13      please outline for the record the important terms of the

14      parties' plea agreement.

15          MR. WINOCUR:  Mr. Sears will be pleading guilty to

16      Count 1, which is 18 U.S.C. 371, conspiracy to defraud

17      United States, in particular the Securities and Exchange

18      Commission.  He will also be entering a plea to Count 2, 26

19      U.S.C. 7206(1), which is filing a false tax return.

20          Does the Court wish for me to outline the

21      sentencing -- terms of the sentencing agreement?

22          THE COURT:  Well, just what are the -- from your

23      perspective.  And I'll ask the Government if the Government

24      has anything to add to what you believe are the important

25      terms of the plea agreement.  First of all, is there a

1    waiver in this agreement?

2           MR. WINOCUR:  There is, Your Honor, that's

3    correct.  There also is an appellate waiver and collateral

4    attack --

5           THE COURT:  Okay.  So we'll talk about that later

6    because I take those waivers very seriously and I inquire

7    of those later in the hearing, so we separate that out and

8    I make sure that the defendant understands fully what he is

9    doing with respect to an appellate and collateral challenge

10   waiver.

11          Beyond that, are there any other terms of the

12   agreement that you would like to point out for the record?

13          MR. WINOCUR:  Your Honor, we would agree with the

14   terms as set out, as the Court noted in this fairly

15   voluminous plea agreement.  I wouldn't want to leave out

16   anything in my summary.

17          THE COURT:  Well, most of the volume is the

18   stipulated facts.  I'm not talking about the facts, I'm

19   talking about the terms of the agreement.

20          MR. WINOCUR:  Your Honor, that's correct.  Mr.

21   Sears is also agreeing to forfeit all funds that are

22   presently seized as part and parcel of this plea agreement.

23   In addition, whatever restitution is owed to the IRS will

24   also be paid from those funds as set out in the plea

25   agreement.  Mr. Sears understands that he is cooperating

1     rather extensively and will continue to cooperate

2     extensively with the United States Government.

3              And pending his -- the Government's view of his

4     cooperation, the sentencing range in this case will either

5     be between 60 months and 96 months, between five years and

6     eight years.  The Government's position at sentencing will

7     rest entirely on how Mr. Sears continues to perform between

8     now and that time.  I think those are the main parts of the

9     plea agreement, Your Honor.

10             THE COURT:  And when you mean "perform," you mean

11    both how he continues to cooperate with the Government and

12    also comply with the pretrial --

13             MR. WINOCUR:  Of course.

14             THE COURT:  -- bond requirements set upon him by

15    the magistrate judge?

16             MR. WINOCUR:  That is correct, Your Honor.  Those

17    are the conditions.

18             THE COURT:  Does the Government have anything to

19    add to the record as to the important terms of the plea

20    agreement?

21             MR. HARMON:  Just in terms of supplementation,

22    Your Honor, the plea agreement makes clear that the parties

23    take the position that the guidelines, but for the

24    statutory caps, would have exceeded eight years; however,

25    because it's a two-count information, the effective

1      guideline range is 96 months.  The Government makes clear

2      in the plea agreement that that cap is in consideration

3      for -- in consideration for -- partially, at least, for Mr.

4      Sears' cooperation to date.  And so the Government will

5      then assess, going forward, what its position is as to

6      whether there should be a 5K1 motion to reduce the

7      effective guidelines below the 96 months.  It will depend

8      upon the Government's discretion and assessment and we will

9      state our position at the time of sentencing.

10             However, the defendant is free to make an argument

11     for whatever sentence is lawful as long as it's not

12     inconsistent with the facts, up to but not below the

13     five -- five-year floor.

14             So the defendant is agreeing basically not to seek

15     a sentence below five years.  So that's the effective range

16     here.

17             THE COURT:  Okay.

18             MR. HARMON:  The Government may or may not make a

19     motion, I think all parties have the hope that the

20     cooperation will continue, and it will be substantial and

21     we will be back here.  In any event, whether a motion is

22     made or not, the Court will be presented with a guideline

23     sentence -- an effective guideline sentence of 96 months

24     and the floor of 60 months.  And where the Court goes in

25     that range will be determined in part by whether the

1        Government makes a 5K1 motion and its assessment of this

2        substantial assistance, or the assistance, and whatever

3        arguments the defendant wants to make to convince the Court

4        that there should be a variant sentence below the 96

5        months.

6                 THE COURT:  Below the downward departure should

7        the Government choose to seek one.

8                 MR. HARMON:  Well, even below the 96 months.  If

9        the Government does not seek to do a 5K1.1, there's still a

10       96-month sentence.  This defendant is free to make whatever

11       arguments he wants as long as they're not inconsistent with

12       the facts that there should be a variant sentence below the

13       96 months, but he is foreclosed under this plea agreement

14       for asking for anything below 60 months.

15                 So he goes into this plea agreement and he goes to

16       sentencing with the understanding that he is agreeing to a

17       sentence of at least 60 months imprisonment.

18                 THE COURT:  Okay.  I understand.  So the statutory

19       maximum right now for Count 1 is five years and Count 2 is

20       three years, so the statutory maximum as the information is

21       now written is the eight years, or 96 months, were I to

22       impose sentence consecutive.

23                 MR. HARMON:  That's correct.

24                 THE COURT:  All right.

25                 MR. HARMON:  And that's what the guidelines teach

1      in the case of a guideline range that otherwise would have

2      been above those statutory maxes, that's what the guideline

3      range defaults to.  The only other thing I'll add, Your

4      Honor, is that there are some occupational restrictions on

5      supervised release that the parties have agreed to.

6      They're set forth in the plea agreement.

7                THE COURT:  All right.  Are those in effect

8      pretrial, or --

9                MR. HARMON:  No, no --

10               THE COURT:  -- or presentencing?

11               MR. HARMON:  They will be addressed by the

12     probation office in the presentence, but they are -- they

13     are restrictions on what the defendant can do once he goes

14     on supervised release.  Of course subject to the Court's

15     endorsement.

16               Basically this is a securities fraud case --

17               THE COURT:  No, I understand that.  I'm asking are

18     there any professional restrictions now in place prior to

19     sentencing --

20               MR. HARMON:  No.

21               THE COURT:  -- that he has agreed to do?

22               MR. HARMON:  No.  Well, he's -- I believe he's

23     agreeing -- not part of the plea agreement, he's agreeing

24     now in this limited time not to be involved in the

25     securities industry.  There's a parallel civil -- there's a

| | |
|---|---|
| 1 | parallel SEC action that will ultimately foreclose him from |
| 2 | being in the securities industry. |
| 3 | THE COURT:  Okay. |
| 4 | MR. WINOCUR:  That's true, Your Honor.  Setting |
| 5 | aside that Mr. Sears is on unsupervised pretrial release at |
| 6 | the moment, the only condition is he surrender his |
| 7 | passport.  He's on an unsecured PR bond.  He did execute |
| 8 | an -- there has been an execution of -- a parallel |
| 9 | settlement with the SEC that would preclude Mr. Sears from |
| 10 | operating in that industry as a fiduciary or involved in |
| 11 | any capacity with a publicly traded company as an officer |
| 12 | or director. |
| 13 | THE COURT:  All right. |
| 14 | MR. HARMON:  That's all I have. |
| 15 | THE COURT:  Okay.  Thank you, counsel.  All right, |
| 16 | Mr. Sears, back to you.  Have you read Court Exhibits 1 and |
| 17 | 2? |
| 18 | THE DEFENDANT:  Yes, I have, Your Honor. |
| 19 | THE COURT:  Have you read them carefully? |
| 20 | THE DEFENDANT:  Yes, I have, Your Honor. |
| 21 | THE COURT:  Have you discussed these documents |
| 22 | with your lawyer? |
| 23 | THE DEFENDANT:  In detail, sir, yes. |
| 24 | THE COURT:  All right.  Has your lawyer answered |
| 25 | your questions regarding Exhibits 1 and 2? |

1          THE DEFENDANT:  Yes, he has.

2          THE COURT:  When you signed Exhibits 1 and 2, did

3    you do so voluntarily?

4          THE DEFENDANT:  Yes, I did, sir.

5          THE COURT:  Now, the plea agreement at pages 12

6    through 37 contain a significant number of stipulated

7    facts.  You just told me that you -- when you reviewed

8    Exhibit 1, that you reviewed those facts carefully, and so

9    I'm not going to ask you to go through those now because it

10   will take a long time, it's 25 some pages, so I'm relying

11   on your representation to me that you've already reviewed

12   these carefully.

13          So I'm going to proceed to ask you -- or, first,

14   let me state that the way these plea agreements are

15   structured, the facts that you've reviewed at pages 12

16   through 37 are the facts that the Government believes it

17   could prove at trial.  And so when you enter into this plea

18   agreement, you are admitting these facts and I will treat

19   them as true for purposes of considering your plea and for

20   purposes of sentencing.

21          So do you agree that the facts that you've

22   reviewed at pages 12 through 37 of the plea agreement are

23   true?

24          THE DEFENDANT:  Yes, I do, Your Honor.

25          THE COURT:   Is there any inaccuracy in those facts

1      you'd like to correct at this time?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  All right.  And admittedly it will

4      probably be an abbreviated form, can you summarize for me

5      what it is that you did with respect to the counts you're

6      pleading guilty to.  And I'm -- just so you know, I ask

7      defendants to do that so that I know that they understand

8      what it is that they're pleading guilty to.

9              THE DEFENDANT:  Your Honor, I was involved in the

10     creation of a convertible promissory note that was

11     backdated.  In conjunction with that convertible promissory

12     note, I failed to properly disclose my affiliation status

13     which enabled me to have access to free trading securities.

14     I then liquidated those free trading securities into the

15     public markets for a profit and failed to report that

16     profit on my personal income tax, sir.

17             THE COURT:  All right.  And did you do so in

18     conspiracy with at least one other person to engage in

19     those acts?

20             THE DEFENDANT:  Indeed, sir.

21             THE COURT:  All right.  And you knowingly and

22     voluntarily participated in that conspiracy?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And you were aware of the objective of

25     that conspiracy?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And what was the objective?

3          THE DEFENDANT:  To obtain free trading securities

4     and be able to sell them into the market, sir.

5          THE COURT:  All right.  Both you and your

6     coconspirator acted in a manner for your shared mutual

7     benefit within the scope of the conspiracy charged?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  With respect to Count 2 and the

10    statements that you made on your -- the false statements,

11    as you've just characterized them, on your tax returns, you

12    knew them to be false at the time you made them on the

13    return; is that correct?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And you did so -- you made that false

16    statement willfully and with the intent to violate a known

17    legal duty?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.  All right, counsel, for

20    the factual basis, may the Court rely on the stipulated

21    facts in the plea agreement?

22         MR. HARMON:  From the Government's perspective,

23    yes, Your Honor.

24         MR. WINOCUR:  Yes, Your Honor.

25         THE COURT:  All right.  Thank you, counsel.

1        All right, Mr. Sears, I'm advising you that you

2   have the following constitutional rights you will be giving

3   up if you plead guilty.  You have the right to plead not

4   guilty to any offense charged against you.  You have the

5   right to a speedy and public trial.  You have the right to

6   a trial by a jury of 12 persons whose verdict must be

7   unanimous; and at trial you would be presumed innocent and

8   the Government would have to prove your guilt beyond a

9   reasonable doubt.

10        You have the right to the assistance of legal

11   counsel for your defense throughout these proceedings even

12   if you do not enter a plea of guilty.  You have the right

13   with your lawyer to confront and cross-examine all

14   witnesses at trial and to challenge all evidence presented

15   against you.

16        At trial, you have the right to testify yourself

17   on your own behalf, but you also have the privilege against

18   self-incrimination.  That means you have the right not to

19   testify or incriminate yourself in any way.  By pleading

20   guilty, you're giving up that right and you are

21   incriminating yourself.  If you went to trial and were

22   convicted, you'd have the right to appeal both your

23   conviction and your sentence.  Do you understand these

24   rights?

25        THE DEFENDANT:  I do, Your Honor.

1    THE COURT:  Do you understand that if your plea is

2    accepted, you will be incriminating yourself, you will be

3    giving up your right to a jury trial and most of the other

4    rights I've just described?

5    THE DEFENDANT:  I do, Your Honor.

6    THE COURT:  Do you give up those rights?

7    THE DEFENDANT:  I do, Your Honor.

8    THE COURT:  All right.  Mr. Winocur, will you

9    please state for the record the scope of your client's

10   limited waiver of his appellate and collateral challenge

11   rights.  And basically since this is your first change of

12   plea in front of me, what I'm getting at and what I want to

13   get on the record are the exceptions to the appellate and

14   collateral challenge waivers.

15   MR. WINOCUR:  Thank you, Your Honor.  Mr. Sears

16   understands that this agreement contains a waiver of his

17   right to appeal or collaterally attack the sentence.  The

18   only exceptions with respect to appealing the sentence

19   would be if the Court imposed a sentence that exceeded the

20   96-month statutory maximum.

21   He's also agreed to waive his right to

22   collaterally challenge the prosecution, conviction, and

23   sentence, and the manner in which it was determined.  Any

24   collateral attack.  And the exceptions there would be

25   unless there's an explicitly retroactive change in the

1    applicable guidelines or sentencing statute; or if there's

2    a claim that he was denied effective assistance of counsel;

3    and, thirdly, if there's a claim of prosecutorial

4    misconduct.

5           Short of those exceptions, he is waiving his right

6    to collaterally challenge this conviction.

7           THE COURT:  All right.  Mr. Sears, do you

8    understand and do you agree to the limitations contained in

9    your plea agreement on your right to appeal the sentence I

10   will impose in this case or the manner in which I will

11   determine it?

12          THE DEFENDANT:  I do, Your Honor.

13          THE COURT:  Do you understand and do you agree to

14   the limitation that is contained in your plea agreement on

15   your right to appeal or challenge this prosecution or your

16   conviction?

17          THE DEFENDANT:  I do, Your Honor.

18          THE COURT:  All right.  All right, Mr. Harmon,

19   will you please inform the defendant of the charges to

20   which he will be pleading guilty, please state the elements

21   of the charges, the maximum sentence, and maximum fine.

22          MR. HARMON:  Thank you, Your Honor.

23          Mr. Sears, in Count 1, you are charged with

24   conspiring with Scott Dittman and other people, both known

25   and unknown, to do two things:  To defraud the United

1    States and one of its agencies, the Securities and Exchange

2    Commission, and to commit specific offenses against the

3    United States, including securities fraud, a statutory

4    provision of the Securities Act of 1933, mail fraud and

5    wire fraud in violation of Title 18 United States Code

6    Section 371.

7            In order to be found guilty of that offense, if

8    you were to proceed to trial, the Government would have to

9    establish the following by evidence beyond a reasonable

10   doubt:  First, that you agreed with at least one other

11   person to violate the law; second, one of the

12   co-conspirators alleged in this conspiracy engaged in at

13   least one of the overt acts -- at least one overt act

14   furthering the conspiracy's objective; third, that you knew

15   the essential objective of the conspiracy; fourth, the

16   defendant knowingly -- you knowingly and voluntarily

17   participated; and, fifth, that there was interdependence

18   among the members of the conspiracy, that is, the members

19   in some way or manner intended to act together for their

20   shared mutual benefit within the scope of the charged

21   conspiracy.

22           With respect to the second count, Mr. Sears, you

23   are charged -- you are charged with filing a -- willfully

24   making and subscribing to -- eventually filing a U.S.

25   income tax return on 1040 EZ for the year 2011 which you

1    verified through a written declaration under penalty of

2    perjury, and you are alleged to have known that -- and

3    believed that not every part of that filing was true in

4    material respect -- true and correct, in particular your

5    representation that your total adjusted gross income for

6    the year was $7500.

7            It alleges that you then and there well knew that

8    your adjusted income was significantly higher.  You're

9    alleged to have done this willfully.  And this is alleged

10   to be in violation of Title 26 United States Code Section

11   7206(1).

12           In order to be found guilty of that charge, were

13   the Government to proceed to trial with you, we would need

14   to prove beyond a reasonable doubt the evidence that would

15   show that you signed or subscribed to the income tax return

16   in question, that contained a written declaration made

17   under the penalties of perjury; the second element, that

18   the return contained a false statement as alleged in the

19   charging document and information; third, that you knew the

20   statement was false; fourth, that you acted willfully, that

21   is, with the intent -- the voluntary intent to violate a

22   known legal duty; and, fifth, that the statement was

23   material.

24           THE COURT:  All right.  Did you state the maximum

25   sentence --

1          MR. HARMON:  Oh, I'm sorry, Your Honor, I forgot

2    that --

3          THE COURT:  The maximum sentence, max --

4          MR. HARMON:  Sure.

5          THE COURT:  -- and maximum fine.

6          MR. HARMON:  With respect to Count 1, sir, the

7    maximum sentence is a term of not more than five years

8    imprisonment, not more than a $250,000 fine, could be both,

9    followed by three years of not more than three years of

10   supervised release, a $100 special assessment fee, and

11   restitution.

12         With respect to Count 2, the maximum term of

13   imprisonment is three years, a fine of not more than

14   $250,000, and you could be assessed both, the cost of

15   prosecution as well.  There would be a maximum supervised

16   release term of not more than three years and a special

17   assessment fee of $100.

18         THE COURT:  Thank you, Mr. Harmon.

19         Mr. Sears, do you understand the consequences of

20   your plea including the maximum sentence that could be

21   imposed upon you in this case?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  All right.  Do you understand that I

24   can impose a sentence that is more severe or less severe

25   than that recommended or set forth in your plea agreement?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  Do you understand that even if you're

3    disappointed with the sentence that I do impose, that will

4    not be a basis for you to withdraw your guilty plea?

5          THE DEFENDANT:  I do, Your Honor.

6          THE COURT:  Do you understand that when you're

7    released from prison, some of the conditions of your

8    release to which you may be subject include that you may

9    not commit any new federal, state or local crime and you

10   may not possess any illegal substances?

11         THE DEFENDANT:  I do, Your Honor.

12         THE COURT:  Do you understand that if you violate

13   any conditions of supervised release, you may be returned

14   to prison for all or part of the remaining term of

15   supervised release?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  Are you presently on parole,

18   probation, or supervised release as the result of a

19   conviction of any other crime?

20         THE DEFENDANT:  No, sir, I am not.

21         THE COURT:  Do you understand you're pleading

22   guilty today to a felony offense?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you understand that conviction of a

25   felony offense may deprive you of certain civil rights,

```
 1          including the right to possess a firearm, the right to

 2          vote, the right to hold public office, and the right to

 3          serve on a jury?

 4                  THE DEFENDANT:  I do, Your Honor.

 5                  THE COURT:  Do you understand that in the federal

 6          system, parole has been abolished and although you may earn

 7          good time, depending on your behavior if you are sent to

 8          prison, you will not be released on parole?

 9                  THE DEFENDANT:  I do understand that.

10                  THE COURT:  Has anyone threatened you or your

11          family in order to force you to plead guilty in this case?

12                  THE DEFENDANT:  No, Your Honor.

13                  THE COURT:  Are you satisfied with the

14          representation your attorney's provided to you?

15                  THE DEFENDANT:  I am, Your Honor.

16                  THE COURT:  Have you understood everything that I

17          have told you or asked of you today?

18                  THE DEFENDANT:  I have, sir.

19                  THE COURT:  Having in mind all that we have

20          discussed regarding your plea of guilty, the rights you

21          will be giving up, and the maximum sentence you may

22          receive, do you still wish to plead guilty?

23                  THE DEFENDANT:  I do, Your Honor.

24                  THE COURT:  Very well.  Other than arraigning the

25          defendant on Counts 1 and 2 of the information, do counsel
```

1    agree the Court has complied with the requirements of

2    Rule 11?

3            MR. HARMON:  Yes, Your Honor.

4            MR. WINOCUR:  Yes, Your Honor.

5            THE COURT:  Thank you, counsel.  All right.  Mr.

6    Harmon, will you please arraign the defendant on Counts 1

7    and 2 of the information as well as the criminal forfeiture

8    allegation of the information.

9            MR. HARMON:  Mr. Sears, do you waive formal

10   reading to this information?

11           THE DEFENDANT:  Excuse me?

12           MR. HARMON:  Do you waive formal reading to the

13   information, for me to read it word-for-word?

14           THE DEFENDANT:  Yes.

15           MR. HARMON:  With respect to Count 1, the

16   conspiracy counts, which I have summarized previously, how

17   do you now plead, sir?

18           THE DEFENDANT:  Guilty.

19           MR. HARMOM:  With respect to Count 2, the count

20   charging you with filing a false income tax return, how do

21   you now plead, sir?

22           THE DEFENDANT:  Guilty.

23           MR. HARMON:  With respect to the notice of

24   forfeiture allegation -- the forfeiture allegations set

25   forth in the information, do you admit those allegations

1       and agree to the forfeiture of those assets?

2               THE DEFENDANT:  I do, sir.

3               THE COURT:  Thank you, counsel.  The Court makes

4       the following findings of fact and conclusions of law.  In

5       the matter of the United States of America versus William

6       J. Sears, case No. 16 cr 301, defendant No. 1, the

7       defendant's fully competent of entering an informed plea.

8       He's aware of the nature of the charge and the consequences

9       of that plea.

10              The defendant has thoroughly discussed his plea

11      agreement with his attorney.  The defendant has been

12      represented throughout the course of this case by competent

13      counsel with whom he has no objection or complaint.  The

14      defendant has read and he understands each term of his plea

15      agreement, including his limited waiver of his appellate

16      and collateral challenge rights.

17              The defendant has knowingly and voluntarily signed

18      Court Exhibits 1 and 2.  The defendant has knowingly and

19      voluntarily entered a plea of guilty to Counts 1 and 2 of

20      the information and he has admitted the forfeiture

21      allegation in that information, with a full understanding

22      of the factual basis and essential elements of the charges.

23              The defendant's guilty plea is not the result of

24      mistake or coercion.  The defendant's guilty plea is not

25      the result of any representations or promises made to him

1    by anyone except as to those matters disclosed in open

2    court or included in his plea agreement.

3           The defendant understands each of his legal rights

4    in this case.  The defendant understands that the Court is

5    not bound by any sentence recommended in his plea agreement

6    and if the Court does not follow any such recommendation,

7    the defendant may not withdraw his guilty plea.

8           The defendant understands the maximum sentence of

9    imprisonment and maximum fine and terms of supervised

10   release that the Court may impose under the terms of his

11   plea agreement.  And, finally, the plea is supported by an

12   independent factual basis containing each of the essential

13   elements of the offenses.

14          It is therefore ordered that Court Exhibits 1 and

15   2 are accepted and admitted.  The plea as made in open

16   court today is accepted, and the defendant is adjudged

17   guilty of violating 18 United States Code Section 371 and

18   26 United States Code Section 7206(1), and he has admitted

19   the forfeiture allegation in the information.

20          Sentencing hearing is hereby set for Tuesday,

21   April 25th, 2017, at 10:30 a.m.

22          Earlier at ECF No. 37, I ordered counsel to be

23   prepared to discuss the application of Section 3143.  Mr.

24   Harmon.

25          MR. HARMON:  Thank you, Your Honor.  We believe

1      that the defendant should be allowed to continue at liberty

2      under the terms of his pretrial release, which is personal

3      recognizance.  We believe that the terms that -- that there

4      is clear and convincing evidence to show that the defendant

5      is not a flight risk or a danger to others.  In particular,

6      this defendant has known since about May of 2014 when a

7      warranted search was executed on the business premises of

8      FusionPharm, he's known basically of this investigation, he

9      has been negotiating a resolution of this case in earnest

10     since -- since basically earlier this year, January of this

11     year, so he has known.

12             Had he wanted to structure his affairs to flee or

13     avoid prosecution, he would have very well been able to do

14     it by now.

15             He is continuing to cooperate in ongoing

16     investigation which gives him an additional incentive to

17     comply with the terms of this plea agreement.  His crime is

18     not of a violent nature and we don't see any evidence from

19     our investigation of him having any violent propensities or

20     any indication that he is in a position to harm or inclined

21     to harm anybody.

22             THE COURT:  All right.  Thank you for that.  Mr.

23     Winocur, do you wish to be heard on this?

24             MR. WINOCUR:  Does the Court -- the Court prefer

25     some additional supplemental argument?  I will certainly be

1    happy to give it --

2              THE COURT:  You don't have to, I'm just giving you

3    the opportunity if you wish to be heard on this.

4              MR. WINOCUR:  The only thing I'll add by way of

5    brief summary, Your Honor, I agree with Mr. Harmon's

6    comments.  The Court may note the date of the execution of

7    the actual plea agreement was back in September on the date

8    of advisement.  I think when that statutory scheme

9    technically imposing a presumption of detention between the

10   time of plea and sentencing in certain cases, I think that

11   contemplates that in many cases the defendant appears for

12   advisement and they think the future is rosy, and when that

13   changed, perhaps there's more of a risk, that's more

14   tenuous.

15             Here again, this was a pre-indictment disposition

16   that has been worked on over two years with Mr. Harmon's

17   office, the SEC, the IRS.  Mr. Sears executed the plea

18   prior to the advisement.  He has been complying with the

19   Government, and the Court will hear more about this, I

20   don't want to belabor the point now.

21             The undercover operation in this case was

22   extensive, to say the least.  This was a situation where

23   Mr. Sears actually got on the plane and flew to Florida and

24   was wired and was instrumental in the apprehension and

25   take-down of an individual that was previously an

1       international fugitive, so he was working with all layers

2       of Government to make that happen.

3               He continues to cooperate in this matter.  There

4       hopefully will be soon a grand jury where he will be

5       testifying in that matter.

6               The bottomline is, Your Honor, the Court sees at

7       the time of sentencing there is a significant range in this

8       case.  It is only to Mr. Sears' benefit that he continues

9       to stay out of trouble and continue to cooperate because he

10      knows by doing that, they will work down towards the bottom

11      of the range.

12              I think for those reasons in particular, he

13      certainly is not a flight risk and a danger to the

14      community.  I'll say one other thing just by way of a

15      supplement.  There continues to be -- even though he's not

16      on pretrial supervision that we felt was necessary at the

17      time of the advisement, I don't think that's necessary now.

18      There continues to be ongoing close communication between

19      Mr. Sears and the Government.  They are -- there's frequent

20      interaction.  I think they are actually monitoring -- it's

21      not a wiretap, but monitoring the pen registry, certain

22      phone calls that goes in and out, market travel.

23              Mr. Sears was in as recently as two weeks ago

24      disclosing information that he had come into possession in

25      the community, which may even result in a further

1      investigation.  That's still out there.  And so in order

2      for Mr. Sears to really get the benefit of his bargain, he

3      really does need to stay out in the community.  Certainly

4      it is not contemplated that he would be taken into custody

5      at this time.

6              If the Court wants to hear any further argument, I

7      can --

8              THE COURT:  Has there been any discussion as to

9      any restrictions?  It's not in the agreement, but at least

10     an informal agreement as to your client and the

11     codefendant, there being a restriction on their

12     communication or being in physical contact, anything along

13     those lines?

14             MR. WINOCUR:  There has not been that restriction.

15     They are brothers-in-law.  They have been in communication

16     throughout the course of this case.

17             THE COURT:  Right.

18             MR. WINOCUR:  Mr. Sears wanted to proceed by way

19     of this disposition this morning, again with the

20     understanding that we could push sentencing off until --

21             THE COURT:  Right.  But your -- the codefendant is

22     now the -- the temporal alignment of these two defendants

23     is now getting further and further apart because we are

24     having a series of problems with counsel for Mr. Dittman,

25     and so his case has fallen further and further behind.

1           I'm just -- I'll ask Mr. Harmon, is there any

2     consideration from the Government about consideration

3     between the defendant --

4           MR. HARMON:  Well, the short answer is yes and we

5     have discussions with Mr. Sears about how he should not be

6     talking to prospective witnesses or targets except on

7     the -- with the understanding and direction of counsel --

8     of Government counsel and the agents, at least as it goes

9     to -- at least as it goes with respect to targets.

10          Mr. Sears is Mr. Dittman's brother-in-law.  It is

11    our understanding, and it was a matter discussed at the

12    initial appearance that any business that they had has now

13    been wound down, so there should be really no reason that

14    they should be discussing business matters, and really no

15    reason that they should be discussing this case as well,

16    and this is probably an appropriate time to admonish the

17    defendant of that.

18          I will say one other thing, Your Honor, that

19    the -- although the two cases got out of alignment, one of

20    the reasons we appended the letter, so that the Court could

21    understand this was a package resolution, and the letter

22    agreement -- although the plea agreement does not state

23    that explicitly, the letter agreement makes it clear that

24    the deal with respect to Mr. Sears wasn't going to be

25    offered without a deal being accepted with respect to Mr.

1     Dittman and vice versa, so that -- by the time we got to

2     this plea agreement, Mr. Dittman's case was already

3     resolved, it was in the same stage, it -- we have the same

4     executed agreement, it's an exhibit to this Court under Mr.

5     Dittman's case, you can take a look at it.  It's under

6     restriction but it was submitted and handed up at the time

7     of the motion that was -- that was made for Mr. Taylor,

8     counsel to negotiate this withdrawal.  Government had some

9     significant input, or significant concern about the timing

10    of that, and that's why we handed up the plea agreement.

11          But both of these defendants should be in the

12    posture that they are going to be pleading guilty,

13    according to the terms of their respective plea agreements,

14    and both cases are going to be resolved.

15          We have had a discussion with Mr. Sears -- Mr.

16    Sears and his counsel about the possibility that Mr.

17    Dittman for some reason doesn't abide by his plea

18    agreement, in which case Mr. Sears, under the terms of this

19    plea agreement, would be obligated to testify if there were

20    additional charges, or even on the contemplated

21    information -- on the information against Mr. Dittman.

22          So that is a concern.  Mr. Dittman --

23          THE COURT:  That's exactly my concern.  Here's the

24    problem I see.  Mr. Dittman has executed a plea agreement

25    under the advice of counsel he no longer has, and new

1    counsel is going to be coming into this case who might

2    advise him differently and in which case then you may have

3    one defendant, let's say, hypothetically, under -- with

4    advice of new counsel he no longer wants to proceed with

5    this change of plea and he goes to trial, and we have Mr.

6    Sears here free on bond and free to chat away with his

7    brother-in-law who's going to go to trial.  You see the --

8              MR. HARMON:  Absolutely, and we have discussed

9    it, Your Honor.  We have discussed it and the only thing I

10   have indicated, and the only ability right now I have to

11   police that is the following:  That if we find that they

12   are trying to get their information together and get their

13   accounts of facts consistent, and if we find that that's

14   continuing onward, it -- it affects the calculus of our

15   decision as to whether to use Mr. Sears in any capacity, it

16   affects our ability -- our evaluation of his cooperation.

17   That's the only leverage we have right now.

18             So I think it's probably -- the Court is probably

19   on to something that there should probably be a condition

20   added to his release that he not communicate with other --

21   with the other defendant or with other people who may be

22   witnesses in this case.

23             Now, obviously there's a familial relationship so

24   there could be a carve-out with respect to that.

25             THE COURT:  But not as to the codefendant.

1          MR. HARMON:  Well, I can't -- I don't know if I

2     can prevent them from not talking about football at

3     Thanksgiving.  I guess that's the type of thing I'm talking

4     about.

5          THE COURT:  Oh, that's the carve-out.  Okay.  The

6     carve-out about any discussion of this case, the facts, the

7     witnesses --

8          MR. HARMON:  Right.

9          THE COURT:  -- evidence, anything like that.

10          MR. HARMON:  Right.

11          THE COURT:  I think that's appropriate.  Do you

12     have any objection to the Court including that as a

13     precondition to remaining free on bond, Mr. Winocur?

14          MR. WINOCUR:  Let me make the following thought

15     and comment, just thinking out loud.  There was a time, it

16     may have been the intent of the letter agreement, that one

17     defendant was more inclined to proceed than another.  And

18     it was because of the cooperating efforts between the

19     brothers-in-law that we had two executed plea agreements.

20     It might be to the Government's benefit that the two

21     codefendants continue to stay in cooperation because it may

22     facilitate --

23          THE COURT:  But in a supervised cooperation,

24     right?  Cooperation when everyone is together in the same

25     room with counsel, not -- not in a situation, I don't

```
 1        think --
 2                MR. WINOCUR:  I think that's --
 3                THE COURT:  -- where there's no control by the
 4        Government as to what's being exchanged or not being
 5        exchanged with the codefendant, who now we don't know with
 6        the -- he's now on to his third lawyer, and we don't know
 7        if he's going to pull out from his change of plea or not.
 8                And if he does, if he's going to trial, I could
 9        see some direct conflict between the interests of your
10        client and the interests of the defendant who wants --
11        who's going to go to trial and assert his innocence, and
12        fight the evidence the Government is going to be putting on
13        against him.
14                MR. HARMON:  Judge, may we consult just for a
15        second?  I think Mr. Winocur wanted to just talk to me.
16                THE COURT:  Sure.
17                MR. HARMON:  This will be about a minute long.
18        That's all.
19                THE COURT:  Go ahead.
20                One second, counsel.  We're having issues with my
21        monitor.
22                MR. WINOCUR:  Your Honor, having conferred with
23        Mr. Harmon, we would agree -- Mr. Sears and I would agree
24        to stipulate that going forward, given the tenuous
25        situation of Mr. Dittman Mr. Sears will have no further
```

1    conversations with Mr. Dittman whatsoever about the facts

2    of this case past, present or future.  They will still have

3    contact with each other, of course, the family, and seeing

4    each other over the holidays, but they will not be

5    conversing about this case.  And if they did, it would be

6    viewed as a violation of Mr. Sears' cooperation agreement.

7         THE COURT:  Okay.  Other than in situations where

8    both parties and all counsel are present with everyone's

9    notice.  Is the Government agreeable to that?

10        MR. HARMON:  Yes, Your Honor.  The only thing I

11   think needs to be -- I think it's been discussed, it just

12   needs to be added on, is that the defendant also not

13   communicate with other people known to be prospective

14   witnesses in the case.

15        THE COURT:  All right.  Any issue with that, Mr.

16   Winocur?  Because I think I'm going to need that before I

17   grant this motion.

18        MR. WINOCUR:  Your Honor, we agree with the last

19   comment with, again, the caveat being unless it's with the

20   approval or permission or supervision of the Government.

21        THE COURT:  Okay.  And let me bring up one last

22   thing.  Is there any request by either side for a

23   restriction of the plea agreements in this case?  Filing

24   restriction.  Meaning that these agreements will be

25   available or viewable only by the parties and the

1        Government -- I mean the parties and the Court, rather.

2                    MR. HARMON:   I -- Your Honor, I talked to Mr.

3        Winocur and out of an abundance of caution because of the

4        possibility of any proactive other things that -- other

5        proactive things that may come up that we don't know about,

6        we probably should file this document under restriction.

7                    The only reason I hesitate is that we have

8        obligations under the Crimes Victims' Rights Act to make

9        things like this available to prospective victims and there

10       are numerous ones here, so we're just going to have to find

11       a way to make that agreement available to the victims when

12       they want to consult --

13                   THE COURT:   What about this, what if I ordered

14       that the plea agreements by the defendant -- because at

15       least right now the defendant No. 2 still has an operative

16       plea agreement, we'll see what happens when new counsel

17       comes in, but -- and then both sides are given leave to

18       file a redacted publicly viewable plea agreement that the

19       victims can review.

20                   MR. HARMON:   We'll undertake to make the

21       redactions, propose them to Mr. Winocur, and then make a

22       motion to file that document.

23                   THE COURT:   Okay.  So, Deb, let's make sure we've

24       got all this in the minutes.  So I'll grant you -- how much

25       time do you need to do that?

1          MR. HARMON:  Oh, I -- I'll ask for a week.

2          THE COURT:  I'll give you two weeks.

3          MR. HARMON:  Okay.

4          THE COURT:  I want to make sure that you've

5     thought this all through because there's a number of moving

6     parts here.  And the parties are given two weeks -- so I'm

7     ordering that the two plea agreements that are currently

8     filed with the Court be restricted to viewable by the

9     parties and the Court only.  The parties are given 14 days

10    to file a motion for leave to file a redacted publicly

11    viewable version of the plea agreements.  All right.

12          Now, Mr. Sears, I'm going to grant the motion that

13    you remain free on bond.  And let me make a couple of

14    findings for the record and then I'm going to tell you

15    exactly what I see as the obligations incumbent upon you

16    going forward here.  So I have reviewed the pretrial

17    services and release status report from the probation

18    office and I find by clear and convincing evidence that the

19    Government -- that the defendant's, rather, the defendant's

20    condition of release reasonably assure that he will not

21    flee nor will he pose a danger to the safety of the

22    community.

23          I therefore will permit the defendant to remain

24    free on bond subject to the same conditions of release as

25    set forth in the order setting conditions of release

1    entered by the magistrate judge with the following

2    additional conditions, Mr. Sears:  That you do not discuss

3    the facts of this case, the evidence, witnesses, or any of

4    the issues raised by this prosecution either with your

5    codefendant, your brother-in-law, Mr. Dittman, or any other

6    potential witness in this case.  Is that understood?

7              THE DEFENDANT:  It is, Your Honor.

8              THE COURT:  All right.  And if there's any

9    evidence that you have violated that order from me, that

10   will put you in immediate -- at least an immediate

11   likelihood of coming before me for ordering of a revocation

12   of that order and that you be placed in custody pending

13   your sentencing.  Do you understand that?

14             THE DEFENDANT:  I do, Your Honor.

15             THE COURT:  All right.  All right.  Is there

16   anything further from the Government at this time?

17             MR. HARMON:  No.  Thank you, Your Honor.

18             THE COURT:  Anything further from the defendant?

19             MR. WINOCUR:  No, Your Honor.  Thank you.

20             THE COURT:  All right.  Thank you.  That will be

21   all.

22        (Proceedings concluded at 10:51 a.m.)

23             *      *      *      *      *

24

25

40

1                        REPORTER'S CERTIFICATE

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled

5     matter.

6          Dated at Denver, Colorado, this 7th day of March,

7     2017.

8

9

10

11     _                                                      _

12                    MARY J. GEORGE, FCRR, CRR, RMR

13

14

15

16

17

18

19

20

21

22

23

24

25