To: sdittman@fusionpharminc.com[sdittman@fusionpharminc.com]
From: William Sears
Sent: Mon 11/14/2011 4:17:10 PM
Importance: Normal
Subject: Meadpoint Shareholder Agreement
Meadpoint Shareholder Agreement.docx

Scott,

Send to Stu and explain the nature of said agreement.

SEC_TRAN_00001479

## Meadpoint Shareholder Agreement

AGREEMENT made and entered into as of the 31st day of October, 2011, by and among William Sears, residing at 13442 Jackson Drive Thornton, Colorado 80241 (hereinafter "Sears"), and Scott Dittman, residing at 2233 Ponderosa Road Franktown, Colorado 80116 (hereinafter "Ditman"), and Meadpoint Venture Partners LLC a Nevada Limited Liability Corporation ("the Corporation").

WITNESSETH:

WHEREAS, all of the issued shares and outstanding stock of the Corporation are owned in the following percentages:
Dittman 50%
Sears 50%

WHEREAS, the Shareholders hereto deem it to be in the best interest of the Corporation to act together concerning the management of the Corporation as well as to make provision for the contingency of the death or disability of any Shareholder and to set forth the manner and method by which a Shareholder may sell his stock during his lifetime.

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS;

FIRST: **MANAGEMENT AND OPERATION OF THE CORPORATION**

A. 1. **Directors and Officers**. For the duration and term of this Agreement, the Shareholders will elect and continue in office as Directors of the Corporation the following:


The Officers of the Corporation shall be:
Sears – Managing Member

B. **Voting**. All decisions within the ordinary course of business shall be made by the unanimous consent of both Shareholders, who shall have equal say in the management of the ordinary course of business of the Corporation. In addition, for the purposes of selling, terminating, liquidating, entering loans or changing the basic purposes of the Corporation, the quorum and voting requirements shall be 100 percent of all shareholders.

C. **Checks**. All cash, checks and instruments for the payment of monies are to be deposited in the Corporation's bank account. All checks drawn upon such account are to be signed by the President with notice of all such proposed checks to the non-management shareholder, who shall be employed as a consultant to the Corporation.

D. **Salaries**. Neither Shareholder shall receive any compensation for their services to the Corporation unless agreed upon by both shareholders; provided that both the President and Consultant shall receive equal compensation for their services. In the event a non-shareholder

SEC_TRAN_00001480

employee, officer or consultant is hired by the Corporation, such non-shareholder employee, officer or consultant shall receive a compensation determined by both shareholders jointly.

E. **Shareholder Services.** Both parties shall provide such services to the operation of the Corporation and Corporate business as shall be deemed proper and necessary, including keeping each other informed of all letters, accounts, writings and other information which shall come to their attention concerning the business of the Corporation.

Both parties shall keep or cause to be kept full records of each transaction of the Corporation and shall maintain such records at the principal office of the Corporation at [specify address], or at the principal office of the Corporation's accountant.

F. **Indemnity.** In the event any Shareholder is held personally liable for any liability of the Corporation, then the other Shareholder shall indemnify him against fifty percent (50%) of any such personal liability.

G. **Corporation Assets.** The sole assets of the Corporation consist of 1,300,000 (One Million Three Hundred Thousand) shares of the preferred stock of Fusion Pharm, Inc. Shares are currently registered in the name of Scott Dittman,

H. **Death Of A Shareholder.** In the event of the death of a Shareholder, the legal representative of his Estate shall be required to sell all of decedent's shares of stock of the Corporation and he shall be deemed to have offered all of said shares to the Corporation and surviving Shareholder.
   1. **Acceptance.** The Corporation shall be deemed to have accepted the offer to purchase as many shares as it may legally purchase. In the event the Corporation is unable to legally purchase all of such shares, the surviving Shareholder shall purchase those shares which the Corporation cannot legally purchase.
   2. **Closing.** Closing shall be held at the office of the attorney for the Corporation, [specify attorney], on a date and time to be mutually agreed upon but no later than ten (10) days after either the determination of the purchase price or appointment of a legal representative for the decedent's estate, whichever is later. The article of this Agreement entitled Manner Of Payment, sets forth the documents and papers to be executed and/or delivered at closing.
   3. **Purchase Price.** The purchase price of a deceased Shareholder's stock shall be determined by the Shareholders in writing every six (6) months. If no such written determination has been agreed upon within six (6) months from date of death, then the price shall be fixed at the gross commission income received by the Corporation during the preceding full fiscal year.
   4. The Corporation may obtain life insurance policies on the lives of each of the Shareholders. In the event such life insurance policies are so obtained, then the Corporation shall collect the proceeds thereof, hold same as trustee and turn same immediately over to the legal representative of the deceased Shareholder as payment on account for decedent's share of stock. In the event said insurance proceeds exceed the amount of the purchase price as hereinabove provided, then the legal representative of the decedent shall retain the amount of said proceeds as payment in full for decedent's stock. In the event the purchase price of decedent's stock as hereinabove provided exceeds the