**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 16-cr-00301-WJM-1
(Civil Action No. 21-cv-00141-WJM)

**UNITED STATES OF AMERICA**,

      Plaintiff-Respondent,

v.

**WILLIAM J. SEARS,**

      Defendant-Movant.

---

**RESPONSE TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

---

      Pursuant to the Court's order, the government responds to Sears's motion for relief under 28 U.S.C. § 2255.  Docs. 246, 249.  The motion should be denied on any combination of several alternative grounds:

·  In his plea agreement, Sears waived his right to file a § 2255 motion, unless he was denied the effective assistance of counsel, prejudiced by prosecutorial misconduct, or would benefit from a retroactive sentencing amendment.

·  Even if not waived expressly, Sears's guilty plea forecloses all non-jurisdictional claims that preceded his plea of guilty.

·  All of Sears's claims are procedurally defaulted because he failed to raise them on direct appeal.

· Even if Sears's claims were not procedurally barred, they were all fully litigated after his plea of guilty but before judgment, and remain meritless.  No exculpatory evidence was withheld; there was no fraud on the court; and none of his constitutional rights were violated.

### STATED GROUNDS FOR RELIEF

The motion to vacate putatively advances four claims:  (1) "withholding of exculpatory evidence" as to warrants, 302 interviews, and affidavits; (2) "fraud on the court"; (3) "4th, 5th & 6th Amendment[s] violated"; and (4) ineffective assistance of counsel.  Doc. 246 at 4, 5, 7, 8.[1]  But as to each claim, the motion to vacate offers no further elaboration, instead referring to the brief accompanying the motion.  *Id*. For relief, he requests to have his conspiracy conviction set aside, followed by an evidentiary hearing.  Doc. 246-1 at 175.  Sears makes no claim that his conviction for filing a false tax return should be vacated.  *Cf*. Doc. 150 at 6 ("Sears nowhere asserts his innocence on the tax charge.").

### RULE 5 STATEMENT

Pursuant to Rule 5(b) of the Rules Governing § 2255 Proceedings, the government states that:  (1) it is aware of no other post-conviction motion filed by the Defendant; (2) no evidentiary hearing has been held on the allegations made in the motion to vacate; and (3) the motion is timely.

---

[1]  Page citations to the motion are to the clerk's sequential numbering at the upper right corner of the page.

A motion to vacate must ordinarily be filed within one year of the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f).  The final judgment was entered on February 10, 2020.  Doc. 215.  Sears appealed, but it was dismissed on August 4, 2020.  Docs. 217, 241.  His conviction became final 90 days later, when his time to file a petition for writ of certiorari expired.  *See United States v. Deiter*, 890 F.3d 1203, 1208 n.2 (10th Cir. 2018) (citing Sup. Ct. R. 13(1); *Clay v. United States*, 537 U.S. 522, 525 (2003)).  The motion, filed on January 15, 2021, is therefore timely.

## BACKGROUND

On September 15, 2016, Sears was charged by information with conspiracy to defraud the United States and filing a false income tax return.  Doc. 1.  Sears entered into a plea agreement, in which he agreed to plead guilty to both charges.  Doc. 51-1 at 1-6. [2]  In return, the government agreed not to pursue specific additional charges.  *Id*. at 6-7.  Sears also agreed to waive his right to directly appeal and collaterally attack his conviction and sentence, with limited exceptions.  *Id*. at 9-10.  The agreement further specified that "should the defendant breach this agreement the government is entitled, at its election, to be relieved of its obligations under this plea agreement and may elect to abrogate the agreement and prosecute the defendant to the full extent permitted under law."  Doc. 51-1 at 10.

---

[2]  Although the complete plea agreement was sealed, *see* Docs. 41,42, 52, 53, 55, all references in this response are to portions not subject to redaction or sealing. *See* Docs. 51, 51-1, 54.

To that end, Sears agreed to a highly detailed, 28-page factual statement. Doc. 51-1 at 12-40.  To summarize, Sears – who had a prior conviction for federal securities fraud – worked with co-defendant Scott Dittman to build a business called FusionPharm, but took numerous steps to conceal his relationship to the company, creating free-trading FusionPharm shares without truthfully satisfying federal regulatory requirements.  "These facts were mostly stipulated.  Some were augmented by footnotes describing additional facts Sears or Dittman, or both, would introduce (if there were a trial, apparently), mostly regarding alleged advice of counsel."  Doc. 150 at 2 (record citations omitted).[3]

Two and a half months after pleading guilty, Sears moved to withdraw his guilty plea, which the Court denied.  Docs. 139, 144, 149, 150.  He then moved for reconsideration, which the Court also denied.  Docs. 173, 180, 181.  These motions and the Court's resolution of them are discussed in Part V, *infra*.  Sears received a stipulated sentence of 240 months.  *See* Doc. 51-1 at 7; Doc. 215.

**ARGUMENT**

Because Sears is proceeding *pro se*, his filings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S.

---

[3]  "A few facts were disputed, mostly in the sense that Sears or Dittman believed the Government was stating its case too strongly, but none of these facts was dispositive to the Government's case."  Doc. 150 at 2-3 (record citations omitted).

519, 520-21 (1972)).  To that end, "although we make some allowances for a pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Shelby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotations, citations, and brackets omitted).

Pro se litigants must "follow the same rules of procedure that govern other litigants" and "must still allege the necessary underlying facts to support a claim under a particular legal theory."  *Thundathil v. Sessions*, 709 F. App'x 880, 884 (10th Cir. 2017) (unpublished) (citations and internal quotation mark omitted).  Thus, a court will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that have not been alleged).

In this case, Sears's motion consists of 189 jumbled pages of text and exhibits.  *Compare United States v. Celio*, 463 F. App'x 755, 757 (10th Cir. 2012) (unpublished) (102-page motion, submitted with 285 pages of exhibits, was "overly long, prolix, vague, unspecific, and unclear") *with* WJM Revised Practice Standards

§ III.C.2 (motions, other than for summary judgment, in limine, or under Rule 702, are limited to 15 pages). It is therefore difficult to discern every possible "argument" that might be couched therein. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"). Sifting through the document, the only mention of Sixth Amendment effective assistance of counsel is in the summary statement of Ground Four, which directs the reader to "see brief immediately following the filing of this document." Doc. 246 at 8. But the brief is utterly silent on the issue. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations unsupported by specifics is subject to summary dismissal").

Thus, the only claims properly advanced are the putative "withholding of exculpatory evidence," "fraud on the court," and violation of the Fourth and Fifth Amendments, with respect to Sears's conspiracy conviction. Doc. 246 at 4, 5, 7.

**I.   SEARS EXPRESSLY WAIVED ALL CLAIMS OTHER THAN PROSECUTORIAL MISCONDUCT.**

Through the collateral attack waiver in his plea agreement, Sears specifically agreed to –

> waive his right to challenge this prosecution, conviction, or sentence
> and/or the manner in which it was determined in any collateral attack,
> including but not limited to a motion brought under 28 U.S.C. § 2255,
> except that such waiver provision will not prevent him from seeking
> relief otherwise available if: (1) there is an explicitly retroactive change
> in the applicable guidelines or sentencing statute, (2) there is a claim

that he was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct.

Doc. 51-1 at 9-10.

Sears claims, in pertinent part, that:

there was misconduct on the part of the federal prosecutors used to coerce me into a plea which the prosecution knew was based on a violation of the 4th and 5th Amendments to the US Constitution which amounts to misconduct on the part of the federal prosecutors and the fact that none of this was disclosed to the court or me prior to entering the plea agreement renders the agreement to be invalid and the fact that it was the product of intentional fraudulent misrepresentation by federal prosecutors renders them liable for the losses suffered due to their misconduct.

Doc. 246-1 at 22.

When a defendant waives his right to bring a collateral attack, a § 2255 claim must be dismissed if (1) the claim falls within the scope of the waiver; (2) the waiver was knowing and voluntary; and (3) enforcing the waiver would not result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217-18 (10th Cir. 2012). Here, the only claims Sears makes that meet one of the exceptions are those that sound in prosecutorial misconduct – although, as noted *infra*, those claims are barred for other reasons. All other claims fall within the scope of the waiver.

Further, Sears's collateral attack waiver was knowing and voluntary. In this, the Court looks to (1) whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate Rule 11 colloquy. *United States v. Hahn*, 359 F.3d 1315, 1325

7

(10th Cir. 2004) (en banc) (per curiam).  The defendant bears the burden of showing that the waiver was not knowing and voluntary.  *United States v. Salas-Garcia*, 698 F.3d 1242, 1253 (10th Cir. 2012).

Here, both of the factors highlighted in *Hahn* support a finding that Sears's waiver was knowing and voluntary.  First, the written plea agreement provides that Sears "knowingly and voluntarily" waived his right to bring a collateral attack.  Doc. 51-1 at 9-10.  Second, there was a thorough Rule 11 colloquy at the change of plea hearing, where the Court confirmed that Sears understood he was under oath and that false answers could subject him to a perjury prosecution.  Doc. 84 at 2-4.  The Court advised Sears regarding the waiver, confirmed he understood it, and further confirmed he was competent, was not threatened or forced into pleading guilty, and had the opportunity to consult with counsel.  *Id*. at 12-15.  Following the colloquy, the Court specifically found that:

> The defendant has thoroughly discussed his plea agreement with his attorney. The defendant has been represented throughout the course of this case by competent counsel with whom he has no objection or complaint.  The defendant has read and he understands each term of his plea agreement, including his limited waiver of his appellate and collateral challenge rights.
>
> The defendant has knowingly and voluntarily signed Court Exhibits 1 and 2. The defendant has knowingly and voluntarily entered a plea of guilty to Counts 1 and 2 of the information … with a full understanding of the factual basis and essential elements of the charges.
>
> The defendant's guilty plea is not the result of mistake or coercion. The defendant's guilty plea is not the result of any

representations or promises made to him by anyone except as to those matters disclosed in open court or included in his plea agreement.

*Id*. at 25-26.

Nonetheless, Sears alleges that his guilty plea was not knowing and voluntary because the government "coerced" him by not disclosing potential impeachment evidence beforehand. Doc. 246-1 at 22. But nowhere does he explain why he admitted the illegality of his conduct, under oath, at his change of plea hearing. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. And based upon those declarations, this Court specifically found that Sears was *not* coerced. Doc. 84 at 26.

Moreover, the prosecution is not required "to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ellsbury*, 528 F. App'x 856, 858 (10th Cir. 2013) (unpublished) (quoting *United States v. Ruiz*, 536 U.S. 622, 633 (2002)). This Court specifically found that Sears is wrong about both Agent Funk's credentials and the import of any deficiency therein. *Compare* Doc. 246-1 at 25, 27, 90, 30-33, *with* Doc. 150 at 11 ("How and when Agent Funk may call herself a CPA under Kansas law has nothing to do with whether Sears committed the crimes with which he was accused."). And even if it was material, at most the Court would have had to "reevaluate the warrant affidavit as if Agent Funk's full CPA status was disclosed and decide if probable cause still existed." Doc. 150 at 15 (citing *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996)).

Likewise, the Court thoroughly reviewed Mr. Lehrer's background and relationships, and found it was neither material nor exculpatory.  *Compare* Doc. 246-1 at 41-44, *with* Doc. 150 at 13 ("Sears nowhere explains how this relationship is exculpatory.  As best the Court can tell—and Sears himself does not make this connection—it would have been impeachment evidence had Mr. Lehrer testified in a trial and, for example, disavowed Sears's (apparent) claim that he received good-faith advice from Mr. Lehrer about the legality of the FusionPharm stock transactions.").

And even if all of the foregoing was *Brady* rather than impeachment evidence, Sears has the burden of showing "that but for the failure to produce such information [he] would not have entered the plea but instead would have insisted on going to trial."  *Ellsbury*, 528 F. App'x at 858 (quoting *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001)).  But tellingly, Sears doesn't claim that he would have rather gone to trial; he seems to assume that if his guilty plea were to be set aside, he would be free of all charges.  In fact, without his plea agreement, Sears would face trial and the possibility of conviction not just on the two counts to which he pled, but any additional crimes for which he could have been charged and prosecuted. *See Ricketts v. Adamson*, 483 U.S. 1, 9-12 (1987) (agreement void and government permitted to reinstate original charges when defendant failed to fulfill his obligations pursuant to the plea agreement).

Furthermore, this Court has previously considered and rejected Sears's contentions that the non-disclosure, *pre*-trial and *pre*-plea, of the potential impeachment evidence, amounted to prosecutorial misconduct and/or rendered the search warrants invalid.  *Compare* Doc. 246-1 at 32-35, 41, 44, 58, 3, 22, *with* Doc. 150 at 8-9, 10-11, 13-14, 15-17; Doc. 181 at 4-5.  At most, granting the motion to vacate would afford Sears another opportunity to ask this Court to reconsider its prior rulings.

The enforcement of a collateral attack waiver can result in a miscarriage of justice in only four situations: (1) the court relied on an impermissible factor such as race; (2) the defendant received ineffective assistance of counsel in connection with the negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful.  *Viera*, 674 F.3d at 1219.  A waiver is "otherwise unlawful" only if an error related to the waiver *itself* "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *Hahn*, 359 F.3d at 1327; *see also United States v. Frazier-LeFear*, 665 F. App'x 727, 729-30 (10th Cir. 2016) (unpublished).  The defendant bears the burden of showing that enforcement of the waiver would result in a miscarriage of justice.  *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

None of the situations giving rise to a miscarriage of justice are present here. Nor has Sears argued otherwise; consequently, he has conceded any challenge to his collateral attack waiver.  *United States v. Baldwin*, 744 F. App'x 537, 541 (10th

Cir. 2018) (unpublished).  All claims other than prosecutorial misconduct should be dismissed on the basis of that waiver.

## II.   SEARS'S CLAIMS ARE FORECLOSED BY HIS PLEA OF GUILTY.

When a defendant pleads guilty, he waives all challenges to his conviction other than those that "call into question the government's power to constitutionally prosecute him" for the admitted conduct.  *Class v. United States*, 583 U.S. __, 138 S. Ct. 798, 804-05 (2018) (quotation omitted); *see also Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).  Such claims are limited to "due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment," *United States v. DeVaughn*, 694 F.3d 1141, 1145-46 (10th Cir. 2012), as well as claims that the statute of conviction is unconstitutional.  *Class*, 138 S. Ct. at 803.

Although the motion makes facial allegations of prosecutorial misconduct sounding in failure to disclose certain information, there is no suggestion of vindictive prosecution.  "Actual vindictiveness occurs when the government's decision to prosecute was a direct and unjustifiable penalty for the exercise of a procedural right by the defendant," while for presumptive vindictiveness, "the defendant must show that as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right."  *United States v. Ray*, 899 F.3d 852, 860 (10th Cir. 2018) (internal quotations

and citations omitted).  There is nothing to suggest the government brought charges in response to Sears's exercise of a legal right.

Where, as here, the claims fall outside the limited exceptions, the sole inquiry on a motion to vacate following a guilty plea is whether the plea was counselled and voluntary.  *United States v. Broce*, 488 U.S. 563, 569 (1989).  Although a defendant who pleads guilty is not "automatically barred" from asserting a *Brady* claim in a § 2255 motion, a *Brady* claim can survive a guilty plea only if the violation renders the plea involuntary.  *United States v. Wright*, 43 F.3d 491, 495-96 (10th Cir. 1994).  But such a claim can proceed only if the defendant shows that he would have gone to trial if not for the alleged violation.  *Ellsbury*, 528 F. App'x at 858.  Sears does not assert – much less offer any objective rationale – that he would not have pleaded guilty if he had known everything about Frank and Lehrer at the time.  And, as discussed earlier, this Court has found – *three times* – that Sears's plea was both knowing and voluntary.  Doc. 84 at 25-26; Doc. 150 at 3-5, 14; Doc. 183 at 3-4.

### III.   ALL OF SEARS'S CLAIMS ARE PROCEDURALLY DEFAULTED.

Separately, the Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165 (1982).  So when a defendant fails to raise an issue on appeal, he may not raise it in a § 2255 motion unless he can show: (1) cause excusing his procedural default and actual prejudice resulting from the alleged errors; or (2) that a fundamental miscarriage of justice will occur if his claim is not addressed.  *Id.* at

167-68; *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012); *see also United States v. Majid*, 196 F. App'x 685, 686 (10th Cir. 2006) (unpublished) (procedural default bar applies even where the defendant has waived his right to appeal) (citing *Frady*, 456 U.S. at 165).  Here, all of Sears's claims are procedurally defaulted because he did not raise them on appeal.

Consequently, Sears faces the burden of overcoming his procedural default. *McGaughy*, 670 F.3d at 1159; *Johnson v. United States*, 838 F.2d 201, 202 (7th Cir. 1988) ("[F]orgoing an appeal bars collateral review of appealable issues.").  He cannot overcome that burden.  He doesn't identify any cause for waiving, and then failing to assert, those claims on appeal.  Nor could he show actual prejudice, which imposes "a significantly higher hurdle than would exist on direct appeal."  *United States v. Bailey*, 286 F.3d 1219, 1223 (10th Cir. 2002) (quoting *Frady*, 456 U.S at 166).  It requires a showing that the alleged errors "worked to [the defendant's] *actual* and substantial disadvantage, infecting [the entire proceedings] with error of constitutional dimensions."  *Id.* (emphasis in original).

Here, Sears's claims were all available to him before the Court entered final judgment against him.  We know this because he in fact asserted all of his claims after he pleaded guilty and before the entry of judgment, and this Court has considered and rejected them – sometimes once, sometimes twice.  *See* Doc. 150; Doc. 183.  Indeed, the motion to vacate is nearly identical to Sears's abortive "Motion for Dismissal of Charges With Prejudice For Lack of Jurisdiction," which the

Court struck on account of impermissible hybrid representation.  *Compare*, *e.g.*, Doc. 246-1 at 23-25, 27, 90, 96, 30-34 *with* Doc. 206 at 1-15; Doc. 246-1 at 34-35, 41-44, 58, 3 *with* Doc. 206 at 16-27 (arguments).  *Compare also*, *e.g.*, Doc. 246-1 at 4-21 *with* Doc. 206 at 74-85, 66-71; Doc. 246-1 at 61-85, Doc. 173 at 23-24 *with* Doc. 206 at 85-112 (exhibits).  As before, Sears hasn't suffered an actual and substantial disadvantage of constitutional dimension.  *Bailey*, 286 F.3d at 1223.

Finally, Sears cannot show that a "fundamental miscarriage of justice will occur if his claim is not addressed."  *McGaughy*, 670 F.3d at 1159.  That exception applies only when the defendant is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  But Sears pleaded guilty and stipulated to the factual basis for his convictions.  Doc. 84 at 13-14.  He has identified no new evidence that would plausibly undermine his own admissions and establish a credible claim of actual innocence.  *See United States v. Powell*, 159 F.3d 500, 503-04 (10th Cir. 1998) (holding that guilty plea and admissions in plea agreement precluded claim of actual innocence); *United States v. McAbee*, 685 F. App'x 682, 684-85 (10th Cir. 2017) (unpublished) (noting that "high hurdle [defendant] faces in showing actual innocence becomes even higher" when he pleaded guilty).  And most obviously, Sears doesn't even claim to be innocent.  *See United States v. Williams*, 100 F.3d 968, 1996 WL 651689, at *1 (10th Cir. 1996) (Table) (unpublished) (claim defaulted where defendant asserts deficiencies in prosecution rather than actual innocence).

This Court has repeatedly considered and rejected Sears's claims. To the extent any of them survive despite his waivers, they have been procedurally defaulted.

## IV.   ALTERNATIVELY, SEARS'S CLAIMS FAIL ON THE MERITS.

Even if the Court could properly reach the merits, it can and should make short work of Sears's claims, inasmuch as it previously considered and rejected them.

In April 2019 – two and a half years after pleading guilty – Sears filed a motion to withdraw his plea. Doc. 139. That motion argued that Sears had learned that exculpatory evidence was withheld; specifically, that Agent Funk had "lied about her credentials when she obtained two search warrants that were key and instrumental to the evidence accumulated by the Government to prosecute the Defendant." *Id*. at 5. Then, as now, Sears contended that Agent Funk wasn't actually a CPA as she claimed in her warrant affidavits.

Separately, Sears asserted that "the body of the affidavit fails to establish the truth of the assertions that Fusion Pharm was either a Ponzi scheme or that its stock was being manipulated through pump and dump. The entire theory or predicate for the issuance of the warrant was false." *Id*. at 5-6. He further asserted that "the essential contention by the Government that Mr. Sears was a control person of Fusion Pharm, Inc. and that one or more companies that he operated was an affiliate of Fusion Pharm, Inc. is not factually correct." *Id*. at 6.

16

In addition, Sears alleged that the prosecutor did not reveal his prior relationship with Frederick M. Lehrer, the lawyer hired by FusionPharm after Guy Jean-Pierre was terminated.  *Id*. at 7.  "Lehrer turned against his clients, and, in fact, testified falsely in proceedings before the Securities and Exchange Commission, with respect to his knowledge and activity with Fusion Pharm.  Exculpatory evidence in this regard was withheld from Mr. Sears."  *Id*.  "Certainly, the plea was knowing and voluntary in some regards, but the withholding of exculpatory and impeachment information brings that issue into sharp relief and calls it into question."  *Id*. at 9.

The Court analyzed Sears's request to withdraw his plea under Fed. R. Crim. P. 11(d)(2)(B), and the seven-part test in *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).  Doc. 150 at 5-6.  Noting that "Sears nowhere asserts his innocence on the tax charge," the Court focused on the conspiracy to defraud the government.  *Id*. at 6.[4]  The Court observed that Sears's assertion that it wasn't "factually correct" that he was a control person doesn't address "all of the theories under which the Government could have proven Sears guilty.  Most notably, it does not address the specific theory Sears himself described at his change-of-plea hearing, namely, the intentional backdating of a promissory note, … which, in part, prompted a stock transfer agent to issue free-trading shares that otherwise should not have issued."  *Id*. at 7.

---

[4] Likewise, the motion to vacate makes no reference to Sears's conviction for filing a false tax return.

As in the motion to vacate, Sears asserted that his non-disclosures resulted from reliance on the advice of counsel, but he "nowhere attempts to demonstrate that advice of counsel was a viable defense for him, legally or factually. And Sears, again, addresses only one theory by which the Government could have proven him guilty under the conspiracy charge." *Id*. at 7-8 (footnote omitted). And again – as now – "Sears nowhere explains why he admitted the illegality of all of this conduct, under oath, at his change-of-plea hearing." *Id*. at 8 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

The Court rejected Sears's claim that his plea wasn't knowing and voluntary. The Court noted that "Agent Funk is a certified public accountant—the only questions are the contexts in, and purposes for which, she may represent herself as such, under Kansas law." Doc. 150 at 10. But at bottom –

> [T]here is no *Brady* violation under the circumstances of this case because the allegedly withheld information is not *exculpatory*. How and when Agent Funk may call herself a CPA under Kansas law has nothing to do with whether Sears committed the crimes with which he was accused. The evidence is, at best, impeachment evidence, and "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."

*Id*. at 11 (emphasis in original) (quoting *United States v. Ruiz*, 536 U.S. 622, 633 (2002)). As a matter of law, Sears's lack of knowledge about Agent Funk's status did not render his guilty plea involuntary. *Id*. *See also United States v. Harman*, 871 F. Supp. 2d 1125, 1166-68 (D.N.M. 2013), *aff'd*, 742 F.3d 451, 459-60) (10th Cir. 2014) (motion to withdraw plea properly denied where misconduct in an unrelated

18

case was impeachment evidence, and so didn't bear on guilt or innocence; no requirement of disclosure prior to guilty plea).

In a similar vein, the Court found that "the *only* thing about Mr. Lehrer that Sears did not know at the time of his decision to accept a plea deal was Mr. Lehrer's relationship with Mr. Harmon. … So the *Brady* evidence, if there is any, must be the relationship between Mr. Lehrer and Mr. Harmon. *Id.* at 13 (emphasis in original). But at most, "it would have been *impeachment* evidence had Mr. Lehrer testified in a trial," and as before, "the Government need not disclose potential impeachment evidence before the defendant decides to plead guilty." *Id*. at 13-14 (emphasis in original) (citing *Ruiz*, 536 U.S. at 633). *See also United States v. Marr*, No. 10-cr-00182-BLW, 2013 WL 12128768, *1-*4 (D. Idaho 2013), *aff'd*, 585 F. App'x 438, 438-39 (9th Cir. 2014) (police officer's affair with confidential informant was impeachment evidence that didn't need to be disclosed prior to guilty plea).

Finally, the Court rejected Sears's claim that the evidence gathered through the three search warrants should be supressed. It was too late then, and even more so now, to make such a claim. Doc. 150 at 14 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Even if the Court again assumes, as it did before, that Sears presents a latent ineffective assistance claim, a defendant "does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." *Id*. at 15 (quoting *Premo v. Moore*, 562 U.S. 115, 129 (2011)). And because Sears pleaded guilty, he

has the burden of showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Starting, again, with Agent Funk's affidavits, Sears challenges the three search warrants.  But even if the undisclosed information was material, "this Court would be required to reevaluate the warrant affidavit as if Agent Funk's full CPA status was disclosed and decide if probable cause still existed."  *Id*. (citing *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996)).  "Sears offers no reason to believe that analysis would cut in his favor."  *Id*. at 15-16.

He also claimed that the first warrant could also have been challenged because "the body of the affidavit fails to establish" FusionPharm was a Ponzi scheme, and a "pump and dump" scheme.  *Id*. at 16.  "This is a pure lack-of-probable-cause argument," and "again, Sears offers no reason to believe this argument had a serious chance of succeeding."  *Id*. (citing *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999)).

Even so, Sears moved for reconsideration, arguing that the Court "is imposing too high a bar of stringent requirements on the defendant in ruling on his motion to withdraw plea."  Doc. 173 at 2 (citing *United States v. Marceleno*, 819 F.3d 1267, 1276 (10th Cir. 2016) (Hartz, J., dissenting)).  Referring to his plea colloquy, Sears argued that the only illegality he specifically acknowledged was his involvement in the creation of a convertible promissory note that was backdated.  *Id*. at 2-3.  He

20

supported this with a self-serving email he sent to his lawyers several months later, and pointed to "footnotes in the plea agreement, that he was acting with advice of counsel and because of that advice he lacked the mens rea to violate the conspiracy statute." *Id*. at 3; Doc. 173-1.  In sum, "the backdating of the convertible notes was not an illegal act under the securities laws," and "he admitted only to a very narrow slice of the facts the government alleged against him."  Doc. 173 at 4.

Sears also attached an affidavit from a Colorado attorney and CPA, stating Agent Funk didn't have a permit to practice as a CPA in Kansas, and she "is not a CPA in Colorado and may not hold herself out to be a CPA in Colorado." *Id*. at 4-5; Doc. 173-2.  In addition, he attached a summary of transactions that were made based on Lehrer's legal opinions.  Doc. 173 at 5-6; Doc. 173-3.  This somehow showed that Lehrer's history was "more than mere impeachment evidence," and "would be helpful if he is allowed to withdraw his guilty plea."  Doc. 173 at 6.[5]

The Court denied the motion to reconsider, starting with Sears's claim that it had imposed a burden of demonstrating his innocence.  "The Court imposed no such burden.  Sears's motion seemed to presume that he could simply claim innocence and that would be enough."  Doc. 181 at 2.  Sears had fallen short, because – as here – he had offered only unsupported assertions of innocence, and

---

[5]  Sears also complained that the prosecution had hampered his attempt to obtain advice from Lehrer's ex-wife, a securities lawyer who advised him that the backdating of the convertible notes was "not necessarily" a violation of the securities laws.  Doc. 173 at 6.

no explanation of why he had gone back on his sworn testimony at the change of plea hearing.  *Id*.  As to Sears's claim that he never agreed he was guilty of everything in the plea agreement, he had acknowledged that he had read all of the facts alleged in the plea agreement and that there was no inaccuracy.  *Id*. at 3.  The Court explained that there is no requirement that the colloquy or the defendant's resulting narrative embrace every criminal act alleged by the Government.  *Id*.; *see also id*. at 3 n.1 ("To testify in a change-of-plea hearing with his fingers crossed, so to speak, is a violation of the oath to testify truthfully.").  "And yet Sears still signed the plea agreement and pleaded guilty.  Perhaps he regrets that now, but he cannot claim that he was not well-informed at the relevant time."  *Id*. at 3-4.

As for Sears's "more emphatic re-urging of a prior argument that the Court rejected," the Court noted that "Sears had not identified any alleged accounting errors that Agent Funk had committed.  Sears's Motion for Reconsideration still does not identify any such errors."  *Id*. at 4.  Nor does the instant motion to vacate.  In the same way, Sears re-urged that Lehrer's history should have been disclosed before he pleaded guilty.  "Sears raises nothing in this respect that he did not or could not have previously raised.  His assertion that he could subpoena Mr. Lehrer for trial was as true before he pleaded guilty as now."  *Id*. at 4-5.  *See also United States v. Lee Vang Lor*, 706 F.3d 1252, 1257-61 (10th Cir. 2013) (evidence that officer had called in false report in an unrelated case, while possible impeachment, did not entitle defendant to raise Fourth Amendment claims in a collateral attack).

There is nothing new here.  The Court was right in the fall of 2019, and Sears offers nothing impelling the Court to revisit the same claims and arguments today.[6]

## V.   AN EVIDENTIARY HEARING IS UNWARRANTED.

The standard for obtaining an evidentiary hearing "is higher than notice pleading," *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004), and "the petitioner bears the burden of alleging facts which, if proved, would entitle him to relief.  Moreover, his allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing."  *United States v. Shaw*, 292 F. App'x 728, 731 (10th Cir. 2008) (unpublished) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995), *overruled on other grounds by Daniel v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)).  "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

No evidentiary hearing is required in this case because the issues presented by the motion to vacate are purely legal.  When a § 2255 petition can be resolved on the record, no hearing is necessary.  *United States v. Mendez-Zamora*, 230 F. App'x 792, 79 (10th Cir. 2007) (unpublished) (citing *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)).  *Accord Yates v. United States*, 316 F.2d 718, 721 (10th Cir.

---

[6]  Should Sears attempt to make new claims or arguments in reply, they are waived.  *Lee Vang Lor*, 706 F.3d at 1256.

1963) ("[A]ppellant's motion does not present an issue of fact.  The facts as shown by the record are undisputed.  The taking of oral testimony upon the motion could not aid or assist the court in determining the legal sufficiency of the original trial proceedings.").  A hearing would not aid the Court in resolving the issues.

## CONCLUSION

The motion to vacate should be denied without a hearing.

Jason R. Dunn
United States Attorney

*s/ Paul Farley*
Paul Farley
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone:  303.454.0100
USACO.ECFAppellate@usdoj.gov
Attorneys for Plaintiff-Respondent

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF COLORADO**</u>
<u>**CERTIFICATE OF SERVICE (CM/Colorado)**</u>

I hereby certify that on <u>February 09, 2021</u>, I electronically filed the foregoing

document with Clerk of Court using the CM/ECF system and certify that a copy will

be placed in the U.S. Mail, postage pre-paid and addressed to the following:

William J. Sears
Reg. No. 56353-054
Florence Federal Prison Camp
P.O. Box 5000
Florence, CO 81226

<u>/s/ Ma-Linda La-Follette</u>
MA-LINDA LA-FOLLETTE
United States Attorney's Office
Denver, Colorado