UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

WILLIAM J. SEARS,
    Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,
    Respondent - Appellee.

Case No.
(D.C. No. 16-cr-301 WJM)
(D. Colo.)

**APPELLANT'S APPLICATION
FOR A CERTIFICATE OF
APPEALABILITY**

    **COMES NOW**, Appellant and Petitioner William J. Sears ("Sears" or "Petitioner"), pro se and on his own behalf, and hereby applies to this Court for a Certificate of Appealability pursuant to Federal Rule of Appellate Procedure 22 on the district court's order "Denying [Sears'] Petition to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. For the reasons set forth herein, this Court should grant Sears' Application for Certificate of Appealability.

<u>PROCEDURAL BACKGROUND</u>

    On September 15, 2016, Sears was charged by information with conspiracy to defraud the United States and filing a false income tax return. Sears' pled guilty to one count of each in November, 2016. The plea agreement contained standard language that Sears waived his right to appeal except in certain circumstances.

    Because Sears learned about serious fraud and improprieties in the Government's investigation of his case, on May 4, 2019, Sears filed a Motion to Withdraw Plea of Guilty. The Court denied that motion on May 22, 2019. Sears then filed a Motion

for Reconsideration on August 1, 2019, and on September 30, 2019, the district court denied that motion. On February 10, 2020, Sears was sentenced to 96 months in federal custody.

On January 15, 2021, Sears filed a Petition to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Although Section 2255 provides that unless "the motion and the files and records in this case could not have shown conclusively that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon and determine the issues." See United States v. Jackson, 209 F.3d 1103, 1110 (9th Cir. 2000).

In this case, not only did the district court not grant Petitioner an evidentiary hearing, the district court waited 19 months to rule on Sears' Petition. On July 15, 2022, the district court denied Sears' Petition, and sua sponte, ordered that no certificate of appealability will issue. As a result, Sears files this instant Application.

## LEGAL STANDARD

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under Section 2255." 28 U.S.C. § 2253(c)(1)(B). "The issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of an issue raised in a § 2255 motion." United States v. Gonzalez, 596 F.3d 1228, 1241 (10th Cir. 2010).

"To obtain a COA after a district court has rejected a petitioner's constitutional claims on the merits, the 'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the . . . constitutional claims debatable or wrong.'" Milton v. Miller, 812 F.3d 1252, 1263 (10th Cir. 2016) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A COA is necessary if an issue is "debatable among jurists of reason" or if "a court could resolve the issue [differently], or the question [is] adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

Importantly, ther certificate of appealability "inquiry . . . is not coextensive with a merit analysis." Buck v. Davis, 137 U.S. 759 (2017). A petitioner "need not show that he should prevail on the merits." Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). Rather, a petitioner nees to make a "modest" showing. In fact, according to the Supreme Court, a "court of appeals should limit its examination [at the COA stage] to a threshold inquiry into the underlying merit of the claims" and ask "only if the District Court's decision was debatable." Buck, 137 U.S. at 759. A claim may be debatable and thus deserving of a COA, "even though every jurist of reason might agree, after the certificate of appealability has been granted and the case received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

**ARGUMENT**

When a district court denies an inmate's § 2255 petition, a habeas petitioner seeking a Certificate of Appealability ("COA") must show that reasonable jurists could debate the loss of the inmate's constitutional claim. Because jurists of reason could debate the district court's decisions and order in this case, this Court should grant Sears' Application for COA.

**I.   BECAUSE JURISTS OF REASON COULD DEBATE THAT I SHOULD HAVE RECEIVED, AT THE VERY LEAST, AN EVIDENTIARY HEARING ON MY § 2255 PETITION, THIS COURT SHOULD GRANT ME A CERTIFICATE OF APPEALABILITY.**

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. See also, United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998) (holding that an evidentiary hearing "is mandatory" whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims); United States v. Jackson, 209 F.3d 1103, 1110 (9th Cir. 2000) (district court abused its discretion in denying evidentiary hearing, given that the motion, files, and record in that case did not show conclusively that petitioner was not entitled to relief); and Anderson v. United States, 948 F.2d 704 (11th Cir. 1991) (movant entitled to evidentiary hearing because "record does not conclusively show that [his] contentions are without merit."

In this case, I filed my § 2255 petition on January 15, 2021. The district court believed there was at least enough legitimacy to my petition to order the government to file an opposition or otherwise respond. The government responded on February 9, 2021. On April 23, 2021, I filed a reply to the government's opposition.

Although § 2255 requires a district court to "promptly" order an evidentiary hearing, on February 7, 2022, over one year after filing my § 2255 petition and 9 months from the last filing on the issue, I had still not heard from the district court nor had an evidentiary hearing been scheduled, so I filed a motion for a hearing. On February 9, 2022, the district court denied that motion. Then, five months later, the court finally ruled on my petition - without ever holding an evidentiary hearing.

My § 2255 Petition to Vacate, Set Aside, or Correct Sentence was approximately 17 pages as well as a 175-page exhibit supporting my claims of fraud on the court, constitutional violations, ineffective assistance of counsel, and vindictive prosecution, including the withholding of exculpatory evidence. As the district court noted in its Order, I am not an attorney and perhaps my exhibits were "in seemingly random order," but nevertheless, I included significant and substantive evidence of constitutional violations and rampant fraud in my case. At the very least, I provided sufficient evidence to contradict the record and warrant an evidentiary hearing.

The very fact it took the district court 16 months to rule on my petition is evidence that the information I provided as part of the petition contradicted and was different than the record and other information on file. Because I was entitled, at the very least, to an evidentiary hearing, this Court should grant my application for a certificate of appealability.

## II.   BECAUSE JURISTS OF REASON COULD DEBATE WHETHER THE PLEA AGREEMENT I ENTERED INTO WAS INVOLUNTARY AND INVALID BECAUSE IT WAS BASED ON FRAUD, LIES AND PERJURY OF FBI AGENT KATE FUNK, THIS COURT SHOULD GRANT MY APPLICATION.

This Court should grant my Application for a Certificate of Appealability because although I pled guilty to the underlying crimes, reasonable jurists could debate that the plea agreement I entered into was procured by fraud, lies, and perjury on the part of the United States, and therefore was involuntary and invalid.

### 1.   <u>In Order To Obtain A Search Warrant, The Government lied And Specifically FBI Agent Kate Funk Perjured Herself</u>.

Federal Rules of Criminal Procedure 4.1 and 41 are clear that in order to obtain a search warrant, the FBI had to attest, under oath, to certain facts sufficient to satisfy the probable cause requirement. This information may come from either the applicant federal law enforcement officer, or a witness willing to make a statement. Any oral testimony must be recorded so that any transcribed affidavit will provide an adequate basis for determining the sufficiency of the evidence. F.R.Cr.P. 4.1 & 41.

The facts underlying the charges against me were complex and technical in nature. As I was involved in a publicly-traded company with complex financial and accounting rules, in order for the government to obtain a search warrant, the affiant would have to have a certain level of experience and education with forensic accounting, GAAP accounting principles, and auditing to satisfy the probably cause requirements. When government agencies lie, in an effort to enhance the impression of reliability, then any evidence obtained as a result of that fraudulent conduct must be excluded.

In this case, Special Agent Kate Funk did just that. In order to give the impression of "enhanced reliability," Agent Funk claimed that she graduated from the University of Kansas in 1995 with a degree in accounting. She further stated that she became a Certified Public Accountant in Kansas in 1996. Both of these statements are materially false and were provided to the judge solely for the purpose of enhancing Agent Funk's credibility. She then included the phrase "knowledge and experience" at least 47 times in her affidavit, again, materially misrepresenting and misleading the court in an effort to satisfy the probable cause threshold and obtain a search warrant.

The bottom line is the only probable cause the government had to obtain a search warrant against me was the materially false and misleading "knowledge and experience" of Agent Funk. Unfortunately, she had neither knowledge nor experience. As such, all of the evidence obtained pursuant to that search warrant should have been excluded.

2.  <u>Kate Funk Was Not A Certified Public Accountant Nor
    Nor Did She Have The "Knowledge And Experience"
    Necessary To Evaluate My Business Transactions</u>.

Because the basis of the government's investigation into
me and my business was the affidavit of Agent Kate Funk, her
perjury, material misrepresentations, and misconduct constitutes
a clear violation of my Fourth Amendment rights. Specifically,
Agent Funk's testimony that she was a Certified Public Accountant
who possessed the knowledge and experience to properly evaluate
the financial transactions at issue constitutes perjury.

In her affidavit, Agent Funk claims that she "received an
Accounting degree from the University of Kansas in 1995." She
further claimed that she "became a Certified Public Accountant
in 1996 through the state of Kansas." Both of those statements
are intentional misrepresentations.

In Kansas, to become a Certified Public Accountant ("CPA"),
one has to first obtain a CPA certificate and then in order to
practice as a CPA (perform or offer to perform services as a
CPA), a person must have the permit to practice. In order to
obtain a permit to practice, one has to provide proof to the
Kansas Board of Accountancy of the requisite experience require-
ment, complete a form, pay a fee, and then be subject to contin-
uing education requirements in order to maintain the permit to
practice. (See email from Susan Somers, Executive Director,
Kansas Board of Accountancy, attached as Exhibit). See also, KS
Stat. 1-316(1).

Agent Funk was also not a CPA in Colorado. In order to hold oneself out in Colorado as a CPA, one must obtain reciprocity and a license from the Board in Colorado. And, in order to satisfy those requirements, Agent Funk would have had to have one year qualified work experience and attest to having completed all CPE required. Agent Funk did not - and could not - do so.

The district court not only glossed over this issue, it misrepresented my position in the § 2255 petition. The district court noted "that Agent Funk is a CPA," and that "Sears does not dispute that Agent Funk is a certified CPA." (ECF No  at 9). Actually, Agent Funk is not a CPA and I have disputed her representations that sh is a CPA. To be clear, Kansas law is crystal clear that "in order to practice as a CPA (perform or offer to perform services as a CPA), a person must have the permit to practice." Agent Funk **does not** have a permit to practices as a CPA.

Again, this is important because the government's entire basis for its case against Sears is alleged financial improprieties and irregularities in monetary transactions. Agent Funk has neither the experience nor the skill - nor the qualifications as a CPA - to opine on those matters. And, had Agent Funk not improperly "enhanced" her credentials, the government would not have obtained a warrant.  To say Agent Funk is a CPA is the equivalent of saying someone who took the MCAT is a doctor or someone who took the LSAT is a lawyer. It's ludicrous. It's fraud. And, because jurists of reason could debate the consequences of Agent Funk's perjury, my application for COA should be granted.

3.  <u>The Government Cannot Commit A Crime (As Agent Funk
    Did) In Order To Prosecute Sears.</u>

Agent Funk's representations about her education, her
degree, her experience, and her qualifications were all embel-
ished. She intentionally misled the district court in an effort
to appear more credible. And, her embelishments were not "cleri-
cal" or "harmless." They were substantive, meaningful, and had
catastrophic results. Agent Funk's financial reporting was
riddled with errors and inaccuracies and its clear she had no
experience to perform the functions of an actual CPA.

In 2017, Tonya Leshun Hall was sentenced to six months in
prison for lying to a federal judge in Western North Carolina.
Ms. Hall prepared an affidavit opining on one party's finances.
In her affidavit, she represented to the court that she graduated
college with a degree in accounting and was a certified public
accountant. It turns out, like Agent Funk, Ms. Hall did not
graduate with a degree in accounting nor was she a CPA.

In that case, the court stated that Ms. Hall's lies "misled"
the court in its assessment, and that prison was necessary to
"promote respect for the law" and important in maintaining the
truthfulness of the justice system. Candidly, there is no
difference in what Ms. Hall did - and was sentenced to six months
in prison for - and what Agent Funk did.

Colorado Revised Statute § 12-2-129 makes it a class 2
misdemeanor to use the CPA designation in Colorado when one is
not authorized to do so; and, a class 6 felony for any subsequent

offense. Because jurists of reason could conclude that Agent
Funk committed a crime in lying to the court to obtain a search
warrant, and such lies had catastrophic consequences for Mr.
Sears, this Application for a Certificate of Appealability should
be granted.

In light of the fact Agent Funk lied to the court and
completely misrepresented her credentials for the sole purpose
of enhancing her legitimacy in pursuit of a search warrant -
and committed at least 1 crime in Colorado doing so - it is
clear that Sears' guilty plea was involuntary and induced by
fraud on the government's part. Because jurists of reason could
debate that without Agent Funk's perjury, Sears would never have
been charged, let alone pled guilty, this Court should grant his
Application for Certificate of Appealability.

### III.   REASONABLE JURISTS COULD DEBATE WHETHER SEARS' PREVIOUS COUNSEL WERE SO INEFFECTIVE AS TO HARM SEARS.

Recognizing the standard for ineffective assistance of
counsel claims is high, jurists of reason could debate whether
my previous counsel actually provided any legal services of value.
Admittedly, I pled guilty to the underlying charges, but largely
that was a result of my attorneys' failure to conduct any due
diligence, perform even cursory defense work, and instead telling
me that if the FBI puts Agent Funk on the stand with her creden-
tials as a CPA, then even if I'm innocent, I would likely lose.

My attorney constantly reminded me that the federal govern-
ment has a better than 95% conviction rate and if I went to trial
and lost, I'd suffer a "trial tax" and receive an even worse

sentence. What my attorneys should have done, especially
after charging such outrageous fees, is investigated Agent
Funk's credentials and experience (or lack thereof), should have
discovered the perjured testimony of my securities attorney,
Fred Lehrer, and requested a Frank's hearing because of other
exculpatory evidence. Instead, they set about to earn a quick
fee by convincing me to plead guilty early.

As highlighted in my § 2255 petition and accompanying exh-
ibits, the government withheld exculpatory evidence from me
during this case, including that one of my witnesses, Fred
Lehrer - my securities attorney - had a personal relationship
with AUSA Kenneth Harmon, and the fact the government withheld
relevant 302 interview reports - all of which constitute Brady
violations.  The district court rejected the argument that the
government's withholding of such evidence rendered my plea in-
voluntary. However, the district court did not address my argu-
ment that my counsel's complete failure to review discovery,
request information from the government, and follow up on claims
rather than take them at face value constitutes ineffective assi-
stance of counesl. Had I known that information prior to entering
into a plea agreement, I would not have pled guilty.

Because jurists of reason could debate the fact that my
attorneys' failure to present a defense, and to request the rele-
vant documents from the government, and to investigate claims
constitutes ineffective assistance of counsel, my application
should be granted.

Additionally, although the government obtained a Search and Seizure Warrant (the one containing Agent Funk's perjury) on May 16, 2014, the warrant was never returned to the Magistrate Judge nor was an inventory of property seized provided either to the Magistrate or to me. I had no way of verifying the government's statements or the validity and credibility of the allegations. It was textbook malpractice and ineffective assistance of counsel for my attorneys not to demand copies of those warrants and the related inventory. Had I seen those warrants prior to entering a plea agreement, I would not have agreed to plead guilty.

Even more incredible is that those warrants still do not appear on my docket; the government has still not returned them to the magistrate. The government's continued misconduct, especially when coupled with my attorney's inaction, clearly satisfies the standard that reasonable jurists could debate the negative impact of my ineffective assistance of counsel claim. As such, my application should be granted.

**CONCLUSION**

In light of the foregoing, because reasonable jurists could debate the fact that the district court violated my Fourth, Sixth, and Fourteenth Amendment rights, and that not only was my plea involuntary, but the result of vindictive prosecution, this Court should grant my Application for Certificate of Appealability.

Dated this 11th Day of August, 2022.

William J. Sears

## CERTIFICATE OF SERVICE

     I affirm under the penalty of perjury that I placed this Petitioner's Application for a Certificate of Appealability with first-class postage prepaid in the prison mail system, addressed to the Clerk of the U.S. Court of Appeals for the Tenth Circuit, 1823 Stout Street, Denver, CO 80257. In addition I hereby certify that a copy of this form was placed with first-class postage prepaid in the mail system addressed to:

                 Tonya Shotwell Andrew

                  U.S. Attorney's Office

                 1801 California Street

                 Suite 1600

                 Denver, CO 80202

Dated this _11th_ day of August, 2022.

                              _Wm. J. Sears_

                            William J. Sears

I certify that the total number of pages I am submitting as my application for certificate of appealability is 30 pages or less.

                              _Wm J Sears_

                              William J. Sears

TRULINCS 56353054 - SEARS, WILLIAM J - Unit: FLF-T-A

---------------------------------------------------------------------------------------------------------------

TO: 56353054
SUBJECT: answer from ksboa
DATE: 07/23/2022 09:06:05 AM

Kansas is a two-tiered state.  Meaning one has to first obtain a CPA certificate, and then in order to practice as a CPA (perform or offer to perform services as a CPA for the public),  a person must have the permit to practice.  In order to obtain a permit to practice, one has to provide proof to the Board of the requisite experience requirement, complete a form, pay a fee, and then be subject to continuing education requirements in order to maintain the permit to practice.


Susan Somers

Susan Somers
Executive Director
Kansas Board of Accountancy
900 SW Jackson, Ste. 556
Topeka, KS  66612-1239
785-296-2162   (Phone)
susan.somers@ks.gov (Email address)
https://ksboa.kansas.gov (Web)


The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

-----Original Message-----
From: Erick Justice <mail@ksboa.kansas.gov>
Sent: Friday, July 22, 2022 3:11 PM
To: ksboa <ksboa@ks.gov>
Subject: New Message From ksboa

EXTERNAL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.


Name:  Erick Justice
Address: PO Box 1233
City: Bethesda
State: Maryland
Zip Code: 20814
County:
Phone: 202-753-9290
Email Address: justice20211@proton.me
My question or comment pertains to : Other My Comment: I have a small company and am doing a financial audit and analysis that go along with it. This is involving some litigation.
I have a individual to whom Claims he is a Certified Public Accountant and has a certificate with the State of Kansas. I verified this however it says he does not have a license. He claims he is a Certified Public Accountant and can do the work and opine on it. Your web site is confusing and says he cant with only a certificate?
Why is that?
What's the difference between the two?
Can you explain why a certificate is not enough?
Are there educational or hourly on the job requirements or something?
Is not getting a license just filling out a form and paying a fee?

Please help me as I want to make sure that I am making a proper decision and avoid any legal ramifications.

**From:** Professional Ethics - Submissions <ProfessionalEthicsSubmissions@aicpa.org>
**Date:** Friday, November 8, 2019 at 9:46 AM
**To:** Bill S <bill@bmails.biz>, Professional Ethics - Submissions
<ProfessionalEthicsSubmissions@aicpa.org>
**Cc:** Peter Bornstein <pbornstein@prblegal.com>, Jeannette Wolf <jwolf@prblegal.com>
**Subject:** RE: Attention Unlicensed Individual Practicing

Hello William,

This individual is neither an AICPA member nor a member of the Kansas State Society of CPAs so we
don't have jurisdiction to perform any investigation.  You may want to contact the State Board of
Accountancy to see if they have any provisions.

Thank you.
Aradhana

## Aradhana Aggarwal, CPA
Manager - Professional Ethics
Professional Ethics Hotline: 888.777.7077 or ethics@aicpa.org
AICPA Member Service: 888.777.7077 or service@aicpa.org
CIMA: cimaglobal.com/Contact-us/

This message, including any attachments, may contain confidential information intended for a specific individual and purpose and is
protected by law. If you are not the intended recipient, please delete it. Any disclosure, copying or distribution of this message is
strictly prohibited.

The position expressed above represents the opinion of the staff of the AICPA Professional Ethics Division as to the application of the
*Code of Professional Conduct* to the facts presented in your e-mail. The opinions reflected in this response do not reflect an official
position of the Professional Ethics Executive Committee or of the AICPA.

Views expressed by AICPA employees are expressed for purposes of deliberation, providing member services and other purposes
exclusive of practicing public accounting. Views expressed by AICPA staff do not necessarily represent the official views of the
AICPA unless otherwise noted. Official AICPA positions are determined through certain specific committee procedures, due process
and deliberation.

# FREDRICK LEHRER'S PERJURY TO THE SEC

1. *Lehrer's Knowledge of Jean-Pierre's Opinion Letter Ban. In his sworn testimony before the SEC, Lehrer stated that he learned that Jean-Pierre had been banned from issuing opinion letters "through a computer search, not necessarily in reference to him in particular, you know, but banned opinion writers." (Exhibit A at 96:8-98:24.) In stark contrast to that statement, Lehrer described, in an August 7, 2011 declaration signed under penalty of perjury, Guy Jean-Pierre's forgeries. (Exhibit B.) In his October 16, 2011 declaration, Lehrer states that he "assisted substantially with drafting the [bar] grievances filed against Jean Pierre ..." (Exhibit C at ¶11.) In email communication on August 28, 2013, a mere 4 minutes after Sears first introduces him to FusionPharm/FSPM, Lehrer refers to an SEC.gov link and asks Sears whether Jean-Pierre is still the Secretary. (Exhibit D.) The SEC link was to the Jean-Pierre case in which Lehrer was an investigator.*

2. *Lehrer's Knowledge of Bill and Sandra Sears' Ownership of Mead point and Advice Regarding Disclosing Mead point as a Related Party. In his SEC testimony, Lehrer admitted that he knew that Bill Sears controlled Meadpoint during the time Lehrer was issuing Rule 144 opinions. (Exhibit E at 316: 8-16). While Lehrer stated in his testimony that he did not know that Bill Sears had transferred control of Meadpoint to his mother, Sandra Sears, until April 2014 (Exhibit F at 282:15 - 284:9; Exhibit G at 316:19 - 317:20), that claim is belied by, among other things, an October 22, 2013 email in which Bill Sears told Lehrer "FYI no conflict with Meadpoint as a family member out of state owns the company." (Exhibit H) (emphasis added). Bill Sears also stated in that email that the ownership change would be reflected on the Nevada Secretary of State's website. Consistent with that statement, the Nevada Secretary of State's website identifies Sandra Sears as Meadpoint's only officer. (Exhibit I).*

3. *Despite Lehrer's knowledge throughout his representation of FusionPharm that Bill Sears or his mother controlled Meadpoint, Lehrer advised FusionPharm that it did not need to disclose Meadpoint as a related party.  \*\*\* An April 15, 2014 email from Craig Dudley to Lehrer, in which Dudley specifically sought advice on that issue, is attached as Exhibit J.  \*\*\**

4. *Lehrer's Knowledge of Bills Sears' Criminal History. Lehrer stated in his SEC testimony that he learned from a newspaper article after DOJ's raid of FusionPharm's office that Bill Sears had a prior criminal conviction for securities fraud. (Exhibit K at 236: 15-23.) Lehrer's other testimony on that subject, however, made clear that he knew about Bill Sears' conviction long before that. (Exhibit L at 71:23-74:21; Exhibit M at 231:19-236:14). An October 10, 2013 email exchange, in fact, shows Lehrer and Bill Sears discussing that very issue. (Exhibit L.)*

5. *Lehrer's Use of Medications. On information and belief, Mr. Lehrer has a long history of taking various medications – including medications to treat seizures, anxiety, bipolar disorder, and psychosis – that are known to impair memory and judgment. He has also been hospitalized for mental-health reasons. The medications include clonazepam, lorazipam, quetiapine, Prozac, Pemazepam, BuSpar, buspirone, Remeron, Effexor, and Klonopin. This long history casts doubt on Lehrer's statement that he was not taking anymedications at the time of his testimony.*

## QUOTE TAKEN FROM CRAIG DUDLEYS 302.

Sears is engaged with and works very closely with FusionPharm because Meadpoint is the sales arm. Meadpoint was out "humping for sales" at trade shows and such. Sears has been an advisor and helped Dittman along the way. With regards to the relationship between Sears and FusionPharm, Dudley advised that is was a "muddy situation." It is close but not over the line. Dudley brought up the disclosure of this relationship with their securities counsel, Fred Last Name Unknown (LNU). Dudley raised this when he was finishing the 2013 financials. While it is a muddy situation, the decision was made that it did not rise to the level of disclosure.

9221B

Clerk of the U.S.
Court of Appeals
for 10th Circuit
1823 stout street
Denver, CO 80257

Scanned by
Marshal