**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 16-cr-301-WJM
(Civil Action No. 21-cv-00141-WJM)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WILLIAM J. SEARS,

      Defendant.

---

## ORDER DENYING DEFENDANT'S PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

---

This matter is before the Court on Defendant William J. Sears' Petition to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Petition"). (ECF No. 246.) For the following reasons, the Petition is denied.

### I. LEGAL STANDARD

Section 2255 of Title 28 of the United States Code applies to requests seeking to vacate, set aside, or correct a federal sentence. A § 2255 petition "attacks the legality of detention . . . and must be filed in the district that imposed the sentence." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). "The purpose of section 2255 is to provide a method of determining the validity of a judgment by the court which imposed the sentence." *Id*.

Sears is proceeding *pro se* and is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991).  In other words, if the Court can "reasonably read the pleadings to

state a valid claim on which [Sears] could prevail, it should do so despite [Sears'] failure

to cite proper legal authority, [his] confusion of various legal theories, [his] poor syntax

and sentence construction, or [his] unfamiliarity with pleading requirements." *Hall*, 935

F.2d at 1110.  However, the requirement that the Court read Sears' pleadings broadly

does not relieve him of the burden of alleging sufficient facts on which a recognized

legal claim could be based. *Id.*

## II. BACKGROUND

### A.     Charges

On September 15, 2016, Sears and his co-defendant in his underlying criminal

case, Scott Dittman, were both charged by information with conspiracy to defraud the

United States, and Sears alone was charged with filing a false income tax return.  (ECF

No. 1.)  That same day, both defendants waived the indictment (ECF Nos. 16, 17) and

then filed notices of disposition the following day (ECF Nos. 3, 5).

The essence of the Government's conspiracy charge was that Sears and Dittman

had worked together to build a business called FusionPharm, but took numerous steps

to, among other things, conceal Sears's relationship to the company (given Sears's prior

conviction for federal securities fraud), and create free-trading (or unrestricted)

FusionPharm shares without truthfully satisfying federal regulatory requirements for

such shares.  According to the Government, this was a willful evasion of federal

securities laws and therefore a conspiracy to defraud the United States.

### B.     Change of Plea Hearing and Final Judgment

After reaching a plea agreement with the Government, Sears pleaded guilty in

November 2016 to one count of conspiracy to defraud the United States and one count

2

of filing a false income tax return.  (ECF Nos. 41, 48, 84.)  As part of the plea

agreement, Sears agreed to waive his right to directly appeal and collaterally attack his

conviction and sentence, with limited exceptions.  (ECF No. 51-1 at 9–10.)

Sears's change of plea hearing took place on November 14, 2016.  (ECF

No. 48.)  Sears was placed under oath.  (ECF No. 84 at 2–3.)  The Court then

confirmed that Sears understood his oath and that false answers could subject him to a

perjury prosecution.  (*Id*. at 4.)  After some inquiries of counsel, the Court turned back to

Sears and had the following exchange:

> Q.      . . . Have you read Court Exhibits 1 and 2?[1]
>
> A.      Yes, I have, Your Honor.
>
> Q.      Have you read them carefully?
>
> A.      Yes, I have, Your Honor.
>
> Q.      Have you discussed these documents with your lawyer?
>
> A.      In detail, sir, yes.
>
> Q.      All right. Has your lawyer answered your questions regarding Exhibits 1 and 2?
>
> A.      Yes, he has.
>
> Q.      When you signed Exhibits 1 and 2, did you do so voluntarily?
>
> A.      Yes, I did, sir.

(ECF No. 84 at 12–13.)  The Court then explained that the facts described in the plea

agreement are the facts the Government believes it could prove at trial and continued

---

[1] Court Exhibit 1 was the plea agreement and its attachments (ECF Nos. 41–43), and Court Exhibit 2 was Sears' Statement in Advance of Pleading Guilty (ECF No. 44).  (*See* ECF No. 84 at 3–4.)

its exchange with Sears as follows:

> Q.      . . . So do you agree that the facts that you've reviewed at pages 12 through 37 of the plea agreement are true?
>
> A.      Yes, I do, Your Honor.
>
> Q.      Is there any inaccuracy in those facts you'd like to correct at this time?
>
> A.      No, Your Honor.

(*Id.* at 13–14.)  The Court then asked Sears to "summarize . . . what it is that you did with respect to the counts you are pleading guilty to."  (*Id.* at 14.)  Sears responded by describing one of the events that, according to the Government, amounted to an evasion of federal securities laws:

> Your Honor, I was involved in the creation of a convertible promissory note that was backdated.  In conjunction with that convertible promissory note, I failed to properly disclose my affiliation status which enabled me to have access to free trading securities.  I then liquidated those free trading securities into the public markets for a profit and failed to report that profit on my personal income tax, sir.

(*Id.*)  The Court then turned to the elements of the two crimes to which Sears would plead guilty:

> Q.      All right.  And did you do so in conspiracy with at least one other person to engage in those acts?
>
> A.      Indeed, sir.
>
> Q.      All right.  And you knowingly and voluntarily participated in that conspiracy?
>
> A.      Yes, sir.
>
> Q.      And you were aware of the objective of that conspiracy?
>
> A.      Yes, sir.

Q.     And what was the objective?

A.     To obtain free trading securities and be able to sell them into the market, sir.

Q.     All right.  Both you and your coconspirator [Dittman] acted in a manner for your shared mutual benefit within the scope of the conspiracy charged?

A.     Yes, sir.

Q.     With respect to Count 2 and the statements that you made on your—the false statements, as you've just characterized them, on your tax returns, you knew them to be false at the time you made them on the return; is that correct?

A.     Yes, sir.

Q.     And you did so—you made that false statement willfully and with the intent to violate a known legal duty?

A.     Yes, sir.

(*Id*. at 14–15.)  The Court accordingly accepted Sears's guilty plea.  (*Id*. at 26.)

On May 4, 2019, Sears filed a Motion to Withdraw Plea of Guilty.  (ECF No. 139.) The Court denied that motion on May 22, 2019.  (ECF No. 150.)  On August 1, 2019, Sears filed a Motion for Reconsideration (ECF No. 173), which the Court denied on September 30, 2019 (ECF No. 181).  On February 10, 2020, final judgment was entered against Sears, and he received a stipulated sentence of 96 months.  (ECF No. 215; ECF No. 51-1 at 7.)

On January 15, 2021, Sears filed the instant Petition under 28 U.S.C. § 2255, in which he requests that the Court vacate, set aside, or correct his sentence.  On February 9, 2021, the Government filed its response to the Petition ("Response"), to which Sears replied on April 23, 2021 ("Reply").  (ECF Nos. 255, 271.)

## III. ANALYSIS

Sears argues that he is entitled to habeas relief under 28 U.S.C. § 2255 based on four grounds:

Ground 1: Withholding of exculpatory evidence.

Ground 2: Fraud on the Court.

Ground 3: Violations of 4th, 5th, and 6th Amendment.

Ground 4: Ineffective assistance of counsel.

(ECF No. 246 at 4–9.)  In support of each ground for relief, Sears directs the Court to a 175-page exhibit filed along with the Petition.  (*Id.*)  The exhibit contains Sears' legal arguments and his exhibits, intermingled with one another and in seemingly random order.  (ECF No. 246-1.)  The Court has taken care to sift through the Petition in an attempt to identify allegations and arguments that support Sears' Petition.  Sears supports his Petition by alleging that: (1) the search warrants in this case were defective because FBI Special Agent Kate Funk lied about her qualifications as an accountant in the affidavit supporting the Government's search warrants (*id.* at 3, 23–25, 32, 90, 170, 175); (2) certain inculpatory information provided to the Government by Fred Lehrer was fabricated, and Lehrer had a conflict of interest because he had a relationship with AUSA Kenneth Harmon (*id.* at 42–44, 108–110); and (3) Sears' guilty plea was involuntary because he pleaded in part to prevent the Government from prosecuting his mother and wife (ECF No. 271 at 14).

After a thorough review of the Petition, the Court finds that it does not contain specific arguments and allegations related to ineffective assistance of counsel.  Sears makes a conclusory claim of ineffective counsel in two places (ECF No. 246 at 9; ECF No. 246-1 at 169), but he does not identify any specific instance of ineffective

assistance of counsel. Thus, the Court denies the Petition insofar as it is based on Ground 4. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations unsupported by specifics is subject to summary dismissal").[2]

Moreover, the Government argues that all of Sears' claims are foreclosed by his plea of guilty. (ECF No. 255 at 12–13.) The Tenth Circuit has held that a voluntary and unconditional guilty plea waives all non-jurisdictional defenses except "due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment." *United States v. De Vaughn*, 694 F.3d 1141, 1145–46 (10th Cir. 2012).

Sears' plea was unconditional, his defenses are non-jurisdictional, he does not argue that his prosecution was vindictive, and he does not raise a double jeopardy defense. Therefore, in determining whether Sears has waived his defenses regarding the alleged constitutional infirmities of his prosecution, the only question the Court needs to resolve is whether his plea was voluntary. *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

The Supreme Court has clearly instructed that "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266. Thus, "claims of prior constitutional deprivation . . . are not themselves independent grounds for federal collateral relief." *Id.* at 267. Nevertheless, in limited circumstances, a defendant who

---

[2] Sears makes more specific arguments regarding ineffective assistance of counsel in his Reply. (ECF No. 271.) However, because the Government does not have a further opportunity to respond to Sears' Reply, *see* D.C.COLO.LCivR 7.1C, the Court finds that Sears has waived these arguments. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) (arguments raised for the first time in a reply brief generally are deemed waived).

has pleaded guilty may challenge the voluntariness of the plea based on the Government's failure to produce *exculpatory* material. *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994).

At his sentencing hearing, Sears testified that his guilty plea was voluntary and that he had not been coerced or threatened to force him to plea. (ECF No. 84 at 13, 23.) A petitioner who "has made an affirmation of voluntariness and has pled guilty . . . carries a heavy burden" in subsequently claiming that his plea was involuntary. *United States v. Whalen,* 976 F.2d 1346, 1348 (10th Cir. 1992).

Sears alleges that there were numerous constitutional infirmities with his prosecution, and he argues that his guilty plea was involuntary because, had he known of these alleged constitutional defects, he would not have pleaded guilty. (ECF No. 246-1 at 170.) The Court considers each argument in turn, below.

## A.     Kate Funk's Qualifications as a CPA

Sears alleges that Agent Funk lied about her credentials in an affidavit supporting a search warrant that led to evidence used against him. (ECF No. 246-1 at 3, 23–25, 27, 32, 90, 170, 175.) Specifically, he alleges that Agent Funk improperly represented herself as a certified public accountant ("CPA") in her affidavit attached to a search warrant in this case because she was not a fully licensed-to-practice CPA. (*Id*. at 25.) He argues that since the search warrant was based entirely on Agent Funk's defective affidavit, the warrant lacked probable cause, and the fruits of the search would have been suppressed at trial. (*Id*. at 58.) Further, as relevant here, he argues that his guilty plea was involuntary because had he known of these alleged deficiencies in the warrant, he would not have pleaded guilty. (*Id*. at 170.)

In its May 22, 2019 Order denying Sears' Motion to Withdraw Plea, the Court

considered and rejected precisely this argument.  (ECF No. 150 at 9–11.)  The Court

noted that Agent Funk *is* a CPA, and Sears is only questioning "the contexts in, and

purposes for which, she may represent herself as such, under Kansas law."  (*Id*. at 10.)

Thus, the Court went on to reason that:

> [T]here is no *Brady* violation under the circumstances of this
> case because the allegedly withheld information is not
> *exculpatory*.  How and when Agent Funk may call herself a
> CPA under Kansas law has nothing to do with whether
> Sears committed the crimes with which he was accused.
> The evidence is, at best, impeachment evidence, and "the
> Constitution does not require the Government to disclose
> material impeachment evidence prior to entering a plea
> agreement with a criminal defendant."  *United States v. Ruiz*,
> 536 U.S. 622, 633 (2002).

(ECF No. 150 at 11 (emphasis in original).)  Finally, the Court concluded that Sears's

lack of knowledge about Agent Funk's precise status as a CPA 'certificate' holder, and

not a fully licensed-to-practice CPA, did not render his guilty plea involuntary.  (*Id*. at

11–12.)

Turning to the instant Petition, the Court notes that Sears does not dispute that

Agent Funk is a certified CPA.  (*See* ECF No. 246-1 at 27.)  Sears simply restates his

argument that Agent Funk is not permitted to represent herself as a CPA as she did in

the affidavit, and Sears does not engage with the Court's reasoning in its May 22, 2019

Order.  Reviewing the issue anew, the Court comes to the same conclusion as it did

previously: "[a]s a matter of law . . . Sears' lack of knowledge about Agent Funk's status

as a CPA 'certificate' holder only, and not as a fully licensed-to-practice CPA, did not

render his guilty plea involuntary."  (*Id*. at 11–12.)  The Court comes to this conclusion

because the allegedly withheld information regarding Agent Funk is not *exculpatory*,

Most notably, Sears has not identified any alleged accounting errors committed by

Agent Funk. *Wright*, 43 F.3d at 496. The Court finds this argument wholly without merit and denies this portion of the Petition

## B.     Fred Lehrer's Alleged Conflict of Interest

Next, Sears alleges that the inculpatory information provided to the Government by Lehrer was all false. (ECF No. 246-1 at 41–42.) Moreover, he argues that Lehrer had a conflict of interest because he had a personal relationship with AUSA Kenneth Harmon. (*Id.*) Finally, he argues that his guilty plea was involuntary because he did not know about any of the above information until after he pleaded guilty. (*Id.*)

The Court also considered and rejected this argument in its May 22, 2019 Order denying Sears' Motion to Withdraw Plea. (ECF No. 150 at 12–14.) The Court carefully considered Sears' allegations and found that:

> Sears nowhere explains how this relationship is exculpatory. As best the Court can tell . . . it would have been *impeachment* evidence had Mr. Lehrer testified in a trial and, for example, disavowed Sears's (apparent) claim that he received good-faith advice from Mr. Lehrer about the legality of the FusionPharm stock transactions. Knowledge that Mr. Lehrer and Mr. Harmon are friends, and that Mr. Lehrer was not being prosecuted, might give the jury reason to suspect that Mr. Harmon was allowing Mr. Lehrer to say whatever he needed to say to protect himself, as a courtesy to a friend. But again, the Government need not disclose potential impeachment evidence before the defendant decides to plead guilty. *Ruiz*, 536 U.S. at 633. Therefore, Sears's plea was not involuntary on this account, and so this factor does not favor allowing him to withdraw his plea.

(*Id.* at 13–14 (footnotes omitted).)

In the instant Petition, Sears repeats his allegations about Lehrer and AUSA Harmon, but he does not explain how any information regarding the allegations information about any such relationship would lead to anything more than, at best, impeachment evidence. Thus, the Court comes to the same conclusion as it did

previously.  The Government had no duty to disclose impeachment evidence before Sears decided to plead guilty, therefore Sears' guilty plea was not involuntary on this account.  *Ruiz*, 536 U.S. at 633

## C.  Potential Prosecution of Sears' Family Members

Sears also argues that his plea was not voluntary because it was based in part on his desire to prevent his mother, wife, and "entire extended family" from being prosecuted and financially ruined.  (ECF No. 271 at 14.)  The Supreme Court has warned that plea bargains involving "adverse or lenient treatment for some person *other* than the accused . . . might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider."  *Bordenkircher v. Hayes,* 434 U.S. 357, 364 n.8 (1978) (citation omitted).   Because of this danger, the Government must abide by "a high standard of good faith" in its use of such tactics. *Mosier v. Murphy*, 790 F.2d 62, 66 (10th Cir. 1986).  To act in good faith, prosecutors must have probable cause to indict the third person at the time they offer lenity or communicate the threat.  *Wright*, 43 F.3d at 499.

The Court is not persuaded by Sears' argument for three reasons.  First, the allegations are vague and conclusory, and Sears does not allege any specific facts regarding the supposed threat or threats.  (ECF No.  271 at 14.)  Second, Sears swore under oath at his change of plea hearing that neither he nor any member of his family had been coerced or threatened in order to force him to plead guilty.  (ECF No. 84 at 23.)

Third, even assuming that the Government did offer to refrain from prosecuting Sears' mother and wife in exchange for his plea, Sears wholly fails to even allege—let alone provide any evidence—that the Government lacked probable cause to indict

them.  Therefore, the Court is not persuaded that Sears has adequately alleged that the Government was acting in bad faith.  *Wright*, 43 F.3d at 499; *see United States v. Marquez,* 909 F.2d 738, 742 (2d Cir. 1990) ("Where the plea is entered after the prosecutor threatens prosecution of a third party, courts have afforded the defendant an opportunity to show that probable cause for the prosecution was lacking when the threat was made.").

Thus, the Court finds that Sears' guilty plea was not involuntary on this account.

**D.      Totality of the Circumstances**

In considering whether Sears' plea was knowing and voluntary under the totality of the circumstances, the Court has considered the Tenth Circuit's reasoning in denying habeas relief in a similar case, *United States v. Crowell*, 15 F. App'x 709, 713 (10th Cir. 2001).  In that case, Crowell argued that his guilty plea was not knowing and voluntary because the Government withheld exculpatory documents prior to his plea.  *Crowell*, 15 F. App'x at 713.  Among other things, he alleged that the Government withheld: (1) a laboratory result finding no blood, skin, or hair on a piece of rope found at the scene of the crime; and (2) a medical report of the victim showing that the victim had no cuts or bruises.  *Id*.  Crowell argued that this information was exculpatory because it bolstered his chances of an acquittal on the charge for kidnapping in violation of 18 U.S.C. § 1201(a)(1), and he argued that had he known of this exculpatory evidence, he would not have pleaded guilty.  *Id*. at 710.

The Tenth Circuit found that even though the reports were "somewhat exculpatory", they would "not necessarily impeach the victim's statement that [the petitioner] tied her up and raped her."  (*Id*.)  Therefore, the court held that the allegedly withheld material did not compromise the voluntary and knowing nature of Crowell's

plea. (*Id.*)[3]

Here, Sears' claims are far weaker than Crowell's claims because Sears has not shown that a single piece of exculpatory evidence was ever withheld from him. As discussed above, the information allegedly withheld from Sears was, *at best*, impeachment evidence, which the Government has no duty to disclose before the defendant decides to plead guilty. *Ruiz*, 536 U.S. at 633.

Based on the foregoing reasons, the Court finds that the Government's alleged conduct and the "allegedly withheld material did not compromise the voluntary and knowing nature of [Sears'] plea." *Crowell*, 15 F. App'x at 713. Consequently, all of Sears' claims are waived because they all relate to "the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. Therefore, the Petition is denied. *De Vaughn*, 694 F.3d at 1145–46.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.  Defendant William J. Sears' Petition to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 246) is DENIED;

2.  Case No. 21-cv-00141-WJM is DISMISSED WITH PREJUDICE; and

3.  The Court has *sua sponte* considered whether a certificate of appealability is appropriate, and hereby ORDERS that no certificate of appealability will issue because Sears has not made a substantial showing that jurists of reason would

---

[3] The Tenth Circuit came to this conclusion even though it was reviewing the matter on a standard that was very deferential to Crowell; all he needed to show was that "the issues he raise[d] are debatable among jurists, that a court could resolve the issues differently, or that the questions presented deserve further proceedings." *Crowell*, 15 F. App'x at 711.

find it debatable whether his Petition states a valid claim of the denial of a constitutional right.

Dated this 15th day of July, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 16-cr-301-WJM
(Civil Action No. 21-cv-141-WJM)

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.

WILLIAM J. SEARS,

      Defendant/Movant.

---

**FINAL JUDGMENT**

---

Pursuant to and in accordance with the Order (ECF No. 289) entered by United States District Judge William J. Martínez on July 15, 2022, it is hereby

ORDERED that the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 289) is denied. It is

FURTHER ORDERED that civil case number 21-cv-141-WJM is dismissed with prejudice. It is

FURTHER ORDERED that pursuant to the Order (ECF No. 289), no certificate of appealability will issue.

Dated July 15, 2022, at Denver, Colorado.

                FOR THE COURT:

                Jeffrey P. Colwell, Clerk

                By:     s/L.Roberson
                        L. Roberson
                        Deputy Clerk

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

WILLIAM J. SEARS,

    Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

    Respondent - Appellee.

Case No.
(D.C. No. 16-cr-301 WJM)
(D. Colo.)

**APPELLANT'S APPLICATION
FOR A CERTIFICATE OF
APPEALABILITY**

---

COMES NOW, Appellant and Petitioner William J. Sears ("Sears" or "Petitioner"), pro se and on his own behalf, and hereby applies to this Court for a Certificate of Appealability pursuant to Federal Rule of Appeallate Procedure 22 on the district court's order "Denying [Sears'] Petition to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. For the reasons set forth herein, this Court should grant Sears' Application for Certificate of Appealability.

<u>PROCEDURAL BACKGROUND</u>

On September 15, 2016, Sears was charged by information with conspiracy to defraud the United States and filing a false income tax return. Sears' pled guilty to one count of each in November, 2016. The plea agreement contained standard language that Sears waived his right to appeal except in certain circumstances.

Because Sears learned about serious fraud and improprieties in the Government's investigation of his case, on May 4, 2019, Sears filed a Motion to Withdraw Plea of Guilty. The Court denied that motion on May 22, 2019. Sears then filed a Motion

for Reconsideration on August 1, 2019, and on September 30,
2019, the district court denied that motion. On February 10,
2020, Sears was sentenced to 96 months in federal custody.

On January 15, 2021, Sears filed a Petition to Vacate,
Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Although
Section 2255 provides that unless "the motion and the files
and records in this case could not have shown conclusively
that the prisoner is entitled to no relief, the court shall
. . . grant a prompt hearing thereon and determine the issues."
See United States v. Jackson, 209 F.3d 1103, 1110 (9th Cir.
2000).

In this case, not only did the district court not grant
Petitioner an evidentiary hearing, the district court waited
19 months to rule on Sears' Petition. On July 15, 2022, the
district court denied Sears' Petition, and sua sponte, ordered
that no certificate of appealability will issue. As a result,
Sears files this instant Application.

## LEGAL STANDARD

"Unless a circuit justice or judge issues a certificate of
appealability, an appeal may not be taken to the court of appeals
from . . . the final order in a proceeding under Section 2255."
28 U.S.C. § 2253(c)(1)(B). "The issuance of a COA is a jurisdict-
ional prerequisite to an appeal from the denial of an issue
raised in a § 2255 motion." United States v. Gonzalez, 596 F.3d
1228, 1241 (10th Cir. 2010).

"To obtain a COA after a district court has rejected a petitioner's constitutional claims on the merits, the 'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the . . . constitutional claims debatable or wrong.'" Milton v. Miller, 812 F.3d 1252, 1263 (10th Cir. 2016) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A COA is necessary if an issue is "debatable among jurists of reason" or if "a court could resolve the issue [differently], or the question [is] adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

Importantly, ther certificate of appealability "inquiry . . . is not coextensive with a merit analysis." Buck v. Davis, 137 U.S. 759 (2017). A petitioner "need not show that he should prevail on the merits." Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). Rather, a petitioner nees to make a "modest" showing. In fact, according to the Supreme Court, a "court of appeals should limit its examination [at the COA stage] to a threshold inquiry into the underlying merit of the claims" and ask "only if the District Court's decision was debatable." Buck, 137 U.S. at 759. A claim may be debatable and thus deserving of a COA, "even though every jurist of reason might agree, after the certificate of appealability has been granted and the case received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

-3-

## ARGUMENT

When a district court denies an inmate's § 2255 petition, a habeas petitioner seeking a Certificate of Appealability ("COA") must show that reasonable jurists could debate the loss of the inmate's constitutional claim. Because jurists of reason could debate the district court's decisions and order in this case, this Court should grant Sears' Application for COA.

**I. BECAUSE JURISTS OF REASON COULD DEBATE THAT I SHOULD HAVE RECEIVED, AT THE VERY LEAST, AN EVIDENTIARY HEARING ON MY § 2255 PETITION, THIS COURT SHOULD GRANT ME A CERTIFICATE OF APPEALABILITY.**

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. See also, United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1998) (holding that an evidentiary hearing "is mandatory" whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims); United States v. Jackson, 209 F.3d 1103, 1110 (9th Cir. 2000) (district court abused its discretion in denying evidentiary hearing, given that the motion, files, and record in that case did not show conclusively that petitioner was not entitled to relief); and Anderson v. United States, 948 F.2d 704 (11th Cir. 1991) (movant entitled to evidentiary hearing because "record does not conclusively show that [his] contentions are without merit."

-4-

In this case, I filed my § 2255 petition on January 15, 2021. The district court believed there was at least enough legitimacy to my petition to order the government to file an opposition or otherwise respond. The government responded on February 9, 2021. On April 23, 2021, I filed a reply to the government's opposition.

Although § 2255 requires a district court to "promptly" order an evidentiary hearing, on February 7, 2022, over one year after filing my § 2255 petition and 9 months from the last filing on the issue, I had still not heard from the district court nor had an evidentiary hearing been scheduled, so I filed a motion for a hearing. On February 9, 2022, the district court denied that motion. Then, five months later, the court finally ruled on my petition - without ever holding an evidentiary hearing.

My § 2255 Petition to Vacate, Set Aside, or Correct Sentence was approximately 17 pages as well as a 175-page exhibit supporting my claims of fraud on the court, constitutional violations, ineffective assistance of counsel, and vindictive prosecution, including the withholding of exculpatory evidence. As the district court noted in its Order, I am not an attorney and perhaps my exhibits were "in seemingly random order," but nevertheless, I included significant and substantive evidence of constitutional violations and rampant fraud in my case. At the very least, I provided sufficient evidence to contradict the record and warrant an evidentiary hearing.

-5-

The very fact it took the district court 16 months to rule on my petition is evidence that the information I provided as part of the petition contradicted and was different than the record and other information on file. Because I was entitled, at the very least, to an evidentiary hearing, this Court should grant my application for a certificate of appealability.

## II. BECAUSE JURISTS OF REASON COULD DEBATE WHETHER THE PLEA AGREEMENT I ENTERED INTO WAS INVOLUNTARY AND INVALID BECAUSE IT WAS BASED ON FRAUD, LIES AND PERJURY OF FBI AGENT KATE FUNK, THIS COURT SHOULD GRANT MY APPLICATION.

This Court should grant my Application for a Certificate of Appealability because although I pled guilty to the underlying crimes, reasonable jurists could debate that the plea agreement I entered into was procured by fraud, lies, and perjury on the part of the United States, and therefore was involuntary and invalid.

### 1. In Order To Obtain A Search Warrant, The Government lied And Specifically FBI Agent Kate Funk Perjured Herself.

Federal Rules of Criminal Procedure 4.1 and 41 are clear that in order to obtain a search warrant, the FBI had to attest, under oath, to certain facts sufficient to satisfy the probable cause requirement. This information may come from either the applicant federal law enforcement officer, or a witness willing to make a statement. Any oral testimony must be recorded so that any transcribed affidavit will provide an adequate basis for determining the sufficiency of the evidence. F.R.Cr.P. 4.1 & 41.

-6-

The facts underlying the charges against me were complex and technical in nature. As I was involved in a publicly-traded company with complex financial and accounting rules, in order for the government to obtain a search warrant, the affiant would have to have a certain level of experience and education with forensic accounting, GAAP accounting principles, and auditing to satisfy the probably cause requirements. When government agencies lie, in an effort to enhance the impression of reliability, then any evidence obtained as a result of that fraudulent conduct must be excluded.

In this case, Special Agent Kate Funk did just that. In order to give the impression of "enhanced reliability," Agent Funk claimed that she graduated from the University of Kansas in 1995 with a degree in accounting. She further stated that she became a Certified Public Accountant in Kansas in 1996. Both of these statements are materially false and were provided to the judge solely for the purpose of enhancing Agent Funk's credibility. She then included the phrase "knowledge and experience" at least 47 times in her affidavit, again, materially misrepresenting and misleading the court in an effort to satisfy the probable cause threshold and obtain a search warrant.

The bottom line is the only probable cause the government had to obtain a search warrant against me was the materially false and misleading "knowledge and experience" of Agent Funk. Unfortunately, she had neither knowledge nor experience. As such, all of the evidence obtained pursuant to that search warrant should have been excluded.

2.  **Kate Funk Was Not A Certified Public Accountant Nor**
    **Nor Did She Have The "Knowledge And Experience"**
    **Necessary To Evaluate My Business Transactions**.

Because the basis of the government's investigation into
me and my business was the affidavit of Agent Kate Funk, her
perjury, material misrepresentations, and misconduct constitutes
a clear violation of my Fourth Amendment rights. Specifically,
Agent Funk's testimony that she was a Certified Public Accountant
who possessed the knowledge and experience to properly evaluate
the financial transactions at issue constitutes perjury.

In her affidavit, Agent Funk claims that she "received an
Accounting degree from the University of Kansas in 1995." She
further claimed that she "became a Certified Public Accountant
in 1996 through the state of Kansas." Both of those statements
are intentional misrepresentations.

In Kansas, to become a Certified Public Accountant ("CPA"),
one has to first obtain a CPA certificate and then in order to
practice as a CPA (perform or offer to perform services as a
CPA), a person must have the permit to practice. In order to
obtain a permit to practice, one has to provide proof to the
Kansas Board of Accountancy of the requisite experience require-
ment, complete a form, pay a fee, and then be subject to contin-
uing education requirements in order to maintain the permit to
practice. (See email from Susan Somers, Executive Director,
Kansas Board of Accountancy, attached as Exhibit). See also, KS
Stat. 1-316(1).

-8-

Agent Funk was also not a CPA in Colorado. In order to hold oneself out in Colorado as a CPA, one must obtain reciprocity and a license from the Board in Colorado. And, in order to satisfy those requirements, Agent Funk would have had to have one year qualified work experience and attest to having completed all CPE required. Agent Funk did not - and could not - do so.

The district court not only glossed over this issue, it misrepresented my position in the § 2255 petition. The district court noted "that Agent Funk is a CPA," and that "Sears does not dispute that Agent Funk is a certified CPA." (ECF No at 9). Actually, Agent Funk is not a CPA and I have disputed her representations that sh is a CPA. To be clear, Kansas law is crystal clear that "in order to practice as a CPA (perform or offer to perform services as a CPA), a person must have the permit to practice." Agent Funk **does not** have a permit to practices as a CPA.

Again, this is important because the government's entire basis for its case against Sears is alleged financial improprieties and irregularities in monetary transactions. Agent Funk has neither the experience nor the skill - nor the qualifications as a CPA - to opine on those matters. And, had Agent Funk not improperly "enhanced" her credentials, the government would not have obtained a warrant. To say Agent Funk is a CPA is the equivalent of saying someone who took the MCAT is a doctor or someone who took the LSAT is a lawyer. It's ludicrous. It's fraud. And, because jurists of reason could debate the consequences of Agent Funk's perjury, my application for COA should be granted.

3.  <u>The Government Cannot Commit A Crime (As Agent Funk Did) In Order To Prosecute Sears.</u>

Agent Funk's representations about her education, her degree, her experience, and her qualifications were all embelished. She intentionally misled the district court in an effort to appear more credible. And, her embelishments were not "clerical" or "harmless." They were substantive, meaningful, and had catastrophic results. Agent Funk's financial reporting was riddled with errors and inaccuracies and its clear she had no experience to perform the functions of an actual CPA.

In 2017, Tonya Leshun Hall was sentenced to six months in prison for lying to a federal judge in Western North Carolina. Ms. Hall prepared an affidavit opining on one party's finances. In her affidavit, she represented to the court that she graduated college with a degree in accounting and was a certified public accountant. It turns out, like Agent Funk, Ms. Hall did not graduate with a degree in accounting nor was she a CPA.

In that case, the court stated that Ms. Hall's lies "misled" the court in its assessment, and that prison was necessary to "promote respect for the law" and important in maintaining the truthfulness of the justice system. Candidly, there is no difference in what Ms. Hall did - and was sentenced to six months in prison for - and what Agent Funk did.

Colorado Revised Statute § 12-2-129 makes it a class 2 misdemeanor to use the CPA designation in Colorado when one is not authorized to do so; and, a class 6 felony for any subsequent

-10-

offense. Because jurists of reason could conclude that Agent
Funk committed a crime in lying to the court to obtain a search
warrant, and such lies had catastrophic consequences for Mr.
Sears, this Application for a Certificate of Appealability should
be granted.

In light of the fact Agent Funk lied to the court and
completely misrepresented her credentials for the sole purpose
of enhancing her legitimacy in pursuit of a search warrant -
and committed at least 1 crime in Colorado doing so - it is
clear that Sears' guilty plea was involuntary and induced by
fraud on the government's part. Because jurists of reason could
debate that without Agent Funk's perjury, Sears would never have
been charged, let alone pled guilty, this Court should grant his
Application for Certificate of Appealability.

### III. REASONABLE JURISTS COULD DEBATE WHETHER SEARS' PREVIOUS COUNSEL WERE SO INEFFECTIVE AS TO HARM SEARS.

Recognizing the standard for ineffective assistance of
counsel claims is high, jurists of reason could debate whether
my previous counsel actually provided any legal services of value.
Admittedly, I pled guilty to the underlying charges, but largely
that was a result of my attorneys' failure to conduct any due
diligence, perform even cursory defense work, and instead telling
me that if the FBI puts Agent Funk on the stand with her creden-
tials as a CPA, then even if I'm innocent, I would likely lose.

My attorney constantly reminded me that the federal govern-
ment has a better than 95% conviction rate and if I went to trial
and lost, I'd suffer a "trial tax" and receive an even worse

-11-

sentence. What my attorneys should have done, especially after charging such outrageous fees, is investigated Agent Funk's credentials and experience (or lack thereof), should have discovered the perjured testimony of my securities attorney, Fred Lehrer, and requested a Frank's hearing because of other exculpatory evidence. Instead, they set about to earn a quick fee by convincing me to plead guilty early.

As highlighted in my § 2255 petition and accompanying exhibits, the government withheld exculpatory evidence from me during this case, including that one of my witnesses, Fred Lehrer - my securities attorney - had a personal relationship with AUSA Kenneth Harmon, and the fact the government withheld relevant 302 interview reports - all of which constitute Brady violations. The district court rejected the argument that the government's withholding of such evidence rendered my plea involuntary. However, the district court did not address my argument that my counsel's complete failure to review discovery, request information from the government, and follow up on claims rather than take them at face value constitutes ineffective assistance of counesl. Had I known that information prior to entering into a plea agreement, I would not have pled guilty.

Because jurists of reason could debate the fact that my attorneys' failure to present a defense, and to request the relevant documents from the government, and to investigate claims constitutes ineffective assistance of counsel, my application should be granted.

-12-

Additionally, although the government obtained a Search and Seizure Warrant (the one containing Agent Funk's perjury) on May 16, 2014, the warrant was never returned to the Magistrate Judge nor was an inventory of property seized provided either to the Magistrate or to me. I had no way of verifying the government's statements or the validity and credibility of the allegations. It was textbook malpractice and ineffective assistance of counsel for my attorneys not to demand copies of those warrants and the related inventory. Had I seen those warrants prior to entering a plea agreement, I would not have agreed to plead guilty.

Even more incredible is that those warrants still do not appear on my docket; the government has still not returned them to the magistrate. The government's continued misconduct, especially when coupled with my attorney's inaction, clearly satisfies the standard that reasonable jurists could debate the negative impact of my ineffective assistance of counsel claim. As such, my application should be granted.

## CONCLUSION

In light of the foregoing, because reasonable jurists could debate the fact that the district court violated my Fourth, Sixth, and Fourteenth Amendment rights, and that not only was my plea involuntary, but the result of vindictive prosecution, this Court should grant my Application for Certificate of Appealability.

Dated this 11th Day of August, 2022.

William J. Sears

-13-

## CERTIFICATE OF SERVICE

I affirm under the penalty of perjury that I placed this Petitioner's Application for a Certificate of Appealability with first-class postage prepaid in the prison mail system, addressed to the Clerk of the U.S. Court of Appeals for the Tenth Circuit, 1823 Stout Street, Denver, CO 80257. In addition I hereby certify that a copy of this form was placed with first-class postage prepaid in the mail system addressed to:

Tonya Shotwell Andrew
 U.S. Attorney's Office
1801 California Street
Suite 1600
Denver, CO 80202

Dated this _11th_ day of August, 2022.

_William J. Sears_
William J. Sears

I certify that the total number of pages I am submitting as my application for certificate of appealability is 30 pages or less.

_William J. Sears_
William J. Sears

TRULINCS 56353054 - SEARS, WILLIAM J - Unit: FLF-T-A

---------------------------------------------------------------------------------

TO: 56353054
SUBJECT: answer from ksboa
DATE: 07/23/2022 09:06:05 AM

Kansas is a two-tiered state. Meaning one has to first obtain a CPA certificate, and then in order to practice as a CPA (perform or offer to perform services as a CPA for the public), a person must have the permit to practice. In order to obtain a permit to practice, one has to provide proof to the Board of the requisite experience requirement, complete a form, pay a fee, and then be subject to continuing education requirements in order to maintain the permit to practice.


Susan Somers

Susan Somers
Executive Director
Kansas Board of Accountancy
900 SW Jackson, Ste. 556
Topeka, KS 66612-1239
785-296-2162 (Phone)
susan.somers@ks.gov (Email address)
https://ksboa.kansas.gov (Web)


The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

-----Original Message-----
From: Erick Justice <mail@ksboa.kansas.gov>
Sent: Friday, July 22, 2022 3:11 PM
To: ksboa <ksboa@ks.gov>
Subject: New Message From ksboa

EXTERNAL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.


Name: Erick Justice
Address: PO Box 1233
City: Bethesda
State: Maryland
Zip Code: 20814
County:
Phone: 202-753-9290
Email Address: justice20211@proton.me
My question or comment pertains to : Other My Comment: I have a small company and am doing a financial audit and analysis that go along with it. This is involving some litigation.
I have a individual to whom Claims he is a Certified Public Accountant and has a certificate with the State of Kansas. I verified this however it says he does not have a license. He claims he is a Certified Public Accountant and can do the work and opine on it. Your web site is confusing and says he cant with only a certificate?
Why is that?
What's the difference between the two?
Can you explain why a certificate is not enough?
Are there educational or hourly on the job requirements or something?
Is not getting a license just filling out a form and paying a fee?

Please help me as I want to make sure that I am making a proper decision and avoid any legal ramifications.

30

**From:** Professional Ethics - Submissions <ProfessionalEthicsSubmissions@aicpa.org>
**Date:** Friday, November 8, 2019 at 9:46 AM
**To:** Bill S <bill@bmails.biz>, Professional Ethics - Submissions
<ProfessionalEthicsSubmissions@aicpa.org>
**Cc:** Peter Bornstein <pbornstein@prblegal.com>, Jeannette Wolf <jwolf@prblegal.com>
**Subject:** RE: Attention Unlicensed Individual Practicing

Hello William,

This individual is neither an AICPA member nor a member of the Kansas State Society of CPAs so we don't have jurisdiction to perform any investigation. You may want to contact the State Board of Accountancy to see if they have any provisions.

Thank you.
Aradhana

## Aradhana Aggarwal, CPA
Manager - Professional Ethics
Professional Ethics Hotline: 888.777.7077 or ethics@aicpa.org
AICPA Member Service: 888.777.7077 or service@aicpa.org
CIMA: cimaglobal.com/Contact-us/

This message, including any attachments, may contain confidential information intended for a specific individual and purpose and is protected by law. If you are not the intended recipient, please delete it. Any disclosure, copying or distribution of this message is strictly prohibited.

The position expressed above represents the opinion of the staff of the AICPA Professional Ethics Division as to the application of the *Code of Professional Conduct* to the facts presented in your e-mail. The opinions reflected in this response do not reflect an official position of the Professional Ethics Executive Committee or of the AICPA.

Views expressed by AICPA employees are expressed for purposes of deliberation, providing member services and other purposes exclusive of practicing public accounting. Views expressed by AICPA staff do not necessarily represent the official views of the AICPA unless otherwise noted. Official AICPA positions are determined through certain specific committee procedures, due process and deliberation.

# FREDRICK LEHRER'S PERJURY TO THE SEC

1. *Lehrer's Knowledge of Jean-Pierre's Opinion Letter Ban. In his sworn testimony before the SEC, Lehrer stated that he learned that Jean-Pierre had been banned from issuing opinion letters "through a computer search, not necessarily in reference to him in particular, you know, but banned opinion writers." (Exhibit A at 96:8-98:24.) In stark contrast to that statement, Lehrer described, in an August 7, 2011 declaration signed under penalty of perjury, Guy Jean-Pierre's forgeries. (Exhibit B.) In his October 16, 2011 declaration, Lehrer states that he "assisted substantially with drafting the [bar] grievances filed against Jean Pierre ..." (Exhibit C at ¶11.) In email communication on August 28, 2013, a mere 4 minutes after Sears first introduces him to FusionPharm/FSPM, Lehrer refers to an SEC.gov link and asks Sears whether Jean-Pierre is still the Secretary. (Exhibit D.) The SEC link was to the Jean-Pierre case in which Lehrer was an investigator.*

2. *Lehrer's Knowledge of Bill and Sandra Sears' Ownership of Mead point and Advice Regarding Disclosing Mead point as a Related Party. In his SEC testimony, Lehrer admitted that he knew that Bill Sears controlled Meadpoint during the time Lehrer was issuing Rule 144 opinions. (Exhibit E at 316: 8-16). While Lehrer stated in his testimony that he did not know that Bill Sears had transferred control of Meadpoint to his mother, Sandra Sears, until April 2014 (Exhibit F at 282:15 - 284:9; Exhibit G at 316:19 - 317:20), that claim is belied by, among other things, an October 22, 2013 email in which Bill Sears told Lehrer "FYI no conflict with Meadpoint as a family member out of state owns the company." (Exhibit H) (emphasis added). Bill Sears also stated in that email that the ownership change would be reflected on the Nevada Secretary of State's website. Consistent with that statement, the Nevada Secretary of State's website identifies Sandra Sears as Meadpoint's only officer. (Exhibit I).*

3. *Despite Lehrer's knowledge throughout his representation of FusionPharm that Bill Sears or his mother controlled Meadpoint, Lehrer advised FusionPharm that it did not need to disclose Meadpoint as a related party. \*\*\* An April 15, 2014 email from Craig Dudley to Lehrer, in which Dudley specifically sought advice on that issue, is attached as Exhibit J. \*\*\**

4. *Lehrer's Knowledge of Bills Sears' Criminal History. Lehrer stated in his SEC testimony that he learned from a newspaper article after DOJ's raid of FusionPharm's office that Bill Sears had a prior criminal conviction for securities fraud. (Exhibit K at 236: 15-23.) Lehrer's other testimony on that subject, however, made clear that he knew about Bill Sears' conviction long before that. (Exhibit L at 71:23-74:21; Exhibit M at 231:19-236:14). An October 10, 2013 email exchange, in fact, shows Lehrer and Bill Sears discussing that very issue. (Exhibit L.)*

5. *Lehrer's Use of Medications. On information and belief, Mr. Lehrer has a long history of taking various medications – including medications to treat seizures, anxiety, bipolar disorder, and psychosis – that are known to impair memory and judgment. He has also been hospitalized for mental-health reasons. The medications include clonazepam, lorazipam, quetiapine, Prozac, Pemazepam, BuSpar, buspirone, Remeron, Effexor, and Klonopin. This long history casts doubt on Lehrer's statement that he was not taking any medications at the time of his testimony.*

## QUOTE TAKEN FROM CRAIG DUDLEYS 302.

Sears is engaged with and works very closely with FusionPharm because Meadpoint is the sales arm. Meadpoint was out "humping for sales" at trade shows and such. Sears has been an advisor and helped Dittman along the way. With regards to the relationship between Sears and FusionPharm, Dudley advised that is was a "muddy situation." It is close but not over the line. Dudley brought up the disclosure of this relationship with their securities counsel, Fred Last Name Unknown (LNU). Dudley raised this when he was finishing the 2013 financials. While it is a muddy situation, the decision was made that it did not rise to the level of disclosure.

Scanned by
Marshal

Clerk of the U.S.
Court of Appeals
for 16th Circuit
1823 stout street
Denver, CO 80257

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT
Office of the Clerk
Byron White United States Courthouse
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

## August 15, 2022

Mr. Jeffery P. Colwell
United States District Court for the District of Colorado
Office of the Clerk
Alfred A. Arraj U.S Courthouse
Denver, CO 80294-3589

Re: Misdirected notice of appeal in Colorado District Court
Case No.16-CR-301-WJM-1 USA v. Sears

Dear Clerk:

Enclosed please find a misdirected notice of appeal filed by William J. Sears. In order for your court to take the appropriate steps to provide us with the preliminary record in this matter, the notice of appeal is being sent to you so it can be properly filed as of August 15, 2022. *See* Fed. R. App. P. 4(d).

Please contact this office if you have questions.

Sincerely,

CHRISTOPHER M. WOLPERT, Clerk

CMW: JJH

cc: William J. Sears