FILED
United States Court of Appeals
Tenth Circuit

November 30, 2022

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

   Plaintiff - Appellee,

v.

WILLIAM J. SEARS,

   Defendant - Appellant.

No. 22-1243
(D.C. Nos. 1:21-CV-00141-WJM &
1:16-CR-00301-WJM-1)
(D. Colo.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **MATHESON**, **KELLY**, and **ROSSMAN**, Circuit Judges.

_____

William J. Sears pled guilty to securities fraud conspiracy and failing to file a tax return. He was sentenced to 96 months in prison. Appearing pro se, he seeks a certificate of appealability ("COA") to challenge the district court's denial of his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring a COA to appeal an order denying a petition for relief under § 2255). Mr. Sears also seeks leave to proceed *in forma pauperis* ("*ifp*").

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny both requests and dismiss this matter.[1]

## I. BACKGROUND

### A. *Investigation*

In 2014, the Federal Bureau of Investigation ("FBI") obtained a search warrant for a company owned in part by Mr. Sears. The FBI supported its warrant request with an affidavit from Special Agent Kate Funk. She said in the affidavit that before working for the FBI, she "received an Accounting degree from the University of Kansas" and "became a Certified Public Accountant in 1996 through the state of Kansas." ROA, Vol. I at 266 ¶ 1. The affidavit described apparent irregularities in the company's revenue stream suggesting financial malfeasance by Mr. Sears.

Before the FBI investigation, attorney Frederick Lehrer advised Mr. Sears about activities underlying this case. During the investigation, the FBI interviewed Mr. Lehrer, who provided incriminating evidence. The Government never disclosed to Mr. Sears that Mr. Lehrer and Kenneth Harmon, the Assistant United States Attorney ("AUSA") who prosecuted Mr. Sears, had served together on a securities fraud task force in Florida in the 1990s before AUSA Harmon became a federal prosecutor.

---

[1] Because Mr. Sears is pro se, we "construe his arguments liberally" but do not "serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

B. *Guilty Plea, Motion to Withdraw, and Sentencing*

In September 2016, the Government filed an Information, charging Mr. Sears with (1) conspiring to commit securities fraud and (2) filing a false tax return.

In November 2016, Mr. Sears pled guilty to both charges under a plea agreement. In the plea agreement, Mr. Sears "knowingly and voluntarily waive[d]" the right to appeal his sentence unless it exceeded the statutory maximum. ROA, Vol. I at 68. The district court held a change of plea hearing during which Mr. Sears confirmed he had reviewed the plea agreement with his attorney, was aware of the waiver, and entered the agreement voluntarily.

In April 2019, Mr. Sears moved to withdraw his guilty plea, alleging the Government withheld exculpatory evidence that (1) Special Agent Funk "lied about her credentials" as a CPA to obtain the search warrant and (2) there was a connection between Mr. Lehrer and AUSA Harmon. ROA, Vol. I at 142-44. The district court rejected these arguments and denied Mr. Sears's motion.

In January 2020, the district court sentenced Mr. Sears to 96 months in prison. He timely appealed, asserting the Government engaged in misconduct and his attorney rendered ineffective assistance. The Government moved to enforce the appeal waiver in Mr. Sears's plea agreement. We granted that motion and dismissed the appeal. *See United States v. Sears*, 822 F. App'x 818 (10th Cir. 2020) (unpublished).

C. *Section 2255 Proceedings*

Mr. Sears then filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He asserted that his plea agreement was involuntary because he was unaware—due to Government misconduct or ineffective assistance from his attorney—of Special Agent Funk's alleged misrepresentations about her CPA status and the connection between AUSA Harmon and Mr. Lehrer. Mr. Sears argued this violated his rights to due process and effective assistance of counsel. He also asserted other claims not at issue here.

The district court denied the § 2255 motion. It found that "Agent Funk *is* a CPA, and Sears is only questioning the contexts in, and purposes for which, she may represent herself as such, under Kansas Law." ROA, Vol. I at 577 (quotations omitted). Also, because any evidence that Special Agent Funk misstated her status as a CPA "is, at best, impeachment evidence," the court held that the Government was not required to disclose it before Mr. Sears pled guilty. *Id*. (quotations omitted).

As to Mr. Lehrer, the district court observed that Mr. Sears "does not explain how any information . . . about any such relationship [between him and AUSA Harmon] would lead to anything more than, at best, impeachment evidence," which "[t]he Government had no duty to disclose." *Id*. at 578-79.

The district court declined to issue a COA. Mr. Sears requests this court to issue a COA, and he asks to proceed *ifp*.

## II. DISCUSSION

Mr. Sears seeks a COA on whether his plea was involuntary because (1) the Government withheld exculpatory evidence in violation of the Fifth Amendment Due Process Clause under *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) his counsel was ineffective in failing to discover the exculpatory evidence in violation of the Sixth Amendment under *Strickland v. Washington*, 466 U.S. 668 (1984).

In support of both claims, Mr. Sears asserts that (1) Special Agent Funk "lied about her qualifications as a [CPA] in the affidavit supporting the Government's search warrants," Aplt. Br. at 8, and (2) Mr. Lehrer lied to the FBI due to his prior relationship with AUSA Harmon, *id*. at 18-19.[2]

Mr. Sears also argues he should have received an evidentiary hearing in district court.

### A. *Legal Background*

#### 1. **COA Requirement**

To obtain a COA, Mr. Sears must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by demonstrating "that reasonable

---

[2] Mr. Sears further suggests the FBI's search warrant violated his Fourth Amendment rights, or that his attorney performed deficiently by failing to move to suppress the evidence the warrant produced. *See, e.g.*, Aplt. Br. at 20-21. But because Mr. Sears pled guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may attack only the voluntary and intelligent character of the guilty plea . . . ." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, Mr. Sears's arguments turn on whether his plea was voluntary.

jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). When assessing the district court's denial of a § 2255 motion, "we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011).

2. **Knowing and Voluntary Plea**

Mr. Sears argues that his plea was not knowing and voluntary. "The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty." *United States v. McIntosh*, 29 F.4th 648, 655 (10th Cir. 2022) (quotations omitted). For a plea to be voluntary, the "defendant's decision to plead guilty must be deliberate and intelligent and chosen from available alternatives." *Id*. (quotations omitted).

A defendant may establish that his guilty plea was involuntary if he should have been but was not informed of information relevant to his case. If the Government failed to disclose material exculpatory evidence or if the defendant's attorney failed to discover that information through a reasonable investigation, the defendant may not have "chosen from available alternatives" when he entered a guilty plea. *Id*.

B. *Analysis*

1. **Involuntary Plea Based on *Brady* Violation**

   a. *Additional legal background*

*Brady v. Maryland* requires the Government to disclose exculpatory evidence to criminal defendants. 373 U.S. 83, 87 (1963). "[U]nder certain limited circumstances, the prosecution's violation of *Brady* can render a defendant's plea involuntary." *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994).

To prove that a *Brady* violation rendered a plea involuntary, a defendant must demonstrate the exculpatory evidence is "material"—that there is "a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001) (quotations omitted). "Assessment of [materiality] involves an objective inquiry that asks not what a particular defendant would do but rather what is the likely persuasiveness of the withheld information." *Id*. at 1215 (quotations omitted). In other words, the withheld evidence must be significant enough, in the context of the case as a whole, to "have affected the outcome of the trial." *United States v. Comb*s, 267 F.3d 1167, 1175 (10th Cir. 2001) (quotations omitted). *Brady* does not "require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002) (emphasis added).

b. *Application*

Mr. Sears argues the Government violated *Brady* in two ways, rendering his plea involuntary. We address each in turn.

i. <u>Special Agent Funk</u>

Mr. Sears contends the Government failed to disclose evidence that Special Agent Funk "lied to obtain the search warrant." Aplt. Br. at 8. Special Agent Funk represented on the search warrant application affidavit that she graduated from college with an accounting degree and "became" a CPA in Kansas. ROA, Vol. I at 266 ¶ 1. Mr. Sears asserts Special Agent Funk was not a qualified CPA in Kansas because "in order to practice as a CPA (perform or offer to perform services as a CPA), a person must . . . provide proof to the Kansas Board of Accountancy of the requisite experience requirement, complete a form, pay a fee, and then be subject to continuing education requirements." Aplt. Br. at 10 (citing Kan. Stat. Ann. § 1-316). He contends Special Agent Funk had not met these requirements, *id*. at 8, and that the Government should have disclosed this "exculpatory" evidence, *id*. at 5. We disagree.

Special Agent Funk did not misrepresent her credentials in the affidavit. The affidavit said she graduated with an accounting degree and "became" a CPA—not that she was currently licensed and practicing as a CPA. Kansas law might limit Special Agent Funk's ability to "perform or offer to perform services as a CPA" to the general public, as Mr. Sears suggests, Aplt. Br. at 10, but she did not claim to be performing CPA services when she wrote the affidavit. Rather, she used her

specialized training to assess Mr. Sears's company's finances for investigative purposes. *See* ROA, Vol. I at 266 ¶ 2 ("At all times during the investigation described in this affidavit, I have been acting in my official capacity as a Special Agent with the FBI.").

Additionally, Special Agent Funk's alleged misrepresentation was, at most, impeachment evidence. But *Brady* does not require the Government to disclose impeachment evidence—even if it is material—before entering a plea agreement with a criminal defendant. *Ruiz*, 536 U.S. at 633.

Finally, even if Mr. Sears should have received information about Special Agent Funk's CPA status from the Government, this evidence would have lacked probative value. Under *Brady*, Mr. Sears must demonstrate the "likely persuasiveness of the withheld information" is such that he "would not have entered the plea but instead would have insisted on going to trial." *Walters*, 269 F.3d at 1214-15 (quotations omitted); *see also United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022). At most, the information about Special Agent Funk would have enabled Mr. Sears to cross-examine her about her CPA qualifications. Mr. Sears has not demonstrated a reasonable probability that possessing this information would have changed his decision to plead guilty.

    ii. <u>Mr. Lehrer</u>

Mr. Sears also contends his plea was involuntary because the Government wrongfully withheld information about Mr. Lehrer's "personal relationship with the prosecutor." Aplt. Br. at 19. As discussed, Mr. Lehrer—an attorney who at one

point advised Mr. Sears and later gave incriminating evidence to the FBI—once served on a task force with AUSA Harmon. Mr. Sears asserts that Mr. Lehrer "lied under oath during his discussions with the FBI and prosecutors. His lies are verifiably false, and had I known about them prior to pleading guilty, I would not have done so . . . ." Aplt. Br. at 18-19. We again disagree.

Mr. Sears has not shown that Mr. Lehrer's relationship with AUSA Harmon affected his statements to the FBI. Also, the Lehrer-Harmon connection was impeachment evidence, which the Government was not required to disclose before entering a plea agreement with Mr. Sears. *Ruiz*, 536 U.S. at 633. Thus, Mr. Lehrer has not asserted a viable *Brady* claim.

Even if he had, Mr. Sears has not shown that impeachment of Mr. Lehrer would have significantly affected his likelihood of success. Absent a reason to believe that Mr. Sears "would not have entered the plea but instead would have insisted on going to trial" if he possessed information about Mr. Lehrer's connection with AUSA Harmon, *Walters*, 269 F.3d at 1214, lacking that information did not prejudice him.

\* \* \* \*

For the foregoing reasons, we conclude that reasonable jurists would not debate the district court's denial of habeas relief based on Mr. Sears's claim that a *Brady* violation rendered his guilty plea involuntary. We therefore deny a COA on this issue.

2. **Involuntary Plea Based on Ineffective Assistance**

   a. *Additional legal background*

Receiving ineffective assistance of counsel may render a defendant's guilty plea involuntary. *Reed*, 39 F.4th at 1293. "We review a challenge to a guilty plea based on a claim of ineffective assistance of counsel using the two-part test announced in *Strickland v. Washington*," *id.* (citation and quotations omitted), which requires the defendant to show that (1) his attorney performed deficiently and (2) he suffered prejudice as a result. *Id.*

"To show prejudice in the guilty plea context, the defendant must establish that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." *Id.* (quotations omitted). "This prejudice inquiry . . . of an alleged 'failure to investigate or discover exculpatory evidence' . . . depends largely on whether the evidence or defense 'likely would have changed the outcome of a trial.'" *United States v. Graham*, 179 F. App'x 528, 533 (10th Cir. 2006) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

   b. *Application*

Mr. Sears asserts his plea was involuntary because his attorney failed to uncover evidence about Special Agent Funk's alleged misrepresentations about her CPA qualifications and Mr. Lehrer's alleged connection with AUSA Harmon, thereby rendering ineffective assistance. Aplt. Br. at 17-19. These arguments are unavailing for much the same reasons as Mr. Sears's arguments about his *Brady* claims.

Mr. Sears has failed to show prejudice. As discussed above, Mr. Sears's assertions about Special Agent Funk's alleged misrepresentations lack merit, and he does not explain how the Lehrer-Harmon connection affected the evidence against him. And even if there were merit to these arguments, the information would have been at most relatively weak impeachment evidence. Mr. Sears has not shown how this evidence "would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. He thus has not established "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." *Reed*, 39 F.4th at 1293 (quotations omitted).

\*   \*   \*   \*

The foregoing shows that reasonable jurists would not debate the district court's denial of Mr. Frederick's claim of an involuntary plea based on ineffective assistance of counsel. We therefore deny a COA on this issue.

3. **Evidentiary Hearing**

Mr. Sears contends the district court abused its discretion in declining to hold an evidentiary hearing on his § 2255 motion. Aplt. Br. at 4-7. We disagree.

Section 2255(b) provides that a district court must hold an evidentiary hearing on a petitioner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." "We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (quotations omitted). Because the district court's ruling denying an evidentiary hearing would be reviewed for

abuse of discretion during a merits appeal, the Supreme Court has accepted a formulation of "the COA question" as "whether a reasonable jurist could conclude that the District Court abused its discretion." *Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (quoting *Slack*, 529 U.S. at 484).

The district court is "not required to hold [an] evidentiary hearing[] [for a § 2255 motion] without a firm idea of what the testimony will encompass and how it will support a movant's claim." *Moya*, 676 F.3d at 1214 (quotations omitted). Moreover, if the district court, in denying a § 2255 motion, "relate[s] what sources in the record it relied on and why it denied" the arguments in the motion, it did not abuse its discretion for failing to hold a hearing. *United States v. Johnson*, 42 F.3d 1407 (Unpublished Table Decision), 1994 WL 683930, at *2 (10th Cir. 1994) (cited for persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)).

Where, as here, a petitioner's habeas claims are capable of being resolved on the existing record, there is no entitlement to an evidentiary hearing. *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003). Mr. Sears does not explain what additional evidence he could have presented at a hearing to support his claims. Aplt. Br. at 4-7. He has failed to present a "firm idea of what the testimony [at a hearing] w[ould] encompass and how it w[ould] support [his] claim." *Moya*, 676 F.3d at 1214. And the district court supported its holdings by identifying the "sources in the record it relied on." *Johnson*, 1994 WL 683930, at *2. The district court thus did not abuse its discretion in declining to grant an evidentiary hearing. We conclude

reasonable jurists could not debate that an evidentiary hearing was unnecessary. We decline to grant a COA on this issue.

### III. CONCLUSION

Mr. Sears has not demonstrated that "reasonable jurists could debate" the district court's denial of his § 2255 motion. *Slack*, 529 U.S. at 484. Also, he has not presented "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). We thus deny his request for a COA, deny his request to proceed *ifp*, and dismiss this matter.[3]

                                      Entered for the Court

                                      Scott M. Matheson, Jr.
                                      Circuit Judge

---

[3] Judge Rossman would grant Mr. Sears's *ifp* request.